UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

THE A STAR GROUP, INC,                         :

                    Plaintiff,        :                    ECF Case

                         :

                v.               :                    13-cv-4501

MANITOBA HYDRO; KPMG LLP (CANADA);    :
KPMG LLP (US); and MANITOBA PUBLIC    :
UTILITIES BOARD,                         :                    Hon. Paul A. Crotty

                Defendants.      :

------------------------------------------------------------------- x

## DEFENDANT MANITOBA HYDRO'S
## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS THE COMPLAINT

**DLA PIPER LLP (US)**
Robert J. Alessi
Michael R. Hepworth
Jeffrey D. Kuhn
1251 Avenue of the Americas
New York, New York 10020
robert.alessi@dlapiper.com
michael.hepworth@dlapiper.com
jeffrey.kuhn@dlapiper.com
(212) 335-4500 (Telephone)
(212) 335-4501 (Facsimile)

Date:  November 22, 2013

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................1

BACKGROUND ..........................................................................................1

ARGUMENT ...............................................................................................4

I.      ASTAR'S CLAIM  FOR COPYRIGHT INFRINGEMENT
        SHOULD BE DISMISSED (COUNT VIII)..................................................4

II.     ASTAR'S CLAIMS FOR BREACH OF THE MASTER SERVICES
        AGREEMENT SHOULD BE DISMISSED (COUNTS I, III, IV) ...............................7

        A.      Disclosure to KPMG as Hydro's agent in compliance with
                Sections 8.1 and 5.7 of the MSA was not a breach of the MSA.......................8

        B.      Disclosure to the PUB in compliance with the
                PUB's order was not a breach of the MSA.........................................9

        C.      Disclosure in the Cormie Affidavit in compliance with the
                orders of the Manitoba Court was not a breach of the MSA ...........................11

        D.      The alleged use of AStar's reports "for Hydro's benefit" was
                proper under the license and ownership provisions of the MSA ....................12

        E.      There was no breach of the  extensions of the MSA, which  do not
                change the terms of the MSA permitting the alleged disclosures and use........12

        F.      The Complaint does not identify any breach of good faith .............................12

III.    ASTAR'S CLAIMS FOR BREACH OF THE SOFTWARE LICENSE
        AGREEMENT SHOULD BE DISMISSED (COUNTS II, III, IV)............................13

IV.     ASTAR'S CLAIM AGAINST HYDRO FOR MISAPPROPRIATION
        OF TRADE SECRETS SHOULD BE DISMISSED (COUNT V) ............................13

V.      ASTAR'S CLAIM AGAINST HYDRO FOR UNFAIR
        COMPETITION SHOULD BE DISMISSED (COUNT VI)  ....................................15

VI.     ASTAR'S CLAIM AGAINST HYDRO FOR UNJUST
        ENRICHMENT SHOULD BE DISMISSED (COUNT VII)....................................15

CONCLUSION.............................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Accurate Grading Quality Assurance, Inc. v. Thorpe & KGK Jewelry LLC,*
   No. 12 Civ. 1343 (ALC), 2013 WL 1234836 (S.D.N.Y. Mar. 26, 2013).................................5

*Alfadda v. Fenn,*
   966 F. Supp. 1317 (S.D.N.Y. 1997)........................................................................................10

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).................................................................................................................4

*Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.,*
   361 F. Supp. 2d 283 (S.D.N.Y. 2005).............................................................................13, 14

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007).................................................................................................................4

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.,*
   70 N.Y.2d 382 (1987).......................................................................................................14, 15

*Cortec Indus., Inc. v. Sum Holding L.P.,*
   949 F.2d 42 (2d Cir. 1991).......................................................................................................2

*Coty, Inc. v. L'Oreal S.A.,*
   320 Fed. Appx. 5, 2009 WL 835849 (2d Cir. Mar. 31, 2009)................................................15

*DO Denim, LLC v. Fried Denim, Inc.,*
   634 F. Supp. 2d 403 (S.D.N.Y. 2009).....................................................................................5

*Dorset Indus., Inc. v. Unified Grocers, Inc.,*
   893 F. Supp. 2d 395 (E.D.N.Y. 2012)....................................................................................15

*Fogerty v. Fantasy, Inc.,*
   510 U.S. 517 (1994).................................................................................................................7

*Goldstein v. Pataki,*
   516 F.3d 50 (2d Cir. 2008).......................................................................................................4

*Great Am. Fun Corp. v. Hosung N. Y. Trading, Inc.,*
   96 Civ. 2986 LAK, 1997 WL 129399 (S.D.N.Y. Mar. 21, 1997)............................................7

*Hallford v. Fox Entm't Group, Inc.,*
   12 CIV. 1806 WHP, 2013 WL 2124524 (S.D.N.Y. April 13, 2013)........................................7

**Page(s)**

*Harrell v. Van der Plas,*
   No. 08 Civ. 8252 (GEL), 2009 WL 3756327 (S.D.N.Y. Nov. 9, 2009)....................................7

*Hudson v. Universal Studios, Inc.,*
   No. 04 Civ. 6997, 2009 WL 536564 (S.D.N.Y. Mar. 4, 2009) ..................................7

*Icahn v. Lion's Gate Entm't Corp.,*
   No. 651076/2010, 2011 WL 1233362 (Sup. Ct., N.Y. Cnty, Mar. 30, 2011) ........................10

*In re BitTorrent Adult Film Copyright Infringement Cases,*
   Nos. 11 Civ. 3995, 12 Civ. 1147, 12 Civ. 1150, 12 Civ. 1154, 2012 WL 1570765
   (E.D.N.Y. July 24, 2012) ..............................................................................................5

*Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Invs., Ltd.,*
   154 F. Supp. 2d 682 (S.D.N.Y. 2001)...........................................................................9

*Medinol Ltd. v. Boston Scientific Corp.,*
   346 F. Supp. 2d 575 (S.D.N.Y. 2004)..........................................................................14

*Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ. Co.,*
   No. 9 Civ. 2669, 2012 WL 1021535 (S.D.N.Y. Mar. 26, 2012) ..............................5

*Ochre LLC v. Rockwell Architecture Planning & Design, P.C.,*
   12 Civ. 2837 (KBF), 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012),
   *aff'd,* No. 13 Civ. 0005, 2013 WL 3606123 (2d Cir. July 16, 2013).........................6

*Orange Cnty. Choppers, Inc. v. Olaes Enters., Inc.,*
   497 F. Supp. 2d 541 (S.D.N.Y. 2007)..........................................................................15

*Patrick Collins, Inc. v. John Does 1-7,*
   No. 12 Civ. 2963, 2012 WL 1889766 (S.D.N.Y. May 24, 2012).............................5

*Pyatt v. Raymond,*
   No. 10 Civ. 8764 (CM), 2012 WL 1668248 (S.D.N.Y. May 10, 2012)...................7

*Reed Constr. Data Inc. v. McGraw-Hill Cos., Inc.,*
   745 F. Supp. 2d 343 (S.D.N.Y. 2010)..........................................................................14

*Reed Elsevier, Inc. v. Muchnick,*
   559 U.S. 154 (2010)...............................................................................................4, 5

*Refreshment Mgmt. Serv., Corp. v. Complete Office Supply Warehouse Corp.,*
   89 A.D.3d 913 (2d Dep't 2011) .................................................................................12

*Sun Micro Med. Techs. Corp. v. Passport Health Commc'ns, Inc.,*
   06 Civ. 2083 RWS, 2006 WL 3500702 (S.D.N.Y. Dec. 4, 2006).............................5

**Page(s)**

*The A Star Group, Inc. v. Manitoba Hydro*,
  12-cv-08198 (PAC), U.S. Dist. Ct., S.D.N.Y. .................................................1

*The A Star Group Inc. v. The Public Utilities Board*,
  AI10-30-07442, The Manitoba Court of Queen's Bench, Winnipeg Centre,
  Winnipeg, Manitoba, Canada, available at Manitoba Court Registry Website
  http://www.jus.gov.mb.ca/ ...........................................................................3

*U.S. ex rel. Evergreen Pipeline Const. Co., Inc. v. Merritt Meridian Constr. Corp.*,
  95 F.3d 153 (2d Cir. 1996) ......................................................................14, 15

*Yak v. Bank Brussels Lambert*,
  252 F.3d 127 (2d Cir. 2001) .........................................................................2

**STATUTES AND RULES**

Fed. R. Civ. P. 8 ..............................................................................................1, 6

Fed. R. Civ. P. 12 ................................................................................................1

Fed. R. Evid. 201(b)(2) ........................................................................................9

17 U.S.C. § 411(a) ...........................................................................................4, 5

17 U.S.C. § 505 ...................................................................................................7

28 U.S.C. §§ 1603-1605 ......................................................................................1

**OTHER AUTHORITIES**

Manitoba Public Utilities Board Act § 24(4),
  available at Manitoba Public Utilities Board website, Home Page,
  http://www.pub.gov.mb.ca/electricity.html ...........................................10 n.4

Manitoba Public Utilities Board Act § 58,
  available at Manitoba Public Utilities Board website, Home Page,
  http://www.pub.gov.mb.ca/electricity.html ...........................................10 n.4

Manitoba Public Utilities Board Order 32/09 (Mar. 30, 2009),
  available at Manitoba Public Utilities Board website, Board Orders,
  http://www.pub.gov.mb.ca/electricity.html .................................................9

Manitoba Public Utilities Board Order 95/10 (Sept. 20, 2010),
  available at Manitoba Public Utilities Board website, Board Orders,
  http://www.pub.gov.mb.ca/electricity.html ...............................3, 9, 10, 13

## PRELIMINARY STATEMENT

Defendant Manitoba Hydro ("Hydro") is moving under Rule 12(b)(6) and Rule 8 to dismiss all claims asserted against it by Plaintiff The A Star Group, Inc. ("AStar").  Hydro  is the electric power and natural gas utility for Manitoba, Canada.  It is a Crown Corporation formed under the laws of Manitoba, and therefore an agency or instrumentality of a foreign state under United States law.  *See* 28 U.S.C. §§ 1603-1605; Complaint ¶¶ 21, 29. [1]

Plaintiff AStar is a one-person New York corporation whose sole owner, director, officer and employee is Samantha Sivakumaran.  AStar's Complaint is against Hydro; the Manitoba Public Utilities Board ("PUB"), which is a government regulatory body; KPMG LLP (Canada); and KPMG LLP (US).  The Complaint alleges breach of contract for improper disclosure of confidential information and trade secrets; breach of good faith; misappropriation of trade secrets; copyright infringement; unfair competition; unjust enrichment; and tortious interference.

The Complaint is defective throughout and should be dismissed with prejudice.  It is AStar's second attempt in this Court to state the same claims against the same Defendants.  AStar's first complaint—which was 318 pages long—was dismissed *sua sponte* by this Court on March 1, 2013, under Rule 8.  (*The A Star Group, Inc. v. Manitoba Hydro*, 12-cv-08198 (PAC), S.D.N.Y., Docket No. 9.)  The Court gave AStar and its new lawyers four months to file a new complaint (*id.* Docket No. 32), but AStar is still unable to state a viable claim.

## BACKGROUND

Ms. Sivakumaran, through AStar, worked as an independent consultant for Hydro at various times from 2004 to 2008.  (Complaint ¶¶ 7, 11.)  She completed two small assignments

---

[1]     The Complaint is Exhibit A to the declaration of Michael R. Hepworth executed November 22, 2013 ("Hep. Decl."), submitted in support of the motion to dismiss.

on financial risk measurement issues in 2004 and 2005 for which she was paid $43,741. She was retained to do work after that and was paid for it, but she was unable to complete the deliverables and what she produced was of little or no value. (Hep. Decl. Ex. B (Cormie Aff.) ¶ 106.) [2]

After Hydro directed AStar to do no more work and made it clear it would not hire Ms. Sivakumaran permanently, she began a campaign against Hydro in the press and in alleged "whistleblower" reports to the Manitoba Ombudsman, the Crown Corporations Council, and the PUB. (Complaint ¶¶ 150, 153.) She also breached her contracts, violated directives from Hydro's senior management, and caused a Hydro employee to breach his duties and work secretly with her against Hydro. Ms. Sivakumaran told the employee in emails that she would "overwrite" Hydro's Risk Manager so that he would be "road kill in a matter of days", and that the employee should "start praying . . there might be a new jihad!!" Her emails describe the PUB as "wolves smelling fresh blood" and her complaints to the PUB as her "April bomb." After going to the PUB, she emailed the employee that "Ok –wolves are free!!!" and asked if he had "seen any dead bodies fall out of the windows?" at Hydro. (Hep. Decl. Ex. B (Cormie Aff.) ¶¶ 82(b), 123, 124, 126, 130(b); Ex. C (AStar emails quoted in Cormie Aff. [Ex. 41, 66, 67, 70].)

In late 2009 Hydro retained KPMG to review AStar's criticisms and sought a ruling from the Manitoba Court of Queen's Bench that would permit any KPMG report to be publicly disclosed to defend Hydro against the public criticism by AStar and others. AStar filed an

---

[2]    The information offered as background comes in part from an affidavit filed in the Manitoba Court of Queen's Bench that AStar's Complaint identifies, quotes, and expressly relies on for its claim that Hydro is liable for multiple causes of action. (Complaint ¶¶ 180-84, referring to and quoting the February 18, 2010 affidavit of "Hydro's senior executive David Cormie"). Because the Cormie affidavit is partially embodied in the Complaint by quotation and is integral to it, the Court can take notice of it on a motion to dismiss. *See, e.g.*, *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130-31 (2d Cir. 2001); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

opposition but then failed to pursue it.  The action proved unnecessary after PUB subpoenaed the KPMG report and decided it should be publicly disclosed with limited redactions.  (Hep. Decl. Ex. D (PUB Order 95/10) 3-5; Ex. B (Cormie Aff.) at ¶¶ 109-119.) [3]

AStar then expanded its complaints to include charges that Hydro and the PUB were unlawfully disclosing AStar's trade secrets by disclosing information from the reports Hydro had paid AStar to prepare.  The PUB, however, has found that the AStar reports "do not contain formulae, any detailed explanation of [AStar]'s methodology, nor any software or hard copy data respecting software details or outputs generated by [AStar] for MH [Manitoba Hydro]."  (Hep. Decl. Ex. D (PUB Order 95/10) at 39.)  AStar filed but did not pursue an appeal from the PUB's order.  (*See* docket for *The A Star Group Inc. v. The Public Utilities Board*, AI10-30-07442, available under that file number at http://www.jus.gov.mb.ca/ (last visited Nov. 18, 2013).)

After AStar failed to get what it wanted from Hydro, Hydro's Board of Directors, the Manitoba Ombudsman, the Manitoba Crown Corporations Council, the PUB, the Manitoba Court of Queen's Bench, and the Manitoba Court of Appeal (the highest court in the Province), it then filed its first complaint in this Court in November 2012.  AStar's first complaint, which sometimes lapses into first-person narrative, appears to be largely written by Ms. Sivakumaran herself.  Ms. Sivakumaran verified it under oath.  (*See* complaint in 12-cv-08198 (PAC).)  That complaint accuses the Government of Manitoba of "extortion," "corruption," and "blackmail" (*Id.* (complaint in 12-cv-08198 (PAC)) at ¶¶ 818, 820-823, 825, 851, 1011, 1368); alleges that the PUB is engaged in "extortion of slave labor" (*id.* ¶ 832); and identifies the Premier of Manitoba as a co-conspirator who gave instructions to "destroy" AStar's credibility.  (*Id.* ¶¶ 708-709, 1243.)  As noted above, this Court dismissed AStar's original complaint *sua sponte*.

---

[3]     The PUB's orders are public and subject to judicial notice.  *See infra* pp. 9-10 & n.4.

**ARGUMENT**

On a motion to dismiss, the Court must accept all non-conclusory factual allegations as true and draw all reasonable inferences in the Plaintiff's favor. *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*).

All of AStar's claims against Hydro (Counts I-VIII) should be dismissed with prejudice.

**I.      ASTAR'S CLAIM FOR COPYRIGHT INFRINGEMENT SHOULD BE DISMISSED (COUNT VIII)**

The Complaint alleges that all four Defendants are liable for copyright infringement of what the Complaint defines as AStar's "Copyright Materials." (Hep. Decl. Ex. A (Complaint) ¶¶ 297-304 (alleged Count VIII).) The claim is meritless:

*First*, registration of a copyright is a "precondition to suit" for copyright infringement, but AStar had no copyright registration when it filed the Complaint on June 28, 2013. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 163, 166 (2010) (explaining the requirement in 17 U.S.C. § 411(a) that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title"). AStar did not even file an application for registration until June 27, 2013. (Hep. Decl. Ex. A (Complaint) ¶ 299.) No registration was effective until July 2, _after_ the defective Complaint was filed. (Hep. Decl. Ex. E (copyright registration).)

- 4 -

The deficiency is fatal.  In this Circuit "a pending application for registration does not satisfy the registration precondition of Section 411(a) [of the Copyright Act]."  *Patrick Collins, Inc. v. John Does 1-7*, No. 12 Civ. 2963, 2012 WL 1889766, at *1 (S.D.N.Y. May 24, 2012); *see also, e.g.*, *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, No. 9 Civ. 2669, 2012 WL 1021535 at *5-6 (S.D.N.Y. Mar. 26, 2012) ("It remains the law in this Circuit [both before and after *Reed Elsevier*] that § 411(a) imposes a bar to copyright infringement claims where a plaintiff has not either received or been denied a copyright registration at the time such a claim is interposed."); *Accurate Grading Quality Assurance, Inc. v. Thorpe & KGK Jewelry LLC*, No. 12 Civ. 1343 (ALC), 2013 WL 1234836, at *7 (S.D.N.Y. Mar. 26, 2013) (same); *In re BitTorrent Adult Film Copyright Infringement Cases*, Nos. 11 Civ. 3995, 12 Civ. 1147, 12 Civ. 1150, 12 Civ. 1154, 2012 WL 1570765, at *7 (E.D.N.Y. July 24, 2012) (same); *DO Denim, LLC v. Fried Denim, Inc.*, 634 F. Supp. 2d 403, 406 (S.D.N.Y. 2009) (same).

*Second*, the Complaint defines the allegedly infringed "Copyright Materials" to include, *inter alia*, software, source code, object code, and programming tools (Complaint ¶ 298), but AStar and its counsel know that AStar has never even applied for copyright on any software, source code, object code, or programming tools and therefore cannot have any infringement claim for those materials.  No copyright registration could be alleged for software, code, or tools. The only copyrighted materials are what the Complaint and application describe as "Screen Shots" displaying unidentified and unexplained numbers or graphs.  (Complaint ¶ 299; Hep. Decl. Exs. E, F (registration; deposits).)  The Complaint's allegations do not support its claim.

*Third*, the complaint should be dismissed because it does not allege "by what acts during what time" a specific Defendant allegedly infringed the supposed copyright of the "Copyright Materials."  *Sun Micro Med. Techs. Corp. v. Passport Health Commc'ns, Inc.*, 06 Civ. 2083

RWS, 2006 WL 3500702, at *12 (S.D.N.Y. Dec. 4, 2006).  All the Complaint alleges is the conclusion that Defendants generally engaged in "use, publication and dissemination" of the "Copyright Materials" (Complaint ¶ 303), which is insufficient to state a claim concerning "Screen Shots."  AStar also alleges that "Defendants reproduced, displayed, disseminated and prepared derivative works of Timetrics software" (Complaint ¶ 302), but AStar has not even applied for registration of "Timetrics software."  And the copyright claim does not even attempt to distinguish between the alleged actions of any of the Defendants, as required by Rule 8.  *See, e.g., Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, 12 Civ. 2837 (KBF), 2012 WL 6082387, at *6-7 (S.D.N.Y. Dec. 3, 2012) (dismissing copyright claim with prejudice because, among other things, complaint fails to satisfy Rule 8's requirement that allegations not "lump" all defendants together and that the complaint explain what each defendant did), *aff'd*, No. 13 Civ. 0005, 2013 WL 3606123 (2d Cir. July 16, 2013).

*Fourth*, the dismissal should be with prejudice.  AStar's Complaint repeats the flaw in its original complaint (filed November 2012) which also alleged copyright infringement without any registration in violation of black-letter law and asserting no more than conclusory allegations against all Defendants who are "lumped" together in violation of Rule 8.  AStar was on notice that the claim was defective from Hydro's pre-motion letter to this Court on February 14, 2013, sent in response to the original complaint.  AStar's legal errors are obvious and repeated.

*Fifth*, Defendants should also be awarded their attorneys' fees under the Copyright Act for moving to dismiss AStar's claim for copyright infringement of unregistered "Copyright Materials" that include (as explained above) software that AStar knows it never registered or attempted to register.  The Copyright Act permits a court to "allow the recovery of full costs by or against any party," and to "award a reasonable attorney's fee to the prevailing party as part of

the costs."  17 U.S.C. § 505; *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, at 533-34 (1994).  After

AStar's first action was dismissed by this Court, AStar commenced a new copyright

infringement action knowing it had not obtained a registration for its "Copyright Materials" or

even applied to register its "Copyright Materials."  This warrants fee-shifting under § 505.  *See*

*Pyatt v. Raymond*, No. 10 Civ. 8764 (CM), 2012 WL 1668248 at *2-3 (S.D.N.Y. May 10, 2012);

*Hallford v. Fox Entm't Group, Inc.*, 12 CIV. 1806 (WHP), 2013 WL 2124524 (S.D.N.Y. April

13, 2013) (frivolousness of claim and whether claim was "objectively unreasonable" considered

when determining whether defendant is entitled to award of fees); *Great Am. Fun Corp. v.*

*Hosung N. Y. Trading, Inc.*, 96 Civ. 2986 (LAK), 1997 WL 129399 (S.D.N.Y. Mar. 21, 1997)

(frivolousness and need for deterrence prompt award of attorneys' fees so that future litigants are

discouraged from comparable behavior); *see also, e.g.*, *Harrell v. Van der Plas*, No. 08 Civ.

8252 (GEL), 2009 WL 3756327 at *3 (S.D.N.Y. Nov. 9, 2009) ("objective unreasonableness …

is sufficient to subject a party to an award of attorney's fees under § 505 'without regard to any

other equitable factor'" (quoting *Hudson v. Universal Studios, Inc.*, No. 04 Civ. 6997, 2009 WL

536564, at *2 (S.D.N.Y. Mar. 4, 2009))).

## II.  ASTAR'S CLAIMS FOR BREACH OF THE MASTER SERVICES AGREEMENT SHOULD BE DISMISSED (COUNTS I, III, IV)

The Complaint alleges that Hydro breached the Master Services Agreement ("MSA"), the

extension of the MSA, and the MSA's implied covenant of good faith.  (Complaint ¶¶ 235-43

(Count I), ¶¶ 254-63 (Count III), ¶¶ 264-72 (Count IV).)  These claims all rest on the same

allegations that Hydro breached MSA by disclosing AStar's confidential information to

KPMG, PUB, and in the Cormie Affidavit, and otherwise using (in ways that the Complaint

never explains) the information that AStar provided to Hydro under the MSA.  The Complaint

fails to state a claim for any breach.

### A. Disclosure to KPMG as Hydro's agent in compliance with Sections 8.1 and 5.7 of the MSA was not a breach of the MSA

The Complaint alleges that Hydro breached the MSA by disclosing AStar's reports to KPMG.  (Complaint ¶ 164.)  This was not a breach:

*First*, the disclosure of the AStar reports to KPMG as Hydro's agent complied with the MSA's provisions on disclosure.  The MSA allows disclosure to Hydro's "directors, officers, employees, and agents" to implement the MSA.  (Hep. Decl. Ex. G (MSA) § 8.1.)  The MSA provides that Hydro shall "review, read, approve and validate all Services provided by" AStar (*id.* (MSA) § 5.7), and "Services" are defined to include "all various work and services" done by AStar for Hydro as well as all "materials" that may be required to provide those services.  (*Id.* (MSA) § 1.2.)  To help evaluate AStar's reports and criticisms, Hydro retained KPMG "as Manitoba Hydro's agent to review and validate the Services provided by the Consultant [AStar] retained by Manitoba Hydro under the Master Services Agreement."  (Hep. Decl. Ex. H (KPMG engagement letter Dec. 15, 2009) at 1; Ex. B (Cormie Aff.) ¶¶ 113-119 (identifying KPMG engagement letters).)  The Complaint alleges that KPMG (Canada) was Hydro's "agent" when AStar pleads it as a basis for jurisdiction over KPMG (Canada).  (Complaint ¶ 37.)

The retention of KPMG was specifically "in connection with Section 5.7 of the MSA, which provides in relevant part that 'Hydro shall review, read, approve and validate all Services provided by the Consultant [AStar].'"  (Hep. Decl. Ex. H (KPMG letter Dec. 15, 2009) at 1.)  All information provided to KPMG, including any AStar information, was required to be held "in strict confidence" and not used for any purpose other than review under Section 5.7 of the MSA.  (*Id.* (KPMG letter Dec. 15, 2009) at 2.)  These confidentiality provisions specifically accommodated AStar's alleged concerns.  (*Id.* (KPMG letter Dec. 15, 2009) at 1, 2.)

*Second*, under the MSA, Hydro had the right to use its agent KPMG to review the AStar reports for Hydro because those reports were the property of Hydro and Hydro had a license to use them. Section 9.1 provides that Hydro owns the work product created by AStar for Hydro and that Hydro has a license to use all of the Hydro-specific work product created by AStar:

> 9.1  Subject to the provisions of Section 10, **Hydro shall retain ownership of** any Hydro specific data, documents (but excluding Documentation as defined in the Software License Agreement hereto attached in Appendix B), research notes, **results that are solely specific to Hydro's book or portfolio, and business recommendations, that are also all specific to Hydro and submitted as work product pursuant to this Agreement ("Service Product")** and to the extent that Consultant [*i.e.*, AStar] Property is integrated into the Service Product, Consultant grants a limited, non-transferable **license to Hydro** to the Consultant Property subject to the terms and conditions of Section 10 and Paragraphs 10.2 and 10.3.

(Hep. Decl. Ex. G (MSA) § 9.1, emphasis added.) Section 10.2 of the MSA confirms that AStar "grant[s] to Hydro a limited, non-exclusive, non-transferable license, to use Consultant's [AStar's] Other IP" as well as its alleged "Proprietary Tools". (*Id.* (MSA) § 10.2.)

**B.     Disclosure to the PUB in compliance with the**
**PUB's order was not a breach of the MSA**

The Complaint alleges that Hydro breached the MSA by disclosing AStar's reports to the PUB. (Complaint ¶ 166.) This was not a breach:

*First*, PUB Order 32/09, dated March 30, 2009, ordered that Hydro must "file [with PUB] all internally and externally prepared reports, since the 2003-04 drought, that address any of and all of the energy supply and other risks faced by MH." (Hep. Decl. Ex I (PUB Order 32/09, Mar. 30, 2009) at 48.)[4]  Hydro filed the reports, including AStar's, with PUB in November 2009. (Hep. Decl. Ex D (PUB Order No. 95/10) at 4-5.) Disclosure pursuant to PUB order was proper.

---

[4]     Where a foreign judgment is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned (*see* Fed. R. Evid. 201(b)(2)), the Court may take judicial notice of it in deciding a motion to dismiss. *Jordan*

*Second*, AStar had notice of the PUB disclosure order, discussed it the day it was issued, and voluntarily provided PUB with its reports in October 2009, before Hydro did so. (Hep. Decl. Ex D (PUB Order No. 95/10) at 5; Ex. C (AStar "April Bomb" email 3/30/09 3:38 PM).) AStar pleads that it contacted PUB in March 2009 urging inquiry into "AStar's findings" in its reports to Hydro. (Complaint ¶ 153.) PUB's order to Hydro to produce the reports was publicly posted by PUB, as all its orders are. (*See* http://www.pub.gov.mb.ca/electricity.html.) The PUB responded to AStar by agreeing to review "risk issues identified by the NYC [*i.e.*, AStar, referred to by PUB as the "New York Consultant"] arising from the services provided by the NYC to MH and encapsulated in the NYC's risk reports." (Hep. Decl. Ex D (PUB Order No. 95/10) at 5.)

*Third*, "The unredacted reports were filed [with the PUB] by MH in confidence and have not been disseminated in their original state." (*Id.* (PUB Order No. 95/10) at 5.) Any review of this order and finding must be in the Manitoba Court of Appeal, which reviews PUB orders and where AStar filed an appeal. (*See supra* 3 (AStar appeal) and pp. 9-10 n.4 (statute).)

*Fourth*, PUB determined that "the original NYC reports [*i.e.*, the reports of AStar, the "New York Consultant"] do not contain formulae, any detailed explanation of NYC's methodology, nor any software or hard copy data respecting software details or outputs generated by the NYC for MH." (Hep. Decl. Ex. D (PUB Order 95/10) at 39.) AStar litigated its position before the PUB. (*Id.* at 10, 38-9.) Under principles of collateral estoppel, AStar is bound by this finding on a relevant fact issue. *See, e.g., Alfadda v. Fenn*, 966 F. Supp. 1317, 1325 (S.D.N.Y. 1997) (issue preclusion applies to decisions of foreign courts); *Icahn v. Lion's*

---

*(Bermuda) Inv. Co., Ltd. v. Hunter Green Invs., Ltd.*, 154 F. Supp. 2d 682 (S.D.N.Y. 2001). By statute the PUB has "all such powers, rights, and privileges" of the Manitoba trial court. Public Utilities Board Act § 24(4) [available under "Relevant Legislation" on the PUB's website at http://www.pub.gov.mb.ca/index.html.] The PUB's orders are directly appealable to the Manitoba Court of Appeal. *Id.* § 58.

*Gate Entm't Corp.*, No. 651076/2010, 2011 WL 1233362, at *7-9 (Sup. Ct., N.Y. Cnty, Mar. 30, 2011) (Canadian court decision has res judicata effect on New York litigation).

### C. Disclosure in the Cormie Affidavit in compliance with the <u>orders of the Manitoba Court was not a breach of the MSA</u>

The Complaint alleges that Hydro breached the MSA by disclosing AStar's confidential information in an affidavit sworn to by David Cormie, a Hydro executive, on February 18, 2010, that was filed with the Manitoba Court of Queen's Bench and disclosed in redacted form (the "Cormie Affidavit") on Hydro's website. (Complaint ¶¶ 180-82.) The Manitoba Court action was commenced by Hydro seeking approval to disclose any KPMG report that would respond to public criticism of Hydro by AStar. Disclosing the Cormie Affidavit, which was a court filing governed by Manitoba Court orders, on Hydro's website was not a breach:

*First*, Hydro's disclosure of the redacted Cormie Affidavit complied with the orders of the Manitoba Court of Queen's Bench on public disclosure of court filings in that action. Those orders required only that Hydro not disclose the "identity of the respondent or of any principal of the respondent." (Hep. Decl. Ex. J (order 1/22/10), Ex. K (order 1/29/10).) The Manitoba Court did not otherwise limit disclosure of court filings, including the Cormie Affidavit. AStar's principal filed an opposition that the Court considered prior to its last order on public disclosure. (*Id.* Ex. K). AStar never appealed or sought to change the Court's final order on disclosure.

*Second*, the Cormie Affidavit does not include the AStar reports as exhibits and explains that Hydro would file them only under seal subject to the Court's direction. (Hep. Decl. Ex. B (Cormie Aff.) at ¶ 5.) As required by the Court, it redacts its exhibits by blacking out the name of AStar and its principal "pending the advice and direction of this Honourable Court." (*Id.* ¶ 4.)

*Third*, AStar complains that the redacted Cormie Affidavit disclosed AStar's "preview of its anticipated hydraulics report" (Complaint ¶ 11), but AStar admits that the so-called

"Hydraulics Report" was never prepared (*id.* ¶ 142) and Hydro's use of this Hydro-specific "preview" to defend itself was proper.  AStar's "preview" of anticipated future work contains alarmist and conclusory business warnings and recommendations that are Hydro-specific and not explained by any accompanying software, mathematical formulae, or calculation.  (Hep. Decl. Ex. B (Cormie Aff.) ¶¶ 94-95; Ex. D (PUB Order 95/10) at 39.)  The MSA grants to Hydro ownership and a license to use any "business recommendation" or Hydro-specific work product. (Hep. Decl. Ex. G (MSA) § 9.1; *see supra* 9.)  Defense against AStar was a proper use.

> ### D.   The alleged use of AStar's reports "for Hydro's benefit" was proper under the license and ownership provisions of the MSA

The Complaint also alleges in conclusory terms that Hydro breached the MSA by "using" AStar's information "for Hydro's benefit" in unexplained ways.  (Complaint ¶ 241.)  But as noted, the MSA specifically provides that Hydro has ownership of the AStar reports and has a license to use those reports for its benefit.  (*See supra* 10; Hep. Decl. Ex. H (MSA) §§ 9.1, 10.2.) It is not a breach of the MSA to use AStar's reports for Hydro's benefit or to defend itself.

> ### E.   There was no breach of the  extensions of the MSA, which do not change the terms of the MSA permitting the alleged disclosures and use

The Complaint alleges in a separate cause of action (Count III) that Hydro breached the extension of the MSA.  (Complaint ¶¶ 254-63.)  But the extension repeats the substantive MSA terms.  (*Id.* ¶¶ 255-57.)  Hydro did not breach those MSA terms.  (*Supra* 8-12.)

> ### F.   The Complaint does not identify any breach of good faith

The Complaint alleges (Count IV) that Hydro violated the MSA's implied covenant of good faith and fair dealing, but the claim is based on the same conduct asserted as the basis for breach of contract.  (Complaint ¶¶ 264-72.)  "[A] cause of action alleging breach of the implied covenant of good faith and fair dealing must be dismissed if it is merely duplicative of a breach of contract claim."  *Refreshment Mgmt. Serv., Corp. v. Complete Office Supply Warehouse*

*Corp.*, 89 A.D.3d 913, 915 (2d Dep't 2011); *see also, Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, 361 F. Supp. 2d 283, 298 (S.D.N.Y. 2005) (same).

### III.   ASTAR'S CLAIMS FOR BREACH OF THE SOFTWARE LICENSE AGREEMENT SHOULD BE DISMISSED (COUNTS II, III, IV)

The Complaint alleges that Hydro breached the Software License Agreement ("SLA"), the extension of the SLA, and the SLA's implied covenant of good faith.  (Complaint ¶¶ 244-53 (Count II), ¶¶ 254-63 (Count III), ¶¶ 264-72 (Count IV).)  These claims all rest on the same allegations that Hydro breached the MSA by disclosing AStar's confidential information or the conclusory allegations that Hydro used the information for its benefit.  (*Id.* ¶¶ 249-50, 259-60, 269-70.)  The Complaint fails to explain any acts that violate the SLA that are not also alleged to violate the MSA.  As discussed above, under the MSA Hydro was permitted to do what it did.  MSA § 1.2 provides that "in the event of any inconsistency between" the MSA and the SLA, the MSA controls.  (Hep. Decl. Ex. G (MSA) §§ 1.2, 1.3 (the SLA is "Schedule B").)  Therefore if the MSA permitted Hydro to do what it did, the SLA does not bar that conduct and the SLA claims should be dismissed.  This includes the claims for allegedly violating the extension of the SLA and the covenant of good faith, for the same reasons explained above for the parallel MSA claims.  Moreover, the PUB has already found that the AStar reports did not contain any software or formulae.  (Hep. Decl. Ex. D (PUB Order 95/10) at 39; *see supra* 10-11.)

### IV.   ASTAR'S CLAIM AGAINST HYDRO FOR MISAPPROPRIATION OF TRADE SECRETS SHOULD BE DISMISSED (COUNT V)

The Complaint alleges that Hydro misappropriated AStar's trade secrets (Complaint Count V ¶¶ 273-83), but the claim is duplicative and meritless.

*First*, AStar's misappropriation claim should be dismissed because it simply duplicates the breach of contract claims.  To support a tort claim, a complaint must describe a legal duty independent of the contract itself, and "[t]his legal duty must spring from circumstances

extraneous to, and not constituting elements of, the contract." *U.S. ex rel. Evergreen Pipeline Const. Co., Inc. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 162 (2d Cir. 1996) (citing *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 387 (1987)). "A claim of misappropriation 'must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract.'" *Reed Constr. Data Inc. v. McGraw-Hill Cos., Inc.*, 745 F. Supp. 2d 343, 353 (S.D.N.Y. 2010); *Medinol Ltd. v. Boston Scientific Corp.*, 346 F. Supp. 2d 575, 606-607 (S.D.N.Y. 2004) (a tort claim "must arise from a separate legal duty" extraneous to a contract allegedly breached).

Here the substance of AStar's misappropriation claim is identical to its breach of contract claims. AStar alleges that it made "its metrics, methodologies, calculations, and formulae available to Hydro pursuant to Hydro's express agreement to keep that information confidential." (Complaint ¶ 280.) AStar does not allege that Hydro violated a duty independent of the contracts. The misappropriation claim must therefore be dismissed.

*Second*, where a disclosure is authorized by contract, *a fortiori* it cannot serve as the basis for a trade secret misappropriation claim. *Bear, Stearns Funding, Inc., Inc.*, 361 F. Supp. 2d at 305 (granting motion to dismiss where "the information that Interface contends constitutes trade secrets is information that Bear Stearns was expressly authorized to disclose in connection with a loan securitization by § 10.25 of the Loan Agreement"). Here the MSA covers all AStar's "work product" and permits what Hydro did.

*Third*, to state a valid misappropriation claim, "a plaintiff must allege that the defendant used the plaintiff's confidential information for the purpose of securing a competitive advantage," and AStar cannot do this. *Reed Constr. Data Inc.*, 745 F. Supp. 2d at 352. AStar and Hydro are not competitors with each other.

- 14 -

**V.     ASTAR'S CLAIM AGAINST HYDRO FOR UNFAIR
COMPETITION SHOULD BE DISMISSED (COUNT VI)**

The Complaint alleges unfair competition (Complaint Count VI ¶¶ 284-89), but the claim

is meritless.  Like all tort claims, an unfair competition claim must be based on conduct violating

a legal duty "extraneous to, and not constituting elements of," the parties' contract.  *See U.S. ex*

*rel. Evergreen Pipeline Const.*, 95 F.3d at 162.  "This concept is equally applicable where [an]

unfair competition claim is also premised on the same factual allegations underlying a claim for

breach [of contract.]"  *Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 414

(E.D.N.Y. 2012); *Orange Cnty. Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 558

(S.D.N.Y. 2007) ("no claim [for unfair competition] lies where its underlying allegations are

merely a restatement, albeit in slightly different language, of the implied contractual obligations

asserted in the cause of action for breach of contract.").  The crux of AStar's unfair competition

claim is that Hydro disclosed AStar's confidential information, which is the same basis alleged

for AStar's contract claims and therefore cannot support an unfair competition claim.

**VI.     ASTAR'S CLAIM AGAINST HYDRO FOR UNJUST
ENRICHMENT SHOULD BE DISMISSED (COUNT VII)**

The Complaint alleges unjust enrichment (Complaint Count VII ¶¶ 290-96), but the claim

merely restates AStar's breach of contract claims.  "[I]t is black-letter law in New York that

recovery on an equitable theory of unjust enrichment is not permitted where the matter at issue is

covered by a valid, enforceable contract."  *Coty, Inc. v. L'Oreal S.A.*, 320 Fed. Appx. 5, 2009

WL 835849, *6-7 (2d Cir. Mar. 31, 2009) (summary order); *Clark-Fitzpatrick, Inc.*, 70 N.Y.2d at

388-389.  AStar's unjust enrichment claim should be dismissed.

**CONCLUSION**

The Court should dismiss the Complaint with prejudice, and award costs including

attorneys' fees under the Copyright Act for the work required to dismiss the copyright claim.

- 15 -

Date:  November 22, 2013                         /s/ Michael R. Hepworth
                                            Robert J. Alessi
                                            Michael R. Hepworth
                                            Jeffrey D. Kuhn

                                            DLA Piper LLP (US)
                                            1251 Avenue of the Americas
                                            New York, NY 10020
                                            Tel:  (212) 335-4500, Fax:  (212) 335-4501
                                            *Attorneys for Manitoba Hydro*

66382317