UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE A STAR GROUP, LLC,<br><br>           Plaintiff,<br><br>   v.<br><br>MANITOBA HYDRO; KPMG LLP (CANADA); KPMG LLP (US); and MANITOBA PUBLIC UTILITIES BOARD,<br><br>           Defendants. | Case No. 13-cv-4501 (PAC)<br><br>**Oral Argument Requested**<br><br>**ECF CASE** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
THE PUBLIC UTILITIES BOARD OF MANITOBA'S MOTION TO
DISMISS THE COMPLAINT AND STRIKE THE DEMAND FOR A JURY TRIAL**

LEVINE LEE LLP

Kenneth E. Lee
Seth L. Levine
Miriam L. Alinikoff
Jonathan S. Zelig
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 223-4400
Facsimile: (212) 223-4425
klee@levinelee.com

*Attorneys for Defendant The Public
Utilities Board of Manitoba*

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** .................................................................................................. 1

**STATEMENT OF FACTS** ........................................................................................................... 2

**ARGUMENT** ................................................................................................................................ 5

    **I.**    THE PUB IS IMMUNE UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT ................... 5

        **A.**    The Complaint Fails to Demonstrate "Commercial Activity" by the PUB ................ 6

            (1)    *The PUB's actions were taken in furtherance of its role as the utilities regulator of Manitoba and therefore cannot be commercial in nature* ............ 7

            (2)    *The services Plaintiff performed at the PUB's direction were directly intertwined with the PUB's governmental function* .......................................... 9

        **B.**    Plaintiff's Demands for Punitive Damages and a Jury Trial Must Be Stricken ........ 10

    **II.**    COUNTS XIII, XIV AND XV ARE BARRED BY COLLATERAL ESTOPPEL ......................... 10

    **III.**    THE ACTION SHOULD BE DISMISSED FOR *FORUM NON CONVENIENS* ............................ 11

**CONCLUSION** .......................................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**

PAGE(S)

*Alfadda v. Fenn*,
  966 F. Supp. 1317 (S.D.N.Y.1997) ................................................................................10

*Anglo-Iberia Underwriting Mgmt. v. Jamsostek*,
  600 F.3d 171 (2d Cir. 2010) ................................................................................6, 7, 8, 9

*Cargill Int'l A.S. v. M/T Pavel Dybenko*,
  991 F.2d 1012 (2d Cir. 1993) .............................................................................................6

*Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*,
  56 F.3d 359 (2d Cir. 1995) ..........................................................................................10, 11

*Faiveley Transp., Inc. v. Wabtec Corp.*,
  No. 10. Civ. 4062 (JSR), 2011 WL 1899730 (S.D.N.Y. May 13, 2011) ...............................10

*Frith v. Hill*,
  No. 07 Civ. 5899 (JSR), 2009 WL 3073716 (S.D.N.Y. Sept. 23, 2009) ................................4

*Hijazi v. Permanent Mission of Saudi Arabia to the United Nations*,
  689 F. Supp. 2d 669 (S.D.N.Y. 2010) .......................................................................6, 9, 10

*In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*,
  311 F.3d 488 (2d Cir. 2002) ...............................................................................................12

*Iragorri v. United Techs. Corp.*,
  274 F.3d 65 (2d Cir. 2001) (en banc) ................................................................................12

*Jordan (Bermuda) Inv. Co., v. Hunter Green Inv. Ltd.*,
  154 F. Supp. 2d 682 (S.D.N.Y. 2001) .................................................................................4

*Kato v. Ishihara*,
  360 F.3d 106 (2d Cir. 2004) ..............................................................................................10

*Kern v. Oesterreichische Elektrizitaetswirtschaft AG*,
  178 F. Supp. 2d 367 (S.D.N.Y. 2001) ..............................................................................6, 7

*Lust v. Nederlandse Programma Stichting*,
  501 F. App'x 13 (2d Cir. 2012) .........................................................................................12

*Lust, v. Nederlandse Programma Stichting*,
  No. 10 Civ. 8963 (WHP), 2011 WL 3279183 (S.D.N.Y. July 18, 2011),
  *aff'd*, 501 F. App'x 13 (2d Cir. 2012) ...............................................................................12

*Republic of Argentina v. Weltover, Inc.*,
    504 U.S. 607 (1992)..........................................................................................................7

*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993)......................................................................................................5, 7

*USA Tropicals v. Zim Amer. Israel Shipping*,
    No. CV2005-5836 (RJD) (MDG), 2006 WL 845406 (E.D.N.Y. Mar. 30, 2006) .....................9

**STATUTES & RULES**

28 U.S.C. § 1330................................................................................................................1, 6, 10

28 U.S.C. § 1602, *et seq*...........................................................................................................1

28 U.S.C. § 1603...................................................................................................................6, 7

28 U.S.C. § 1604........................................................................................................................6

28 U.S.C. § 1605........................................................................................................................6

28 U.S.C. § 1606...................................................................................................................6, 10

Fed. R. Civ. P. 12(b)(1)...............................................................................................................1

Fed. R. Civ. P. 12(b)(6)........................................................................................................1, 11

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant The Public Utilities Board of Manitoba (the "PUB" or "Board") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss all claims in the Complaint asserted against it for the reasons set forth below.

## PRELIMINARY STATEMENT

This action seeks to undo the regulatory determination of a foreign sovereign—the PUB—and therefore should be dismissed pursuant to the Foreign Sovereign Immunities Act (the "FSIA").  28 U.S.C. §§ 1330, 1602-11; Fed. R. Civ. P. 12(b)(1).  The PUB is a branch of the provincial government of Manitoba, Canada, with a statutory mandate to regulate consumer electricity rates charged by defendant Manitoba Hydro ("Hydro").  Plaintiff The A Star Group, Inc. ("Plaintiff" or "A Star") injected itself into the PUB's regulatory review of Hydro when it approached the PUB as a "whistleblower" to report "grave fiscal and public safety risks" allegedly posed by Hydro.  (Compl. ¶¶ 12, 150, 153.)  Within the context of its regulatory review, the PUB conducted a redaction motion process (the "Redaction Proceeding") to determine the confidentiality of certain reports assessing Hydro's risk—including reports of Hydro and Defendants KPMG (Canada) and KPMG (USA) (together "KPMG") that referenced Plaintiff's own findings—for the purpose of placing those reports on the public record in the regulatory proceeding.  Plaintiff voluntarily participated in the Redaction Proceeding, in which it argued, *inter alia*, that the reports as redacted contained its confidential information and should therefore not be publicly disclosed.  The PUB disagreed with Plaintiff's contention and ultimately found that the reports, as redacted, protected Plaintiff's confidential information, and ordered them placed on the public record in the regulatory proceeding (the "PUB Redaction Order").  In response to this administrative determination, Plaintiff commenced two separate actions in Manitoba courts seeking to overturn that finding, and later abandoned both.

Having initiated contact with a foreign sovereign and availed itself of its regulatory and legal processes, Plaintiff effectively asks this Court to overturn the PUB's final determination.  In an artifice to address the FSIA, Plaintiff mislabels all of the PUB's regulatory activities as "commercial" to attempt to secure jurisdiction in this Court.  This effort should fail, and all claims against the PUB should be dismissed for lack of subject matter jurisdiction.

Alternatively, collateral estoppel mandates dismissal of any claims that would require re-adjudication of the PUB's determination that the reports placed in the public record protected Plaintiff's confidential information.  Finally, the doctrine of *forum non conveniens* warrants dismissal because the private and public interest factors weigh heavily in favor of adjudication of this dispute in Manitoba, Canada.[1]

## STATEMENT OF FACTS

**The PUB's Statutory Mandate**

The Constitution of Canada grants authority to the Province of Manitoba to develop hydro-electric power, which it exercises pursuant to The Manitoba Hydro Act.  (*See* Declaration of Kenneth E. Lee ("Lee Decl."), Ex. A (The Manitoba Hydro Act ("Hydro Act") Preamble, § 2.)  The PUB has exclusive jurisdiction to review rates for services provided by Hydro, and "no change in rates for services shall be made . . . without the approval of the [PUB]."  (Lee Decl., Ex. B (The Crown Corporation's Public Review and Accountability Act (the "CCPRAA") § 26(1)).)  Upon application by Hydro to the PUB for a rate change, the PUB conducts a general rate application ("GRA") proceeding that is open to the public, to determine whether the requested change is in accordance with Hydro's mandate and in the public's interest. (*Id.*, Ex. C (The Public Utilities Board Act (the "PUBA")) § 15(3).)  In making this

---

[1] The PUB also joins in the grounds for dismissal in Defendant Hydro's Memorandum of Law in Support of its Motion to Dismiss at Parts I and V, insofar as they support dismissal of Counts VIII and XIV asserted against the PUB.

2

determination, the PUB may take into consideration, among other things, any "factors that [it] considers relevant to the matter." (Lee Decl., Ex B (CCPRAA) § 26(4)(a)(ix).)

Unlike a corporation established for commercial purposes, the PUB does *not* possess the "capacity, rights, powers and privileges of a natural person." (*Id*., Ex. A (Hydro Act) § 15(1.1).) Rather, the PUB "has all such powers, rights, and privileges as are vested in the Court of Queen's Bench [*i.e.*, the Manitoba trial court] or a judge thereof" with respect to, among other things, all "matters necessary or proper for the due exercise of its powers." (*Id*., Ex. C (PUBA) § 24(4).) The PUB is the arbiter of confidentiality in connection with materials submitted to it in the context of its GRA proceedings. Specifically, pursuant to Rule 13 of the PUB's Rules of Practice and Procedure (the "PUB Rules"), the PUB "may receive information in confidence on *any terms it considers appropriate in the public interest*." (*Id*., Ex. D (PUB Rules) at § 13(2) (emphasis added).) Further, "where disclosure of any document is refused due to a claim for confidentiality," the PUB may nonetheless "order the document be placed on the public record" or "order an abridged version of the document to be placed on the public record" following the PUB's hearing of an interested party's claim for non-disclosure. (*Id.* § 13(2)-(3).) Finally, an appeal from any final PUB order or decision of the Board is made directly to the Court of Appeal of Manitoba. (*Id.*, Ex. C (PUBA) § 58(1).)

**The 2010/2011 and 2011/2012 GRA Proceeding**

In March 2009, in connection with an application by Hydro for a rate increase, the PUB ordered Hydro to file with it "all internally and externally prepared reports, since the 2003-04 drought, that have addressed any of [Hydro's] energy supply and other risks" in order to facilitate the PUB's assessment of Hydro's risk management in connection with its upcoming rate application for the 2010/2011 and 2011/2012 fiscal years ("2010-12 GRA"). (Lee Decl. Ex.

3

E (PUB Order 32/09) at 30-31.)[2]  Also in or about March 2009, Plaintiff, a former independent risk consultant for Hydro from approximately 2004 to 2009, contacted the PUB to voluntarily share with the PUB its own risk findings as a "whistleblower."  (Compl. ¶¶ 2, 7, 12.)  As Plaintiff alleges, "based on the recommendation of the Manitoba Ombudsman, A Star confidentially approached [the] PUB, the regulator responsible for monitoring Hydro, to report A Star's findings."  (Compl. ¶ 153.)  In connection with its desire to assist "the regulator, PUB," in understanding the "grave fiscal and public safety risks" posed by Hydro (Compl. ¶¶ 150, 153), on or about September 29, 2009, Plaintiff agreed to submit to the PUB its risk reports pursuant to procedures set forth by the PUB.  (Compl. ¶ 158.)  Such procedures included the acceptance of Plaintiff's reports pursuant to the PUB's Rule 13 governing the submission of confidential materials.  (Compl. ¶¶ 157-58.)

In furtherance of its desire "to assist [the PUB] in advancing the Board's understanding of risk matters" facing Hydro, Plaintiff applied to appear as an "intervener" in the 2010-12 GRA, which included a comprehensive review of Hydro's risk management.  (Lee Decl., Ex. F (PUB Order 30/10) at 31.)  On March 26, 2010, pursuant to PUB Order 30/10, the PUB denied Plaintiff's application for intervener status, defining instead an alternative role for Plaintiff to voluntarily participate in the 2010-12 GRA, whereby Plaintiff would cooperate and assist the PUB "for the purpose of enabling its reports to be placed on the public record in [the 2010-2012 GRA]."  (*Id*. at 36.)[3]  To that end, the PUB outlined the Redaction Process whereby

---

[2]  The Court may take judicial notice of the PUB Orders referenced herein and attached to the Declaration of Kenneth E. Lee.  *Frith v. Hill*, No. 07 Civ. 5899 (JSR), 2009 WL 3073716, at *16 n.10 (S.D.N.Y. Sept. 23, 2009). Further, where a foreign judgment is "'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned,' the Court may take judicial notice of it in deciding the motion." *Jordan (Bermuda) Inv. Co., v. Hunter Green Inv., Ltd*., 154 F. Supp. 2d 682, 689 (S.D.N.Y. 2001) (quoting Fed. R. Evid. 201(b)(2)).

[3]  Pursuant to its statutory authority to award costs to be paid by Hydro in connection with a GRA proceeding, the PUB approved the advancement of certain consulting and legal fees to Plaintiff in order to facilitate Plaintiff's participation in the 2010-12 GRA process.  (*See* Lee Decl., Exs. C (PUBA) §§ 56(1)-(2) & G (PUB Order 62/10).)

both Plaintiff and Hydro were afforded the opportunity to submit proposed redactions to such reports before they were placed on the public record. (*Id*. at 33-35.) The Board informed Plaintiff that it would only grant the proposed redactions if it was "convinced" that the document contained confidential or trade secret information, while "keeping in mind its general process that all information ought to be on the public record with few exceptions." (*Id*. at 38.)

On September 20, 2010, the PUB issued Order 95/10, the PUB Redaction Order, which set forth the PUB's final determination of the redaction process. (*Id.*, Ex. H (PUB Redaction Order).) Following a review of redactions submitted by both Plaintiff and Hydro pursuant to Rule 13, the PUB ultimately allowed certain redactions to the Hydro and KPMG reports before placing them on the public record. (*Id.* at 37-38.) Subsequent to publication of the PUB Redaction Order, Plaintiff filed two actions in Manitoba seeking reversal of the PUB's findings. First, on September 23, 2010, Plaintiff filed an application with the Queen's Bench seeking an order preventing the PUB from publishing the redacted reports referenced in the Redaction Order. (*Id.*, Ex. I (Queen's Bench Application, *The A Star Group Inc. v. The Public Utilities Board*, CI10-01-68389).) Second, on November 18, 2010, Plaintiff filed an action with The Court of Appeal of Manitoba, in which it also requested, among other things, leave to appeal the PUB Redaction Order and an "[o]rder suspending the operation of [the PUB Redaction Order]." (*Id.*, Ex. J (Am. Notice of Mot.) ¶ 2.) Plaintiff subsequently abandoned both Manitoba proceedings. (*Id.*, Exs. K (Notice of Discontinuation) & L (Docket, *The A Star Group Inc. v. The Public Utilities Board*, AI10-30-07442) at Doc. 1 (motion deemed abandoned).)

## ARGUMENT

I.   **THE PUB IS IMMUNE UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT**

The FSIA "provides the sole basis of obtaining jurisdiction over a foreign state in courts of this country." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (quotation omitted);

5

*Anglo-Iberia Underwriting Mgmt. v. Jamsostek*, 600 F.3d 171, 174-75 (2d Cir. 2010). Unless a specific exception to the FSIA applies, *see* 28 U.S.C. § 1604, a "foreign state" is immune from federal court jurisdiction. § 1603(a). Where, as here, there is no dispute that the defendant is such a foreign state, the burden shifts to the plaintiff to show that an exception applies. *Jamsostek*, 600 F.3d at 175. In determining a motion to dismiss pursuant to the FSIA, the Court "generally must accept the material factual allegations in the complaint as true," but "the Court does not [ ] draw all reasonable inferences in the plaintiff's favor." *Hijazi v. Permanent Mission of Saudi Arabia to the United Nations*, 689 F. Supp. 2d 669, 670 (S.D.N.Y. 2010).

Plaintiff concedes that the PUB is a foreign state. (Compl. ¶ 25 ("PUB is a branch of the provincial government of Manitoba").) Therefore, at issue is whether the PUB participated in "commercial activity" such that an exception to the PUB's sovereign immunity applies. (*See* Compl. ¶ 30.) Because Plaintiff's claims against the PUB are not "based upon a commercial activity," but instead upon actions taken in its capacity as the utilities regulator of Manitoba, this Court lacks subject matter jurisdiction over the PUB. 28 U.S.C. § 1605(a)(2).[4] Moreover, because the PUB is a foreign state, Plaintiff's claim for punitive damages and demand for a jury trial must be stricken. 28 U.S.C. §§ 1330(a), 1606.

### A. The Complaint Fails to Demonstrate "Commercial Activity" by the PUB

Plaintiff alleges that the PUB's conduct was "commercial" in nature by virtue of: (i) "the PUB's meeting and agreements with A Star in New York" including retaining "A Star to provide commercial services in New York"; and (ii) "A Star's performance under that agreement in New York." (Compl ¶¶ 30, 36.) In *Republic of Argentina v. Weltover, Inc.*, the Supreme

---

[4] Plaintiff's allegation that the PUB "waived" its right to assert immunity under 28 U.S.C. § 1605(a)(1) of the FSIA is deficient. (Compl. ¶ 31.) There can be no express waiver absent an allegation that the PUB was a "signator[y]" to an agreement containing such a waiver, and no such allegation is present here. *Kern v. Oesterreichische Elektrizitaetswirtschaft AG*, 178 F. Supp. 2d 367, 373 (S.D.N.Y. 2001). Moreover, Plaintiff alleges no facts to support any implied waiver. *Cargill Int'l A.S. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1017 (2d Cir. 1993).

Court explained that a foreign state engages in commercial activity under the FSIA when it "acts, not as a *regulator* of a market, but in the manner of a private player within it." 504 U.S. 607, 614 (1992) (emphasis added); *see also Nelson*, 507 U.S. at 360 ("a state engages in commercial activity [under the FSIA] where it exercises only those powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns"). The Complaint alleges that the PUB did not engage in commercial activity because: (i) the PUB's actions were all taken in furtherance of its role as the utilities regulator for the province of Manitoba; and (ii) the services Plaintiff performed at the PUB's direction were directly intertwined with its governmental function.

> **(1)** *The PUB's actions were taken in furtherance of its role as the utilities regulator of Manitoba and therefore cannot be commercial in nature*

The FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). "The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id*. To plausibly allege that the PUB engaged in commercial activity warranting an exception to FSIA immunity, Plaintiff must demonstrate that "the particular actions that the [PUB] performs (whatever the motive behind them) are the *type* of actions by which a private party engages in "trade and traffic or commerce." *Weltover*, 504 U.S. at 614 (quotation omitted).

To determine whether "the particular actions that the foreign state perform[ed]" are of a private nature, *Weltover*, 504 U.S. at 614, the Court must first examine the "act[s] of the foreign sovereign that serve[] as the basis for the plaintiff's claim." *Jamsostek*, 600 F.3d at 177; *see also Kern*, 178 F. Supp. 2d at 372-73. In *Jamsostek*, for example, the basis of plaintiff's claim was defendant Jamsostek's allegedly negligent supervision of employees in connection

7

with its government mandate to provide health insurance in Indonesia.  600 F.3d at 177.  Notwithstanding the arguably "commercial" character of defendant Jamsostek's activities—hiring and training of employees; processing of insurance claims; and collection of insurance premiums—the Second Circuit "easily conclude[d] that Jamsostek's acts . . . [were] *carried out in its capacity* as Indonesia's default health insurer" and therefore affirmed the finding of immunity.  *Id*. at 178 (emphasis added).  That is, because Jamsostek's actions "in connection with the administration of Indonesia's national health insurance program [were] sovereign in nature," they "[did] not suffice to bring it within the 'commercial activity' exception" and "to hold otherwise . . . would allow the exception to swallow the rule of presumptive sovereign immunity codified in the FSIA."  *Id*. at 178.

Plaintiff's claims are predicated on conduct carried out by the PUB in its capacity as the utilities regulator of the Province of Manitoba—*i.e.*, requesting information relevant to its risk review of Hydro from parties, including, but not limited to, from Plaintiff; meeting with those parties; and setting forth the terms pursuant to which such information would be accepted and used in its investigation of Hydro's risk profile.  (Compl. ¶¶ 155, 167, 199, 203, 205, 222; Lee Decl., Ex. F (PUB Order 30/10) at 30-31, 36-39, 44-45); *see Jamsostek*, 600 F.3d at 178.  Notably, Plaintiff concedes that the reason it contacted the PUB was to assist the PUB, in its capacity as "the regulator responsible for monitoring Hydro," in understanding the "grave fiscal and public safety risks" posed by Hydro.  (Compl. ¶¶ 150, 153.)  Plaintiff also concedes that in submitting its reports to the PUB, it did so pursuant to the confidentiality provisions set forth in PUB Rule 13 (Compl. ¶ 157), which state, *inter alia*: (i) that the PUB "may receive information in confidence on *any terms it considers appropriate in the public interest*"; and (ii) that "[w]here disclosure of any document is refused due to a claim for confidentiality," the PUB may

nonetheless "order the document be placed on the public record" or "order an abridged version of the document to be placed on the public record" following the PUB's hearing of the interested party's claim for non-disclosure. (Lee Decl., Ex. D (PUB Rules) §13(2), (3) (emphasis added); Compl. ¶ 157.) Likewise, Plaintiff concedes that the PUB's alleged access to and dissemination of A Star's reports occurred in connection with a PUB hearing involving allegations of Hydro's mismanagement. (Compl. ¶¶ 167, 169, 199, 203, 222, 229.)

As the actions allegedly taken by the PUB were performed in "respect to its role as [Manitoba's utility regulator]," *Jamsostek*, 600 F.3d at 177, and are indisputably not "the type of actions by which a private party engages in trade and traffic or commerce," *Nelson*, 507 U.S. at 362, the PUB's actions in question do not constitute "commercial activity" within the meaning of the FSIA. *See also USA Tropicals v. Zim Amer. Israel Shipping*, No. CV2005-5836 (RJD) (MDG), 2006 WL 845406, at *2 (E.D.N.Y. Mar. 30, 2006).

**(2)** *The services Plaintiff performed at the PUB's direction were directly intertwined with the PUB's governmental function*

Plaintiff's contention that the PUB engaged in "commercial activity" by virtue of "A Star's performance under [the consulting] agreement in New York" (Compl. ¶¶ 30, 36), is untenable where the services allegedly performed by Plaintiff are directly "intertwined" with the PUB's government function, *Hijazi*, 689 F. Supp. 2d at 673. Here, Plaintiff alleges that its consultancy was directed to provide information concerning Hydro's risk management to the PUB in its review of Hydro's risk management strategies. (*See* Compl. ¶¶ 151, 153, 167, 199, 222, 227; Lee Decl., Ex. F (PUB Order 30/10) at 30-31, 36-39.) Such services allegedly included: the submission of its reports to the PUB (Compl. ¶ 203); meeting with independent consultants of the PUB (Compl. ¶¶ 202, 206); and participating in a procedural redaction process (Compl. ¶¶ 199, 205, 222). As alleged, such services were provided in connection with the

PUB's investigation and regulatory review of Hydro's risk management strategies and therefore cannot be characterized as "commercial" in nature because: (i) Plaintiff's employment is governmental in nature where its consultancy was directed in furtherance of the PUB's regulatory duties; and (ii) the activities performed by Plaintiff are clearly intertwined with the PUB's government function of assessing Hydro's risk management. *Hijazi*, 689 F. Supp. 2d at 673-74; *see also Kato v. Ishihara*, 360 F.3d 106, 112 (2d Cir. 2004) (rejecting plaintiff's argument that her employment was by nature "commercial" where employment activities were rendered on behalf of a foreign state acting in its governmental capacity).

### B. Plaintiff's Demands for Punitive Damages and a Jury Trial Must Be Stricken

As a foreign sovereign (Compl. ¶ 25), the PUB "shall not be liable for punitive damages," 28 U.S.C. § 1606, and cannot be subject to trial by jury, 28 U.S.C. § 1330(a). *Hijazi*, 689 F. Supp. 2d at 671.

## II. COUNTS XIII, XIV AND XV ARE BARRED BY COLLATERAL ESTOPPEL

Claims against the PUB predicated on the PUB's alleged improper publication of Plaintiff's confidential information (*i.e.*, Counts XIII, XIV, XV) are barred by collateral estoppel, which prohibits re-litigation of issues actually litigated and necessarily determined in a prior proceeding. *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995). The PUB's final determination that the redacted copies of the Hydro and KPMG reports placed in the public record (the "Redacted Reports") did not contain any confidential information (Lee Decl., Ex. H (PUB Redaction Order) at 2-15, 39-42) collaterally estops Plaintiff from re-litigating that issue in this Court. *See Faiveley Transp., Inc. v. Wabtec Corp.*, No. 10. Civ. 4062 (JSR), 2011 WL 1899730, at *6-7 (S.D.N.Y. May 13, 2011) (application of foreign law no impediment to application of collateral estoppel); *Alfadda v. Fenn*, 966 F. Supp. 1317, 1325 (S.D.N.Y. 1997) (applying collateral estoppel to judgments issued by foreign courts).

All four prongs warranting application of the doctrine with respect to the PUB's determination are satisfied here. *Cent. Hudson*, 56 F.3d at 368.

*First*, the issues involved in both proceedings are identical. Plaintiff alleges that the Redacted Reports contain "A Star's confidential and trade secret information." (Compl. ¶ 232; *see also* ¶¶ 233, 342, 353). In its Redaction Order, the PUB determined that the Redacted Reports protected any of Plaintiff's confidential information, finding: "[t]he Board has approved redactions by [A Star] where those redactions clearly have the real potential to cause harm to [A Star] if made public." (Lee Decl., Ex. H (PUB Redaction Order) at 38.) *Second*, the issue of whether the Redacted Reports contained confidential information was actually litigated and decided in the PUB's redaction motion process. (*Id.*) *Third*, Plaintiff "had a 'full and fair opportunity' for litigation of the issues in the prior proceeding." *Cent. Hudson*, 56 F.3d at 368. During its Redaction Process, the PUB gave Plaintiff the opportunity to submit proposed redactions of the relevant reports to the PUB, and the PUB noted that it would treat Plaintiff's written redactions as "motion[s] before the Board." (Lee Decl., Ex. F (PUB Order 30/10) at 30-31, 33-34, 38.) *Fourth*, the determination of the confidentiality issue was "necessary," *Cent. Hudson*, 56 F.3d at 368, to support the findings in the PUB Redaction Order, which is a valid and final judgment, afforded the same treatment as orders from the Court of Queen's Bench and appealable directly to the Court of Appeals. (Lee Decl., Ex. C (PUBA) §§ 24(4), 58(1).)

### III.   THE ACTION SHOULD BE DISMISSED FOR *FORUM NON CONVENIENS*

Dismissal of the action is also appropriate pursuant to the doctrine of *forum non conveniens* because a more convenient forum exists to adjudicate such claims: Manitoba.[5] Having previously challenged the PUB Redaction Order in two Manitoba proceedings, *supra* at

---

[5] Plaintiff's copyright claim, Count VIII, should be dismissed pursuant to Rule 12(b)(6) for the reasons set forth in the Memorandum of Law of Defendant Hydro at Part I, which the PUB joins.

5, it is apparent that Plaintiff is forum shopping.  Application of the three factors enumerated by the Second Circuit in *Lust v. Nederlandse Programma Stichting*, requires dismissal here.  501 F. App'x 13, 14-15 (2d Cir. 2012) (citing *Iragorri v. United Techs. Corp.*, 274 F. 3d 65, 71 (2d Cir. 2001) (en banc)).  *First*, Plaintiff "appears to have been motivated by forum shopping considerations," and its choice of forum is "entitled to only minimal deference." *Lust v. Nederlandse Programma Stichting,* No. 10 Civ. 8963 (WHP), 2011 WL 3279183, at *1 (S.D.N.Y. July 18, 2011), *aff'd*, 501 F. App'x 13 (2d Cir. 2012).  *Second*, Manitoba is adequate where "defendants are amenable to service of process there and the forum permits litigation of the subject matter of the dispute."  *In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 499 (2d Cir. 2002).  *Third*, public and private factors weigh in favor of adjudication in Manitoba because nearly all the relevant witnesses and evidence are in Canada; and the importance of settling local disputes in a local forum weighs heavily in favor of Manitoba.  *See Lust*, 2011 WL 3279183, at *2.

## CONCLUSION

For the foregoing reasons, the PUB respectfully requests dismissal of the Complaint with prejudice and such further relief as the Court may deem just and proper.

Date:   New York, New York
        November 22, 2013

LEVINE LEE LLP

By:   /s/ *Kenneth E. Lee*
         Kenneth E. Lee
Seth L. Levine
Miriam L. Alinikoff
Jonathan S. Zelig
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 223-4400
Facsimile: (212) 223-4425
klee@levinelee.com