**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

THE A STAR GROUP, LLC,

                Plaintiff,

    v.

MANITOBA HYDRO; KPMG LLP
(CANADA); KPMG LLP (US); and
MANITOBA PUBLIC UTILITIES BOARD,

             Defendants.

---

Case No. 13-cv-4501 (PAC)

**Oral Argument Requested**

**ECF CASE**

# EXHIBIT H

*to the*

**DECLARATION OF KENNETH E. LEE IN SUPPORT OF DEFENDANT**
**THE PUBLIC UTILITIES BOARD OF MANITOBA'S MOTION TO**
**DISMISS THE COMPLAINT AND STRIKE THE DEMAND FOR A JURY TRIAL**

| | |
|---|---|
| **M A N I T O B A** | **Order No. 95/10** |
| **THE PUBLIC UTILITIES BOARD ACT** | |
| **THE MANITOBA HYDRO ACT** | |
| **THE CROWN CORPORATIONS PUBLIC REVIEW AND ACCOUNTABILITY ACT** | **September 20, 2010** |

Before:    Graham Lane, C.A., Chairman
           Robert Mayer, Q.C., Vice-Chairman
           Leonard Evans, LLD, Member

## RISK REPORTS REDACTIONS ORDER

## Table of Contents

**Page**

| | | |
|---|---|---|
| 1.0 | Executive Summary | 2 |
| 2.0 | BACKGROUND | 4 |
| 3.0 | Redactions Motions Process | 7 |
| 4.0 | MH Redactions | 15 |
| 5.0 | Principles of Confidential Filings Before PUB | 25 |
| 6.0 | Board Findings Respecting MH Proposed Redactions | 29 |
| 7.0 | Board Findings re:  NYC's Public Document Proposal | 32 |
| 8.0 | Board Findings re: NYC Proposed Redactions of MH Risk Reports and the KPMG Report | 35 |
| 9.0 | Conclusion | 39 |
| 10.0 | IT IS THEREFORE ORDERED THAT: | 41 |

Appendix A:  The NYC's June 30, 2010 'Public Document'

Appendix B:  MH's March 2007 Comments on the NYC's December 4, 2006 Report

Appendix C:  MH's May 2007 Comments on the NYC's December 4, 2006 Report

Appendix D:  MH's October 2008 Middle Office Review of the NYC's Reports

Appendix E:  MH's October 2008 Middle Office Comments on the NYC's Long Term Contracts
Risk Report

Appendix F:  MH's May 2008 Review of the NYC's January 2008 and December 2006 Reports

Appendix G:  MH's December 2008 Export Power Sales Risk Management Issues

Appendix H:  KPMG's April 2010 Report and Appendices

Appendix I:  Timetable

## 1.0    Executive Summary

By this Order, The Public Utilities Board (PUB or Board) approves:

a)    certain proposed redactions by Manitoba Hydro (MH) and the New York Consultant (NYC) to be found in the KPMG report and appendices, and in the following Manitoba Hydro risk reports:

  (1)    Comments on the NYC's Report dated December 4, 2006 – March 2007;

  (2)    Comments on the NYC's Report dated December 4, 2006 – May 2007;

  (3)    Middle Office Report, Review of NYC Reports – October 2008;

  (4)    Middle Office Comments on NYC Long Term Contracts Risk Report – October 2008;

  (5)    Middle Office Reports – Review of January 2008 and December 2006 NYC Reports;

  (6)    Export Power Sales Risk Management Issues – December 2008.

b)    filing on the public record, for information purposes, of a copy of a 'public document' prepared by NYC as a substitute for the original NYC risk reports filed by Manitoba Hydro with the Board on November 6, 2009; and

c)    a new timetable for completion of MH's 2010/2011 and 2011/12 General Rate Application ("GRA") hearing.

September 20, 2010
Order No. 95/10
Page 3 of 42

This Order follows a motions process directed by the Board pursuant to terms set out in PUB Order 30/10.   Redactions proposed by MH and NYC to the following sets of reports were circulated by the Board to all Interveners:

1.      One NYC prepared 'public document' sought by NYC to stand in lieu of five NYC risk reports originally prepared by the NYC for MH,

2.      Six MH reply risk reports without certain appendices in the sixth report which are duplicates of certain of the NYC risk reports; and

3.      KPMG report and appendices, excluding appendix D which contains a duplicate of one of the NYC risk reports.

The Board sought intervener comments with respect to the proposed redactions, and allowed MH and the NYC an opportunity to provide their rationale for their proposed redactions.   In accordance with the Board's Rules, the Board has reviewed the full reports as originally filed, and in consideration of all submissions by the moving parties and the Interveners, the Board has approved certain redactions as proposed by MH and the NYC, and has also disallowed certain redactions based on its Rules and the reasoning contained herein.

The Board gives notice of its decisions to MH and the NYC through this Order and provides each of MH and the NYC (through their respective legal counsel) the Board's approved version of the risk reports, that will be publicly filed on the PUB record of the MH 2010/11 and 2011/12 GRA proceeding, and distributed to registered Interveners, seven days from the date of this Order.   The Board has determined it is appropriate to provide each of these entities the opportunity to examine the final version of the documents before they are made public.

## 2.0    BACKGROUND

Pursuant to Order 17/10, the Board directed that a comprehensive risk review take place as part of MH's GRA process.

As stated in Order 30/10:

> "The Board must act within its jurisdiction to set fair and reasonable rates in the GRA by balancing financial health and future financial viability of MH with the needs of consumers."

The Board restates, as found in Order 17/10:

> "A review of the risks faced by MH will proceed as an integral part of the Board's rate review and rate setting jurisdiction.  There are a multitude of risks faced by MH as part of its business activities and plans.  … those risks include drought, export markets, interest and exchange rates, labour issues, catastrophic loss of system supply, and changes in accounting standards (IFRS-International Financial Reporting Standards)  The Board must satisfy itself that these and other risks to MH are appropriately managed by the Utility, as part of the Board's rate approval mandate.  The Board also needs to be assured that there are no unreasonable risks "lurking" in the future that, if actualized, are likely to result in undue rate implications for the Utility's Manitoba Consumers.
>
> … the reputation of MH and the confidence of all stakeholders in the Utility is of utmost importance to the Utility and the general public interest."

By Order 30/10 the Board required MH to file, on the record of this proceeding, a set of risk reports which MH had provided to the Board in November 2009 in response to a Board directive in a prior Board Order.  The risk reports initially prepared for MH by the NYC (the NYC

reports) are part of this set. The unredacted reports were filed by MH in confidence and have not been disseminated in their original state. Both MH and NYC have maintained that included in these risk reports is information that needs to be kept confidential and not placed on the public record.

Order 30/10 directed a motions process for determination of any proposed redactions of the NYC reports, MH reports responding to the NYC reports, and the KPMG report which was prepared for MH, completed in April 2010 and subpoenaed by the Board.

The Board notes that the NYC also provided its reports to the PUB outside of any specific regulatory process, in October 2009. The NYC ultimately withdrew its reports from the Board. The redaction process is based upon MH's filings, and the KPMG report which was subpoenaed by the Board in accordance with the Board's powers. The Board confirms that no use has been made of the reports originally filed by the NYC.

The NYC is not an intervener in the GRA process, but the Board confirmed that it welcomed information to be provided by the NYC to assist the Board's understanding of risk issues identified by the NYC arising from the services provided by the NYC to MH and encapsulated in the NYC's risk reports.

The Board made clear that NYC's participation was voluntary and that should the NYC be in a position to provide useful information respecting risk issues, the Board would consider funding the NYC for various steps in the process. The Board specifically indicated it would encourage the NYC to meet with the independent experts retained by the Board to share with them, information of relevance with respect to these risk issues.

The PUB conducts a public process for MH's regulatory rate hearings, in accordance with *The Public Utilities Board Act*. Hearings are mandated to be public, and although the Board may receive materials in confidence, or testimony in camera, such proceedings are rare.

The Board reiterates that it wishes the risk review, as part of the overall GRA proceedings, to be as transparent as possible.

The Board also restates that it's jurisdiction does not mandate adjudication of contractual issues between MH and the NYC.

The Board has control of its process and is always called upon to determine threshold issues of relevance in its rate making capacity. Factors which the Board may consider with respect to rate setting for MH include (as contained in *The Crown Corporations Public Review and Accountability Act*):

26(4)　　In reaching a decision pursuant to this Part, The Public Utilities Board may

(a) take into consideration

(i) the amount required to provide sufficient moneys to cover operating, maintenance and administration expenses of the corporation,

(ii) interest and expenses on debt incurred for the purposes of the corporation by the government,

(iii) interest on debt incurred by the corporation,

(iv) reserves for replacement, renewal and obsolescence of works of the corporation,

(v) any other reserves that are necessary for the maintenance, operation, and replacement of works of the corporation,

(vi) liabilities of the corporation for pension benefits and other employee benefit programs;

(vii) any other payments that are required to be made out of the revenue of the corporation,

(viii) any compelling policy considerations that the board considers relevant to the matter,

(ix) any other factors that the board considers relevant to the matter; and

(b) hear submissions from any persons or groups or classes of persons or groups who, in the opinion of the board, have an interest in the matter.

## 3.0   Redactions Motions Process

With regard to the NYC reports, MH reports and the KPMG report and appendices, Order 30/10 outlined a process to allow MH and the NYC the ability to propose redactions which would be decided upon by the Board as preliminary motions under Board Rules in accordance with the confidential filings criteria in PUB Rule 13.  PUB Rule 13 states:

> 13(1)    Where, a document is filed with the Board by a party in relation to any proceeding, the Board shall, subject to subsection (2), place the document on the public record.
>
> (2)    The Board may receive information in confidence on any terms it considers appropriate in the public interest,
>
> > (a)   if the Board is of the opinion that disclosure of the information could reasonably be expected
> >
> > > (i)    to result in undue financial loss or gain to a person directly or indirectly affected by the proceeding; or
> > >
> > > (ii)   to harm significantly that person's competitive position.
> >
> > or
> >
> > (b)   if
> >
> > > (i)    the information is personal, financial, commercial, scientific or technical in nature; or

   (ii) the information has been consistently treated as confidential by a person directly affected by the proceeding; and

   (iii) the Board considers that the person's interest in confidentiality outweighs the public interest in the disclosure of the information.

(3) Where disclosure of any document is refused due to a claim for confidentiality and a claim for public disclosure of such documents has been made, the Board shall hear such claim on a motion made under Rule 22, and may

   (a) order the document be placed on the public record, subject to Subsection 13(5);

   (b) order the document not be placed on the public record, with such conditions on access imposed as the Board considers appropriate;

   (c) order an abridged version of the document to be placed on the public record; or

   (d) make any other order the Board finds to be in the public interest.

(4) For purposes of hearing a motion in respect of a disputed claim under Subsection (3), the Board may examine the document or other evidence in question to ascertain whether or not the claim for confidentiality or the claim for public disclosure will be sustained.

(5) Where the Board has decided to place on the public record any part of a document that was filed in confidence in accordance with Subsection 13(2) and 13(3), the party who filed the document shall be given an opportunity to request that it be withdrawn prior to its placement on the public record.

September 20, 2010
Order No. 95/10
Page 9 of 42

The KPMG report contains KPMG's analysis of issues identified by the NYC in its reports. Given the anticipated subject matter of the KPMG report, Order 30/10 outlined the same redaction motions process to allow MH and NYC to propose redactions to the KPMG report.

Redactions were proposed by both MH and the NYC. Redacted versions of the KPMG report and appendices, and the MH reports were provided to all Interveners for commentary and response respecting the redactions and principles to be considered by the Board under Rule 13.

It was open to both MH and the NYC to reply to the submissions of Interveners and to make submissions to support their reasoning respecting the confidential nature of material to be redacted and to establish that the Board's Rule 13 test was satisfied, such that the redactions as proposed should stand.

MH proposed redactions to all of the NYC reports, certain of the MH reports and the KPMG report and appendices, all in accordance with eight confidentiality factors which it advanced as its basic rationale for the need for confidentiality including:

(1)     Names or acronyms of specific Manitoba Hydro customers, competitors and consultants when linked to a specific issue;

(2)     Specific data, forecasts, terms, conditions and prices contained in reports, agreements, contracts and term sheets which are commercially sensitive;

(3)     Detailed non-standard utility practice solution techniques utilized in short- and long-term planning of capacity, energy and water management with specific reference to the mathematical representation of the hydraulic system, the transmission system and the electricity market;

September 20, 2010
Order No. 95/10
Page 10 of 42

(4)     Manitoba Hydro's commodity price forecasts for electricity and natural gas including annual pricing escalators, specific pricing policies and strategies for energy, capacity, transmission and environmental attributes;

(5)     Cost estimates of any new resources on the Manitoba Hydro system;

(6)     The generation component of Manitoba Hydro's marginal cost of energy;

(7)     Manitoba Hydro's estimate of economic and financial benefits (eg. NPV, retained earning calculations) from term sheets currently under negotiation or for sale agreements that have similar time frames as those which are still under negotiation or those sale agreements which have not received regulatory approval.

(8)     Information which discloses the identity of the New York Consultant or its principal.

Manitoba Hydro number coded all of its redactions in accordance with these eight factors.

The NYC made its redactions, but supplied no specific criteria when the redacted documents were provided.

The Board notes that the NYC has not provided a written submission supporting its proposed redactions in the MH reports or the KPMG report and appendices.  Further, the NYC provided its public document, meant to replace the NYC risk reports, as the public filing available in the GRA process in a redacted form. The Board has not been provided with an unredacted version of the NYC public document.

Without receiving a formal submission by the NYC, the Board is unable to record, for purposes of this Order, any specific points or principles specifically advanced by the NYC which ground the NYC's rationale for its claim of confidentiality regarding its extensive redactions of all of the reports at issue.

September 20, 2010
Order No. 95/10
Page 11 of 42

However, the Board is satisfied that certain general commentary by the NYC, as summarized in this Order, from the NYC's exchanges with the Board over the time period of the redactions process, outlines the general nature of NYC's position respecting its proposed redactions.

The Board understands that the NYC takes the position that the redacted information, sought to be protected by NYC, ought to be maintained in a confidential fashion. The NYC has asserted confidentiality provisions in its contracts with MH as prohibiting MH or any other third party, including the Board, from public disclosure or making use of the redacted portions of the reports as proposed by the NYC.

The NYC has used the term "reverse engineering" in various exchanges with the Board and its counsel, which the Board takes as reference to the possibility that access to NYC's information may allow competitors, in the NYC's industry, to gain a financial advantage and cause the NYC financial harm, by the competitor working back from the alleged proprietary information in the reports. The NYC has said numerous times that it will suffer severe harm and significant financial loss if the redacted information is placed on the public record.

Beyond general assertions however, no detailed explanation of cause and effect from NYC has been provided. While the Board requested such explanation, and provided the NYC with time lines and fee budgets, NYC was unable to provide the information within the approved timelines.

The NYC asserts that its proprietary rights to the redacted information in the reports is protected by U.S. law, and specifically the laws of the State of New York, pursuant to its agreements with MH.

The NYC asserts that it will make civil claim against all whom it believes may be accountable for wrongful third party access and/or public disclosure of its alleged protected information and that it will seek to prosecute such parties, both personally and corporately if these suggested violations of its rights are allowed to occur.

September 20, 2010
Order No. 95/10
Page 12 of 42

The NYC has repeated such threats numerous times over the course of the last several months, and advises at times that such threats and legal positions are advanced by it on the instruction of its New York legal counsel. With respect to proposed redactions by the NYC of the KPMG report and appendices, the NYC specifically advised the Board in writing as follows:

> "At the direction of NYC's legal counsel, the Board is advised:
>
> Please note this KPMG section is sent on a non-waiver basis and without prejudice to any other legal rights, or remedies (in equity or law) NYC has in U.S. and Canadian law, for violations to my proprietary confidentiality and trade secrets rights including but not limited to breaches of contract, unlawful access to proprietary materials, fraud and other violations to my rights by Manitoba Hydro, KPMG or their employees, and any other persons or entities acting in concert therewith.
>
> In creating this Report KPMG improperly utilized NYC Proprietary Materials without the authorization and consent of NYC, and in violation of certain express agreements between NYC and Manitoba Hydro. NYC reserves all rights therein for legal remedies and the performing of these redactions does not cure KPMG's or Hydro's wrongdoing or cease to enjoin any other parties who acted in concert with this behavior."

Further, by letter of September 3, 2010, and rather than making a submission on the merits of its redactions, NYC advised the Board that it required a declaratory judgment that NYC is not subject to Manitoba jurisdiction and confirmation that any further filing by the NYC is done subject solely to NY law and NY jurisdiction to protect NYC proprietary interests and materials. NYC stated that it reserves its rights to jurisdiction. NYC further asserts, in its September 3, 2010 correspondence, that any adjudication of redactions must be completed under a court of law, and more specifically under New York law. The NYC asserts it has rights arising from its contract with MH. The NYC states that the Board has no jurisdiction to overturn NYC confidential information and that NYC will not consent to the jurisdiction of the Board.

September 20, 2010
Order No. 95/10
Page 13 of 42

Finally, NYC states:

> "In the event that the PUB discloses such information to the public
> without the express written consent of NYC, you are hereby informed that
> NYC will initiate legal action against the PUB and each of its individual
> members/employees, collectively and individually, for any and all
> damages and other harm resulting from such actions.
>
> Such legal action may include if necessary demands for criminal
> prosecution filed with law enforcement agencies in the United States and
> in Canada."

Moving past the above comments from the NYC, the Board notes that the NYC took two
different approaches for its proposed redactions.

Firstly, the NYC made actual redactions in the body of the MH reports and the KPMG report and
appendices. The NYC blackened or deleted words or pages to indicate its proposed redactions.
No coding or categorization was applied by NYC to its redactions.

Secondly, for the five NYC risk reports which NYC had initially authored at the direction of
MH, the NYC proposed that none of its reports be placed on the public record. Instead, the NYC
proposed that a newly created "public document" authored by the NYC, containing 286 issues
respecting MH risks, be placed on the public record. The NYC's public document was sent to all
of the Interveners after MH had proposed its own redactions to this new document.

In conjunction with this public document, the NYC proposed that the GRA Interveners could
have access to the original NYC risk reports, with minimal redactions, upon any or all of the
Interveners signing a non-disclosure agreement to be prepared by the NYC.

Submissions on all of the proposed redactions by MH and the NYC, including the NYC's public document proposal were received from CAC/MSOS, MIPUG, RCM/TREE.  In addition, MH commented on the proposed NYC redactions, as well as NYC's public document proposal.

Once the Intervener's submissions were received and circulated to MH and the NYC, both MH and the NYC were afforded an opportunity to provide any further submissions to support their proposed redactions.  MH provided its reply and further submissions to support its redactions, and to specifically respond to certain specific redaction issues raised by the Interveners.

As earlier indicated, NYC did not provide a further submission to support its proposed redactions, although a timeline and funding for the submission was assured by the Board both directly to the NYC and to its Canadian legal counsel.

The Board has therefore not considered any submissions from the NYC beyond the general principles the NYC had previously enunciated respecting the basis for its need to protect confidential information, which the NYC asserts is contained in all of the risk reports under consideration in the motions process.

CAC/MSOS filed a preliminary objection to the motions process.  Counsel for CAC/MSOS asserted that the moving parties ought to be required to file their submissions in support of their proposed redactions for review by the Interveners before the Interveners were required to provide submissions.  The objection notice requested that the Board direct the moving parties to take this step and require preliminary submissions to support the redactions.  Alternatively CAC/MSOS suggested that MH be required to provide its response to the NYC's proposed redactions, with the Interveners being able to review MH's submission prior to providing their submissions on the NYC's motion for redactions.  The Board considered CAC/MSOS's objection, and responded to CAC/MSOS and all participants, confirming that the Board would not modify the motions process.  The Board was satisfied that all Interveners had sufficient information to comment, in making their submissions, on the general principles with regard to

Board Rule 13 and the nature of the redactions.  The Board advised all participants that it had copies of the full unredacted reports and the Board must review those reports to determine what redactions are proper.

## 4.0    MH Redactions

### 4.1    MH Submissions in Support of its Redactions

In support of its redactions, MH states that the eight criteria identified (and used by MH in its coding of the redacted documents) are sufficient to disclose the nature of the confidential filings based upon the content included in the formulated criteria advanced by MH.  MH also offers Interveners the opportunity, outside of the formal motions process, to contact MH for further explanation of any specific points contained in the criteria listing, or any specific points on proposed redactions once the Interveners had an opportunity to review the redacted filings.

MH asserts that its goal was to keep redactions to a minimum.

MH specifically identifies one of the key aspects of its redactions to be related to term sheets, which are documents based upon ongoing negotiations for export sales of power from MH to certain of its customers (counter parties), and which term sheets include the identity of the counter party and specific terms of the negotiated agreement, including pricing.

MH asserts that the information redacted respecting term sheets has consistently been held confidential.  MH also indicates it is under confidentiality agreements, respecting the contents of the negotiations, with the counter party with whom MH is in negotiations.

MH asserts that it will suffer irreparable harm if parties to the negotiations learned of the status of other negotiations as between MH and other counter parties.  MH says that both the Utility

and the counter party would suffer harm to their commercial interests if these term sheet details are not kept confidential.

MH states that the factors to be considered arising from Board Rule 13, and the general issue of confidential business information include (i) the exclusivity of the specific information both to MH itself, and the extent to which the information is internally limited and protected within MH; (ii) the value of information to MH and its competitors; (iii) the money spent and effort made by MH to create the information; and (iv) the ease or difficulty of duplicating the information by third parties including competitors or counter parties.

MH provided to the Board, details of the steps taken by MH to secure and protect its confidential information.

In consideration of these particular factors, MH asserts that with respect to the particular information redacted within the categories identified, the information has always been kept confidential by use of agreements and such information is protected both from outside parties and also within MH. MH asserts the information is valuable to both itself and to its competitors. MH states that all of the information redacted, in accordance with its stated eight criteria meet the tests under PUB Rule 13, including 13(a) or 13(b) of the Rule.

In reply to commentary and submissions of MIPUG on the redaction motions, MH confirms that the NYC risk reports, the MH reports and the KPMG report are all focused on MH's participation in the competitive export market. MH suggests that the Board should review the proposed redactions and application of Rule 13 in this specific context and that any determination with respect to redactions would, by implication, be limited to these specific circumstances and the facts associated with the creation of these specific reports.

In reply to the submissions of CAC/MSOS, MH suggests that CAC/MSOS's dogmatic position fails to recognize that MH is in a highly competitive export market with a small group of

potential customers. Suggestions by CAC/MSOS that aggregate data be provided would, in the circumstances, be insufficient to mask the information. MH reaffirms that it is subject to confidentiality agreements with counter parties respecting the information sought by CAC/MSOS.

Further, MH replies that it is not prudent to remove the redactions that protect MH's position in the market and which ultimately benefit rate payers in Manitoba for the purpose of allowing the interveners unlimited access to explore certain topics. The public interest, says MH, supports the protection of the redacted information in this circumstance.

MH notes in its submissions that it is prepared to use its best efforts to provide all parties with a level of understanding to meet their needs with regard to redacted information. MH suggests that this is best achieved by interaction during the hearing process and not by further inefficient time consuming pre-hearing processes.

MH responded in detail to all of the specific redaction challenges of CAC/MSOS. The Board will not recount, in this Order, all of the details with regard to specific redaction challenges, but the specific challenges, and MH's response, are found on the Board's public record with respect to this motions process.

Overall, MH has responded in a variety of ways, including an agreement on certain points to remove a proposed specific redaction, indication of a willingness to provide further information in lieu of the redacted information, or by maintaining the right to strict confidentiality of certain redactions.

As part of its response to specific redaction challenges, MH provides further rationale to support its need to keep confidential key aspects of its long term export contract plans and specific components of its ongoing negotiations for long term export contracts. MH asserts this is within

the context of the operational risk assessment and has the potential to directly affect the current and future financial viability of the Utility.

## 4.2    CAC/MSOS Submissions to MH and NYC Proposed Redactions

CAC/MSOS cites public disclosure of all of the risk reports under review as an essential element of rate regulation of large monopolies in Manitoba.  CAC/MSOS makes reference to the Board's procedural orders in this GRA by which the Board reinforced the need for transparency for procedural fairness and to ensure public confidence in the Board's process.

CAC/MSOS asserts that the onus is clearly on the parties seeking to maintain confidential filing of information to demonstrate a reasonable expectation of undue financial loss or significant harm.

CAC/MSOS agrees with MH as to the various points made by MH challenging the NYC redactions.  CAC/MSOS says that the NYC must go beyond a bare claim to a right to protect proprietary or confidential information; the NYC must demonstrate the harm it would suffer by disclosure.

Further, says CAC/MSOS, it agrees with MH that conclusions are not capable of confidentiality, and nor are commonly known risk techniques or mathematics.  Even unique methodologies, if capable of protection from disclosure, may require the party to elaborate by substituted language as to the essence of the redacted information.

CAC/MSOS states that the NYC has not met the onus for redactions under PUB Rule 13. CAC/MSOS submits that none of NYC's redactions should not be allowed and that such proposed redactions are not in the public interest.

CAC/MSOS says that MH's redactions are overly broad and will impede its ability to properly address risks and opportunities facing MH in the export market.  It will impair this Intervener's

development of an informed opinion on the magnitude of retained earnings required for risk mitigation purposes. Finally says CAC/MSOS the redactions limit the ability to test the accuracy of revenue and export price forecasting of MH.

CAC/MSOS suggests that the process would be better served if a party seeking redaction would be required to consider alternate language that informs public debate.

CAC/MSOS states that overly broad redactions may lead to increased regulatory costs, as Interveners are forced to seek information by interrogatories or on cross-examination to glean information which should have been made available at first instance.

CAC/MSOS says MH has failed to reasonably articulate or demonstrate a prima facie case under Rule 13 to permit many of its redactions.

CAC/MSOS provided a 42 page appendix with its written submission by which it addressed 31 specific MH redaction references in order to detail its concerns and to challenge MH's claim under Rule 13.

With respect to the NYC public document, CAC/MSOS does not agree with the extent of the proposed redactions by MH, but CAC/MSOS does not challenge these redactions. CAC/MSOS sees the NYC public document as a useful discovery tool, and in this light it does not intend to take issue with the proposed redactions in this particular document.

CAC/MSOS agrees with MH that the NYC public document cannot be received as evidence, but holds the strong view that the NYC public document is an important contextual tool for helping parties and the public understand the development of the risk issues review within the GRA. Moreover, says CAC/MSOS, given the serious nature of the media reported claims of the NYC, the public record ought to contain a public articulation of the NYC's concerns.

### 4.3    MIPUG Submissions to MH and NYC Proposed Redactions

MIPUG, in its submission on the redaction motions, made reference to the Board's existing procedural orders and the intention of the Board with respect to the comprehensive risk review in the GRA process.

MIPUG suggests that the Board should consider whether these motions help to inform the Board or whether the motions distract the Board from its purpose, since the Board is not adjudicating disputes between MH and the NYC.

MIPUG says that the Board must consider what information will be available on the public record to all of the parties, including the Board itself, so that any decision the Board issues is based on the Board's reasoning and rationale which will be accessible to any observer.

MIPUG notes that the NYC reports have been entirely omitted by the NYC and supplanted by a public document, on the basis of generic allegations related to confidentiality.  Without any further information, MIPUG states that it cannot provide any meaningful comment on the NYC redactions.

Further, MIPUG notes that it does not support a non-disclosure agreement process as proposed by the NYC for Intervener access to the original NYC risk reports.  MIPUG asserts that any non-disclosure agreement will result in a hearing process that is unworkable, and that undermines the public component of the review.

MIPUG sees the NYC submissions to date, including the proposed public document, to be of little value.  MIPUG submits that the public document not be accepted and that no non-disclosure agreements be allowed to be part of the process.

MIPUG proposes that the Board confirm the NYC reports will not be put on the record and confirm that the Board will not review the reports or use them as the basis for its determination on the merits of the issues in the GRA proceeding.

Alternatively, MIPUG suggests that the Board consider putting all of the reports on the record without any of the proposed NYC redactions.

With respect to the MH proposed redactions, MIPUG notes that the scope of the MH criteria is expansive. As an example, MIPUG refers to criteria number 3 and submits that although application of criteria number 3 is not significant within the context of proposed redactions of the KPMG report, application of criteria number 3 to other MH filed information in future may seriously erode public access to other MH documents, such as the integrated financial forecast.

Finally, MIPUG states that MH should have offered a basic explanation of the material redactions it proposed in order to permit a basic understanding of the purpose and intent of those sections where redactions are claimed.

**4.4     RCM/TREE Submissions to MH and NYC Proposed Redactions**

RCM/TREE notes that Rule 13 provides that all documents ought to be on the public record and redactions allowed only if the PUB reasonably expects that the disclosure of information will result in undue financial loss or gain, will harm a persons competitive position, if the information is personal, financial, commercial, scientific or technical in nature, or is confidential and the Board considers that the confidentiality outweighs the public interest and disclosure.

RCM/TREE reminds the Board of the Board's previously stated desire to comprehensively review all of MH's risks. RCM/TREE states that the NYC proposed redactions thwart the meaningful review of the KPMG report. RCM/TREE notes that it has no means to address the validity of the confidentiality claims of the NYC. The onus to establish the need for confidential

filings of NYC information contained in the reports, says RCM/TREE, is upon the NYC and the NYC has not met that onus. Accordingly, RCM/TREE is of the view that the reports ought to be placed on the public record without the NYC redactions.

As to the MH redactions, RCM/TREE indicates, in reference to Board Order 17/10, that MH supported transparency and indicated a preference to keep the filing of confidential information to a minimum. Order 17/10 also noted that at the pre-hearing conference of December 10, 2009, MH offered to work with the parties to provide a level of disclosure that satisfied their needs without resorting to filing information with the Board in confidence.

Within that context, RCM/TREE identified a number of specific objections to MH proposed redactions in the KPMG report. Finally, RCM/TREE notes that the responsibility for reviewing and determining the appropriateness of the redactions rests with the Board. RCM/TREE states that if a redaction cannot reasonably be justified under Rule 13(2), the Board ought to reject the proposed redaction and place the material on the public record.

**4.5    MH Submissions on NYC Proposed Redactions**

On these redaction motions, MH submits that the Board must seek to balance the need to conduct an open and fair hearing with the potential prejudice of such a disclosure to a party. Only where it is clear to the Board that the disclosure will cause harm to a party should the redaction be allowed says MH.

MH states that the proposed NYC redactions of the KPMG report and appendices are not designed to protect legitimate confidential information but rather to prevent a public review of the analysis and conclusions of KPMG. MH submits that the NYC redactions of KPMG should be rejected.

NYC must establish the basis for claiming confidentiality, beyond assertion, says MH.  NYC must demonstrate the protected information has commercial value accruing to the NYC and that a reasonable expectation of harm can be demonstrated if public disclosure occurs.

MH notes that one of the primary purposes for the engagement of KPMG was to assess NYC's assertions and conclusions.

MH then reviews various content categories, which are claimed to be confidential by the NYC, and which cannot fit the criteria for protection according to MH.

MH refers to 'issues identification' as one such category.  If issues cannot be disclosed in the KPMG report, the document is not then capable of proper review.

MH also refers to KPMG's own conclusions that NYC seeks to redact, and MH rejects this category as notwithstanding basic scrutiny as it is not the NYC's own information.  Moreover MH suggests these redactions appear self serving, when KPMG's conclusions or supporting analysis do not accord with NYC's.

MH submits that in fact, the original NYC reports provided little in the way of supporting analysis for its assertions.  Therefore, says MH, if such analysis was not in the initial NYC reports, KPMG is unlikely to be able to disclose any such analysis on review of these very reports.

MH refers to the principle that trade secrets protection must be based upon unique techniques or formulae created by the NYC and which are capable of protection.  MH submits that application of known risk techniques or mathematical calculations are not confidential, simply because NYC may also employ such known methods.

MH's own data and/or information respecting MH's models belong to MH and NYC cannot claim any right to protection from disclosure of MH's own information, states MH.

September 20, 2010
Order No. 95/10
Page 24 of 42

Finally, MH states that commonly known historic facts which have previously been disclosed or discussed in this forum, and which may impact MH's operations, are claimed by NYC to be confidential. MH states that there is no basis for such redactions.

With respect to the proposed NYC redactions of KPMG, MH rejects them entirely and says that the Board ought not to allow any such redactions.

MH also sets out its position with respect to the NYC proposal for the filing of NYC's recently prepared public document in lieu of the NYC reports in their original state. MH states that it does not see the filing of the original NYC reports as necessary. MH submits that the reports will contribute no value to the hearing, and the process proposed by the NYC, including the need for non-disclosure agreements would make the hearing logistics unworkable and undermine the public review.

MH cautions the Board as to the potential use of the NYC's public document. MH notes the document is unsworn and that no qualifications are established as to the expertise of the author.

MH agrees with CAC/MSOS that the public document cannot be received as evidence in the proceeding.

MH also provides other suggestions as to the issues that may arise with respect to the public document as the matter proceeds and has provided related submissions for the Board's further consideration. MH says that the Board's rate decisions must be based on sworn evidence tested in an open forum.

MH prepared two separate appendices which challenge the proposed NYC redactions in the KPMG report and appendices, and also the proposed NYC redactions in the MH reports. MH filed two versions of these redactions challenge appendices which make reference to individual proposed redactions of the NYC, and provide MH's detailed challenge in principle to the basis of

the claim for confidentiality. MH filed an unredacted version of the challenge appendix for the Board's information in confidence, and also provided the Board with a redacted version of the challenge appendix out of an abundance of caution, given that the Board has not made a ruling on the redactions issues as a whole. The redacted appendix forms part of the public record in this motions process. The Board notes that it has reviewed these appendices submitted by MH for the purpose of its determination of these motions.

## 5.0    Principles of Confidential Filings Before PUB

Rule 13 of the Board's Rules of Practice and Procedure contemplates that documents be placed on the public record of a proceeding, subject only to the exceptions found in Rule 13(2), and a determination by the Board, within its wide discretion under Rule 13, that the criteria under Rule 13(2)(a) or 13(2)(b), or both have been met, such that the confidential filing, or certain sections of a document will be maintained in a confidential way before the Board within a specific proceeding. Although rare, the Board has accepted confidential filings in the past, including by MH. The Board will always have access to all relevant filed materials, whether received in confidence or placed on the public record. Within its jurisdiction, the Board is not required to rely solely upon public filings, and may refer to confidential documentary filings or in camera testimony, to make determinations and to carry out its mandate. Procedural fairness is not denied to Interveners, who participate in the regulatory process to assist the Board to come to a determination; Interveners are granted status by the Board to participate, but are not thereby given rights equivalent of litigants in a court process, by way of comparison. The Board acknowledges the need to conduct this ongoing GRA proceeding in as transparent and public way as possible, while balancing the rights of both MH as applicant, and the third party NYC to maintain information confidential as found within the reports if the Board finds that the criteria in Rule 13(2) have been met.

The Board has considered issues arising under other legislation with similar wording to Rule 13, and within other rulings of Canadian courts where the same general confidentiality principles have been under consideration, in order to obtain guidance in its determination of these redaction motions. While the court cases reviewed are not binding, the Board finds it useful to seek to achieve consistency of approach with these general legal principles in the determination of these motions and ultimately the version of the reports that will be placed on the public record. The cases considered are summarized below:

**Sierra Club of Canada v. Canada (Minister of Finance),** 2002 SCC 41
Sierra Club sought judicial review of a federal government decision to provide financial assistance to Atomic Energy of Canada Ltd. ("AECL") for the construction and sale of two nuclear reactors to China. AECL sought a confidentiality order under Federal Court Rule 151 to protect technical documents of the Chinese government provided to AECL, under a confidentiality agreement, respecting ongoing environmental assessment of the construction site in China. On appeal, the SCC allowed the confidentiality order to be granted.

**Kattenburg v. Manitoba (Industry, Trade and Tourism),** 1999 CanLII 14520 (MB Q.B.)
The applicant Kattenburg, as a citizen of Manitoba, brought an appeal to court arising from an access to information request to the Province of Manitoba Department of Industry, Trade and Tourism, as a public body under *The Freedom of Information and Protection of Privacy Act,* to obtain a Memorandum of Understanding ("MOU") entered into by the Province of Manitoba and Maple Leaf Meats Inc. regarding the establishment of a hog processing plant in the City of Brandon.
The Province refused to disclose the MOU based upon exceptions under sections 18 and 28 of the *Act.* The court considered the provisions of the *Act* in detail, and examined its general rationale, including the need to balance the rights of third parties to the protection of their confidential information against the value to open access to publicly held records in a democratic process. The court held that Maple Leaf Foods confidential information found in the MOU was properly protected from disclosure,

except for portions that had clearly become available publicly which portions were to be disclosed.

**PriceWaterhouseCoopers LLP v. Canada (Minister of Canadian Heritage),** 2001 FCT 1040, 2002 FCA 406 (appeal denied).
A federal *Access to Information Act* request was made to obtain reports prepared for the Department of Canadian Heritage by PriceWaterhouseCoopers LLP ("PWC").   PWC prepared the reports under a confidentiality agreement, and claimed that pursuant to section 20(1) of the *Act*, the reports were properly withheld from disclosure as its unique and novel proprietary product and methodologies would be subject to reverse engineering and would cause PWC to suffer economic harm if disclosed.  There was sufficient evidence, as found by the trial court, to support PWC's claim.  An appeal by the Department was denied, since the Department had failed to cross-examine PWC or test evidence of PWC's allegation of its exposure to loss.

**Atlantic Highways Corporation v. Nova Scotia,** 1997 CanLII 11497 (N.S.S.C.)
The province of Nova Scotia entered into an agreement with Atlantic Highways Corporation ("AHC") for construction of a toll highway.  A third party made an access to information request under *The Freedom of Information and Protection of Privacy Act* for disclosure of the agreement, and a review officer recommended disclosure, which decision is the subject of court appeal under the Act.  AHC claimed that disclosure was protected under the Act as the agreement it created was a trade secret or proprietary to AHC.  AHC also argued that disclosure would cause it commercial harm.  The court on review determined that AHC did not meet the threshold tests respecting confidentiality under the *Act* to protect its agreement.

The Board is satisfied that the key factors for its consideration, in light of its own Rule 13 and its review of the above authorities include:

- there must be real and substantial evidence that supports the claim, for each of MH and NYC, that the proposed redactions are necessary to prevent financial loss or to avoid

September 20, 2010
Order No. 95/10
Page 28 of 42

significant competitive harm. The threat of harm must be a reasonable expectation on the facts and not a mere assertion;

- alternatively, if the Board finds that the personal, financial, commercial, scientific or technical information contained in the reports has consistently been treated as confidential, and that the interest of each of MH and  the NYC in maintaining the confidence outweighs the public interest in disclosure, the Board may then permit the proposed redaction;

- in each case and to the extent that the Board finds that the preliminary conditions exist under Rule 13(2), the Board must weigh the interests of the party seeking to protect the information against the public interest to be derived by disclosure;

- the Board has broad discretion under Rule 13(3) to make any order with respect to a document as it finds will be in the public interest;

- "public interest" is not defined within the Board's Rules; in these circumstances the Board must take into account the context of the proceeding as a whole;

- the public interest in this MH GRA proceeding is for a transparent and open proceeding. As noted in the SCC decision in *Sierra Club*, where there is a significant public component in the subject matter of the hearing, this fact adds weight to the need for openness.  The open review of the risk reports has the potential to enhance the search for accurate information on the risks facing MH and further enhances the ability to test that information.  Public confidence in the outcome of the hearing is important as noted in PUB Order 17/10, given the tumultuous background and continuing conflict between MH and the NYC;

- balancing this specific benefit, as also noted in the *Sierra Club* reasons for decision, is the fact that the general public is unlikely to understand the technical nature of some portions of the proposed redacted information.  Practically in such a case, access adds little to public understanding;

- public interest, with respect to rate regulation and the Board's jurisdiction, includes consideration of the financial viability and wellbeing of MH, as the future of MH affects the prosperity of all Manitobans and impacts directly on rates charged to rate payers.

## 6.0    Board Findings Respecting MH Proposed Redactions

In consideration of the submissions of MH, as the moving party seeking redaction of items categorized under confidentiality criteria numbered 1 to 8, the Board finds that the criteria under Rule 13(2) required to be established by MH for categories 1, 2, 3, 4, 6 and 8 meets the requirements of both PUB Rule 13(2)(a) and 13(2)(b), such that the Board is satisfied that disclosure of the information in these categories may reasonably be expected to cause undue financial loss to MH or to harm significantly MH's competitive position.

Category 8 does not appear to be strictly related to MH's other confidentiality claims under Rule 13.  However, the Board is satisfied that disclosure of the NYC's identity or the identity of its principal, as this matter proceeds pursuant to the Board's decisions herein, is not required and will not assist in any ultimate determinations arising from matters under review.  Given the continuing volatility of issues as between the MH and the NYC (and an ongoing Court of Queen's Bench Application) the Board finds that this detail ought to remain confidential.

The Board has regulated MH's electricity rates in accordance with *The Crown Corporations Public Review and Accountability Act* and *The Public Utilities Board Act* since 1988.  As a result, the Board is well versed with MH's operations, and reviews in detail MH's current

integrated financial forecast filed with every General Rate Application by MH. As a result, the Board is aware of, and MH has disclosed, its projected revenues from all sources including exports in a 20 year projection. The Board is also aware of the general structure of MH's export contracts and of its planning rationale and general capital infrastructure plans for the forward period. MH also conducted a voluntary three day 'workshop' as a component of this GRA proceeding, in order to assist the Board and all Interveners, with a basic understanding of MH's operations and approach to the export market.

As a result of the foregoing knowledge base and having reviewed all of the submissions, the Board is satisfied, that with regard to Rule 13, the disclosure of redacted information, in the above referenced categories, can reasonably be expected to cause commercial and financial harm to the Utility, which is not in the public interest.

The Board also accepts that MH's strategies in the competitive electricity supply market, if made known could jeopardize MH's position in the market. The Board also notes that with regard to specific term sheet negotiations, MH is bound by confidentiality agreements with counter parties. It is not commercially viable to force MH to breach these agreements, or to ignore them in this context.

Also in all of these accepted numerical categories of MH redactions, the Board is satisfied that the redacted information is commercially valuable to MH and has always been guarded from disclosure by MH. The Board finds that access to this information by the Interveners, for the purposes of testing it within the parameters of the risk review, is not a benefit that outweighs the negative consequences which the Board expects to occur if disclosure is made.

It is in the public interest to ensure, in this case, that confidential information coded by MH in categories 1, 2, 3, 4, 6 and 8 is maintained confidential, and the Board hereby determines that the Utility's interest in maintaining confidentiality outweighs the public interest in the disclosure of the information for the purposes of the risk review in this GRA process.

MH has indicated that it has attempted to keep redactions to a minimum. MH has also expressed its willingness to assist the Interveners and Board Advisors in providing enhanced information, where possible, with respect to redacted information in these categories so that in as many cases as possible, the Interveners will have an understanding of the material information which has been redacted, or MH will provide comparable but more generic information that allows the Interveners to make viable arguments or to challenge that information in the hearing process, such that a public transparent risk review is not compromised. The Board fully encourages and expects MH to provide substituted information, and supports the reasonable pursuit by Interveners of such compromise information so that as far as possible, they are equipped with the detail they require to challenge MH, where appropriate, and to make useful submissions in the hearing process on the matters under consideration by the Board.

With respect to MH's assertion with regard to confidentiality for categories (5 and 7) the Board is not convinced that MH has provided sufficient explanation to support a finding, beyond a basic assertion, that there is a need to maintain confidentiality with respect to these categories of information. Accordingly, proposed redactions for these categories 5 and 7 are not allowed and information in these categories will be required to be placed on the public record in the final version of the Board approved redacted risk reports.

MH has not convinced the Board that criteria #5 is a valid criteria for maintaining MH's proposed redactions of cost estimates of new resources on MH's system. The cost estimate of new resources on MH's system are to already be publicly disclosed in MH's capital expenditures forecasts (CEF) as well as underlying MH's Integrated Financial Forecasts (IFF).

Likewise, the Board has not been convinced that MH's criteria #7 meets the tests for keeping MH's estimate of economic and financial benefits of export sales confidential. Indeed, public announcements by MH provide estimates of financial benefit to the Utility, and those financial benefits are to be embedded in MH's Power Resource Plan and Integrated Financial Forecasts.

All such economic and financial forecasts are heavily dependent on assumptions that underlie such forecasts. Changes in assumptions change the estimated benefits.

In the Board's review of the proposed redactions, there were instances where the Board determined that MH's proposed redactions were not consistent with the criteria number ascribed. In those instances, the Board considered whether any other criteria classification was applicable to the proposed redactions, and also considered whether to approve the proposed redactions pursuant to such other criteria classification.

Although in certain instances, based upon submissions of the Interveners, both the Interveners and MH engaged in a specific redactions examination process as part of their filings, the Board has decided to approve or disallow redactions by category of redaction proposed by MH. The Board accepts that by categorizing the nature of the grounds of confidentiality, MH was satisfied that the Board would review its proposed redactions in accordance with its stated principles supporting the redactions. Where however, MH has specifically agreed to remove a proposed redaction, the Board accepts MH's change of position, and agrees that the final version of the public record will reflect MH's decision that if a redaction is removed by it, that information will become public (subject to the further findings identified herein respecting NYC) without further consideration or review.

## 7.0    Board Findings re:  NYC's Public Document Proposal

For reasons contained in this section the Board decides that the NYC public document will replace the NYC risk reports for review as the public record filing in the GRA proceeding.

The original NYC risk reports prepared for MH will not be filed on the public record of the proceeding. The Board will not entertain, as part of its process, creation or completion of non-

disclosure agreements as between Interveners and the NYC for access to the original unredacted NYC reports.

In making this decision, the Board recognizes that the public document does not replace the NYC reports. The public document does not simply contain excerpts from the original NYC risk reports, but is a new document that contains issues from the NYC reports, in some respects a synthesis of certain issues or restatement of new issues based on MH's GRA filings, and also a response to certain matters addressed in the KPMG report.

Further, the Board notes that the NYC public document is not evidence filed by an Intervener or the Applicant. The NYC public document is a filing created by a third party that informs the Board's review and assists the process by bringing forward issues pertaining to MH risks, which may be relevant for consideration by MH, Interveners, the independent experts, and by the Board and its Advisors.

Neither MH, nor any of the Interveners who made submissions, spoke against the public document proposal of the NYC and in favour of placing the NYC reports on the record. MH does not oppose the filing of the NYC public document, upon the acceptance by the Board that it is not evidence, and that it has many limitations. CAC/MSOS strongly supports the acceptance of the NYC public document on the public record of the proceeding as a discovery tool, and one that gives voice to NYC's concerns. MIPUG believes the input to have no value, but does not oppose.

Both MH and MIPUG oppose the proposed non-disclosure agreement concept for Interveners to access the original NYC reports as unworkable and as an impediment to a proper public review. The Board agrees with these submissions. Such a process is fraught with complexity, and the Board expects that such a non-disclosure agreement may be practically impossible to enforce in this procedural context when one considers that the participants represent various segments of classes of ratepayers which are so diverse and in some cases multi-dimensional. One would fully

anticipate, given the history of this matter to date, that the machinations for creation of such agreements could conceivably delay the whole proceeding by several more months. Policing the process thereafter for adherence is not an enviable task and one that the Board is unwilling to carry.

There was consensus among MH and all Interveners who made submissions that the proposed redactions by the NYC, of the MH risk reports and the KPMG report, are without merit and ought not to be allowed.

The Board has discretion with respect to a request for confidential filing of information to make any order the Board finds to be in the public interest. Beyond the proposal of the NYC to substitute its newly created public document in place of the public filing of the original NYC risk reports, the Board has taken into consideration the unwarranted ongoing and escalating costs and possible delays associated with the public filing on the GRA record of the NYC risk reports.

The Board is satisfied that there is significant peril, given the continuing threats of the NYC with respect to potential litigation regarding the public filing of the NYC risk reports and which threats, if materialized, would sidetrack the GRA itself. Mounting costs and delay arising from the public filing of all of MH's risk reports are already significant and have already created undue delay, in the Board's view. The Board intended that a portion of the oral hearing in this GRA process start by mid 2010. Together with delays in the written Information Request process, these redaction issues form part of the explanation for the delay of the oral hearing process, which will now commence in early 2011.

The Board has determined that it is essential to move on with the GRA process so that the Board may provide direction, as it determines, on issues related to the rate application, including MH risk issues, and that it ultimately be in a position to issue rate decisions as soon as possible after conclusion of the oral portion of this hearing. Indeed, all participants to the GRA have implored the Board to move forward with the process. The Board finds it is in the public interest to halt

further wrangling arising from the NYC risk reports which impedes completion of the GRA process.

In addition, the Board accepts that the public document created by the NYC is intended by the NYC to distill issues of risk faced by MH as an appropriate replacement for the content of the NYC risk reports.

## 8.0    Board Findings re: NYC Proposed Redactions of MH Risk Reports and the KPMG Report

The Board has considered the historic context of the creation of the risk reports at issue, and use of the information contained therein, for the purposes of the GRA process.  In early 2004 MH and the NYC entered into business contracts and in late 2008, MH ended its retainer due, apparently due to a conflict as between MH and NYC.  The parties remain at odds and MH rejects the original NYC risk reports.  The Board is given to understand that MH will rely on the KPMG report and other risk reports including the ICF report provided to the Board with its initial GRA filing.  NYC has proposed redactions to MH generated risk reports, NYC's risk reports (for which NYC proposed its 'public document' in place of NYC's original risk reports) and KPMG's report.

The Board also notes developments in the GRA process, pursuant to its procedural Orders including the retainer of the independent experts to examine the relevance of all material risk issues facing MH.  That work is reportedly nearing completion, such that an independent review will be placed before the Board, on the public record, for review and testing by all participants.

The NYC is not an intervener and has no formal ongoing role in the MH GRA process.  However, the Board is aware that the NYC met with the independent experts.  Any information

obtained in the meeting with the independent experts, if germane in the opinion of the independent experts, is expected to be addressed in their report.

As the Board has stated in its previous procedural Orders in this process, this hearing is not to adjudicate between the positions of MH and the NYC. Further, review of risk issues affecting the current and future financial viability of MH is only one aspect of the MH GRA process. Significant additional cost has already been incurred to deal with the risk issues. In part, delay of the proceedings to date is attributable to claims of rights and competitive threats which underlie the redactions by both MH and the NYC.

The Board notes that MH did not refuse to file the NYC reports when it filed the 6 risk report set in November 2009, nor did it raise with the Board any legal barrier to the filing of the risk report set, such as binding confidentiality agreements with NYC. Moreover, MH opposes all of the NYC redactions, and clearly continues to refute the allegations of the NYC, including the allegation that MH is bound by confidential contractual provisions to the NYC and which contractual provisions impact these disclosure issues.

The Board does not need to make a finding as to whether the information sought to be covered by the NYC proposed redactions were or are subject to contractual limitations respecting disclosure. The Board required MH to provide its risk report set, and required pursuant to Order 30/10 that the risk report set be placed on the public record of this proceeding, subject only to redactions motions and the Board's ruling. The Board concludes, from MH's actions including its submissions on these motions, that MH does not see itself as bound to any enforceable confidentiality obligations to the NYC.

The NYC has always had the ability to take its own action to protect its proprietary information in the civil court realm, in whatever jurisdiction it chooses. Resolution of the NYC's proprietary rights claims is not for the jurisdiction of the Board and those issues are not before the Board. The Board is satisfied that, within its jurisdiction in this process, it has taken all proper steps to

obtain the necessary information from MH respecting risk issues faced by MH, while allowing this process to unfold to safeguard valid claims of confidentiality. These steps have occurred within the Board's jurisdiction in Manitoba and pursuant to its legislative mandate.

The NYC has not met its onus with regard to all but a very few of its proposed redactions. The Board has therefore determined, on the test under Board Rule 13, and in accordance with the principles set out herein, (which are applicable to this redactions motions process), that only a very few proposed redactions meet the threshold test under Rule 13(a). The permitted NYC redactions, on their face, and in the Board's determination, meet the necessary criteria when combined with the position advanced by the NYC in correspondence (although the NYC did not file a formal submission).

SUMMARY OF THE BOARD'S REDACTIONS DECISIONS:

Accordingly, and for all of the proposed redactions of the various risk reports, the Board determines that it will proceed as follows:

1.     The Board has approved certain proposed redactions which are contained in the Board's final form of the KPMG report and appendices, and as contained in the Board's final version of the MH risk reports, based on proposed redactions of MH and the NYC.

2.     The Board will receive for general information the 'public document' put forward by the NYC in lieu of the NYC risk reports being tabled publicly. The original NYC reports prepared for MH will not be put on the public record of this proceeding and no parties will make use of this group of reports in the GRA process. The Board retains the right to consider any or all of the unredacted reports originally filed by MH as it deems necessary in order to properly carry out its jurisdiction, including completion of the risk review.

September 20, 2010
Order No. 95/10
Page 38 of 42

3.    Appendix "D" of the KPMG report is to be removed from the KPMG report, as it
      contains a reproduction of one of the original NYC risk reports (prepared for correlative
      purposes by KPMG).  Appendix "D" therefore will not be considered and not publicly
      tabled.  Also, *MH's December 2008 Export Power Sales Risk Management Issues* report
      Appendices 1, 6 and 7 are to be removed and will not be on the public record.

4.    NYC redactions are allowed and maintained whereupon the Board's review of specific
      words or phrases clearly disclose methodology employed by the NYC and which
      methodology references appear, *prima facie*, to be a unique application of methodology
      or an approach established by the NYC.  The Board has made this ruling with limited
      information from the NYC, but has weighed the NYC's claim and the potential for harm
      as alleged by the NYC and its competitive interests in the risk industry, against the public
      interest in disclosure.  The Board has approved redactions proposed by the NYC where
      those redactions clearly have the real potential to cause harm to the NYC if made public.

5.    The Board permits the name of the NYC and the name of proprietary tools used or
      developed by the NYC to remain confidential, and therefore such redactions are
      permitted.

6.    Redactions as proposed by the NYC and not allowed include, by category:

      •  MH information and data;

      •  generally known risk concepts and/or risk principles;

      •  generally known mathematical concepts and calculations;

      •  NYC conclusions or analysis of MH risk matters, including graphs or charts
         representing calculations based on MH data; and

- NYC conclusions and findings disclosed by the NYC in the NYC's public document.

It is of significance to the Board in making its decision that the original NYC reports do not contain formulae, any detailed explanation of NYC's methodology, nor any software or hard copy data respecting software details or outputs generated by the NYC for MH. This finding does not infer that the NYC's conclusions are not valid, simply that the supporting detail is by and large not contained in the NYC Reports.

The Board further notes that it has obtained clarification, upon the inquiry of the independent experts, as to certain general principles regarding the nature of confidential information in the risk advisory industry in order to assist the Board as to the nature of the confidentiality claims it has reviewed regarding the redactions proposed.

## 9.0    Conclusion

MH and the GRA Interveners will now have access to public record versions of the KPMG report and appendices, MH risk reports, and the NYC 'public document' which identifies risk issues, for potential further consideration. The independent experts' report will supplement the current set of risk reports available, as will any risk reports to be filed by the Interveners.

The public oral hearing of this GRA process is expected to include experts by one or more of the Interveners on issues of risk.

The Board is confident that a comprehensive public review will be achieved on this basis and in weighing all factors in the GRA process, these determinations are found by the Board to be the best approach to meet the public interest in rate setting while protecting legitimate confidential information contained in the reports pursuant to claims by MH and the NYC.

As noted in Board Order 30/10, the Board is satisfied that the independent experts retained by the Board will be able to shed light on the material risks which they identify facing MH in its operations including, with respect to risks in MH's export market planning and related financial assumptions for the short and long term.

The independent experts' findings, combined with the risk reports that are on the record and further evidence and information that will come forward in the remainder of the hearing process, including oral evidence of risk experts for MH and Interveners, will provide a comprehensive grounding and testing of information in a public forum needed by the Board to properly consider risk matters within the context of MH's GRA.

The entire MH GRA can now proceed without further delay.  In this regard the Board issues, as an Appendix to this Order, a new timetable for the balance of the process.  The Board notes that the participants to the process have had copies of the redacted versions of the risk reports for some time, and should be in a position to issue related Information Requests promptly.   The Board appreciates the short timelines governing the next stages of the proceeding.  The intention of the Board, in keeping with the scheduled commencement of the oral hearing in early January 2011, is to cause all participants to carefully consider their further Information Requests so that the responding parties are also able to comply in the time allotted.   But for extraordinary unforeseen circumstances, the Board expects all participants to meet the deadlines now imposed. Therefore the Board seeks best efforts on the part of all participants to comply with these dates.

With respect to the final redacted reports as approved by the Board, these are to be delivered to MH and the NYC and to be tabled for the public record and circulated to Interveners seven days after the date of this Order.

Board decisions may be appealed in accordance with provisions of Section 58 of *the Public Utilities Board Act*, or reviewed in accordance with Section 36 of the Board's Rules of Practice

September 20, 2010
Order No. 95/10
Page 41 of 42

and Procedure (Rules). The Board's rules may be viewed on the Board's website at www.pub.gov.mb.ca.

## 10.0   IT IS THEREFORE ORDERED THAT:

1.   Manitoba Hydro's and the NYC's motions for redaction of certain information in the MH, NYC and KPMG risk reports BE AND ARE HEREBY allowed, in part;

2.   The attached copies of MH, NYC and KPMG risk reports, with redactions as approved by the Board, be placed on the Board's public record of Manitoba Hydro's 2010/11 and 2011/12 General Rate Application, seven days following the date of this Order.  For purposes of the Record these risk reports are contained in the following Appendices:

Appendix A:  The NYC's June 30, 2010 'Public Document';

Appendix B:  MH's March 2007 Comments on the NYC's December 4, 2006 Report;

Appendix C:  MH's May 2007 Comments on the NYC's December 4, 2006 Report;

Appendix D:  MH's October 2008 Middle Office Review of the NYC's Reports;

Appendix E:  MH's October 2008 Middle Office Comments on the NYC's Long Term Contracts Risk Report;

Appendix F:  MH's May 2008 Review of the NYC's January 2008 and December 2006 Reports;

Appendix G:  MH's December 2008 Export Power Sales Risk Management Issues;

Appendix H:  KPMG's April 2010 Report and Appendices;

September 20, 2010
Order No. 95/10
Page 42 of 42

3.    The timetable for the Order, exchange of evidence and information, leading to a public oral hearing, is approved and attached as Appendix "I" to the Order.

THE PUBLIC UTILITIES BOARD

"GRAHAM LANE, CA"
Chairman

"H.M. SINGH"
Acting Secretary

Certified a true copy of Order No. 95/10 issued by The Public Utilities Board

Acting Secretary

APPENDIX I

| MH GRA<br>Revised Timetable<br>as of September 20, 2010 | |
|---|---|
| PUB to Rule on Redactions | September 20 |
| PUB to Circulate Risk Reports with PUB Approved Redactions | September 27 |
| IRs to MH on Risk Reports | October 4 |
| MH to File Responses to IRs on Risk | October 25 |
| Independent Experts to File Report | November 15 |
| All Parties IRs to Independent Experts | November 22 |
| Independent Experts to Answer IRs | December 6 |
| Filing of Intervener Evidence (All Issues) | December 10 |
| IRs to Intervener Experts | December 17 |
| Responses by Intervener's Experts | December 27 |
| Rebuttal by MH | December 31 |
| Oral Hearing Commences | January 5 |