**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THE A STAR GROUP, LLC,

                     Plaintiff,

     v.

MANITOBA HYDRO; KPMG LLP
(CANADA); KPMG LLP (US); and
MANITOBA PUBLIC UTILITIES BOARD,

                     Defendants.

Case No. 13-cv-4501 (PAC)

**Oral Argument Requested**

**ECF CASE**

# EXHIBIT J

*to the*

**DECLARATION OF KENNETH E. LEE IN SUPPORT OF DEFENDANT
THE PUBLIC UTILITIES BOARD OF MANITOBA'S MOTION TO
DISMISS THE COMPLAINT AND STRIKE THE DEMAND FOR A JURY TRIAL**

- 1 -

## IN THE COURT OF APPEAL

IN THE MATTER OF:          *The Public Utilities Board Act,* C.C.S.M.,
                          c. P280

AND IN THE MATTER OF:      *The Whistleblower Protection Act,*
                          C.C.S.M., c, P217

AND IN THE MATTER OF:      An intended appeal from Order No. *95/10*
                          of the Public Utilities Board of Manitoba
                          dated September 20, 2010 and as
                          executed on September 27, 2010.

BETWEEN:

THE A STAR GROUP INC.

-and-

the Principal of the A STAR GROUP, INC.
(also named collectively as "NEW YORK CONSULTANT")

(appellants) applicants,

and –

THE PUBLIC UTILITIES BOARD ("PUB")

(respondent) respondent,

---

### NOTICE OF MOTION - AMENDED
### CONTESTED BEFORE A JUDGE
### ON <u>NOV 18, 2010</u> (date to be determined) AT 10:00 A.M.

---

The A Star Group, Inc
154 Reade Street, 2nd Floor
New York, NY 10013
(Phone No: 212-431-5098)
(Fax No: 209-755-5834)

IN THE COURT OF APPEAL

| | |
|---|---|
| IN THE MATTER OF: | *The Public Utilities Board Act,* C.C.S.M. c. P280 |
| AND IN THE MATTER OF: | *The Whistleblower Protection Act,* C.C.S.M., P217 |
| AND IN THE MATTER OF: | An intended appeal from Order No. *95/10* of the Public Utilities Board of Manitoba dated September 20, 2010 and as executed on September 27, 2010. |

BETWEEN:

THE A STAR GROUP INC.

-and-

the Principal of the A STAR GROUP, INC.
(also named collectively as "NEW YORK CONSULTANT")

(appellant) applicants,

- and –

THE PUBLIC UTILITIES BOARD ("PUB")

(respondent) respondent,

NOTICE OF MOTION – AMENDED

TAKE NOTICE that a Motion will be made on behalf of the applicant,

The New York Consultant before the presiding chambers judge, on Thursday Nov 18 2010 (date to be determined) at 10:00 a.m., or so soon thereafter as the Motion can be heard at the Law Courts Building, 408 York Avenue, Winnipeg, Manitoba.

THE MOTION IS FOR:

1. An Order that the applicant be granted leave to appeal to this Honourable Court from Order No. *95/10* of The Public Utilities Board of Manitoba (the "Board") dated Sep 20, 2010.

2. An Order <u>immediately</u> suspending the operation of Order No. *95/10* in whole or parts thereof, until a final Order by the Court for which all appeal periods have expired.

3. <u>An Order immediately granting a "stay" of the processes referencing any and all materials related to the NYC in the GRA Hearing 2010-2011 scheduled on Jan 5 2010, until such matter is adjudicated by the Court under this Motion for Leave for Appeal and Motion for Appeal (including but not limited to a "stay" on the acceptance of any other reports utilizing or refering to such materials in the GRA).</u>

4. <u>An Order to Immediately, in the interim, remove from the public record any and all mention of the NYC and any and all references to NYC, The Consultant and statements (and alleged statements and conclusions) from me and my company from the GRA hearing.</u>

5. <u>An Order immediately removing from the Public Utilities Board website and the Manitoba Hydro Website and the public record all materials related to the NYC and Consultant and regarding me or my company whether made by you or any third party, other experts or any other participants in the GRA hearing.</u>

6. Alternatively an immediate Confidential Sealing Order be placed around the disclosures Appendix B-Appendix H <u>and any other reports to be submitted including but not limited to the Experts Report and materials referring to the</u>

<u>foregoing</u> by the Public Utilities Board.

7.  Costs.

8. An Order granting full indemnification of all costs (legal and losses of time by consultant) incurred by Appellant as a result of Board processes and PIDA processes, as promised in its Order 30/10, its letters dated May 11, 2009 and other correspondence, by PUB and by the Ombudsman under Rule 34 and Rule 36(e) of the Whistleblower Blower Protection Act, because of processes under the PUB Act and Whistleblower act.

9<u>. An Order that the processes set forth in the Notice of Defamation, included in Affidavit on Dec 8, 2010 are complied with by the Public Utilities Board.</u>

<u>10. An Order reimbursing the New York Consultant for all hourly costs associated with the GRA hearing and all processes resulting herein, including but not limited to this Notice for Appeal and the indemnification of hourly costs and losses from the Defamation of the experts and reports, with costs paid immediately for the period August 2010 – Dec 2010.</u>

11. Such other Order as may be just.

12.  An Declaratory Order that overturning Order 95-10 shall be without prejudice to damages and legal expenses of the Appellant in accordance with TRIPS, Article 45 Part I and Part II and all other laws and remedies for the infringement of copyright, trade-secret and confidentiality in the unlawful execution of Order 95-10, to be accumulated with interest on a daily basis from the date of release on Sep 27, 2010 with penalties accumulating on a daily basis for each day that the material fails to be sealed.

13. A Short Leave for Appeal for immediate "stay" to prevent accumulating irreparable commercial damage to be done on or before Dec 15th 2010.

THE GROUNDS FOR THE MOTION ARE:

1. The Board erred on:

      (a)    questions involving its jurisdiction

      (b)    points of law

      (c)    facts expressly found by it

2. The Board erred in law and exceeded its jurisdiction by failing to abide by the very clear rules of practice and procedure under Rule 13, in such a manner that was deliberate and failed to review any evidence from Appellant prior to rendering its decision thereby rendering its decision void.

3. The Board erred in law and violated Rule 22 of its Rule of Practice and Procedure thus rendering their decision void.

4. The Board erred in law and has overstepped its jurisdiction as becoming an arbitrator of software copyright laws, instead of its legislative mandate to set rates.

5. The Board erred in law and exceeded its jurisdiction and abused its powers of the government to violate its fundamental obligations to the Appellant of procedural fairness and natural justice . As will be evidenced, in rendering and enacting its Order 95-10, erred in law and intentionally and negligently acted in bad faith, and has demonstrated an intent to harm the Appellant so that it can take intellectual property and competitive and trade secret materials to dilute Appellant's competitive services in the risk management area.

- 6 -

6. The Board erred in law and exceeded its jurisdiction and did not use proper process and has used bad faith in its decisions making under Order 95/10 and has deliberately harmed the Appellant which could achieve an objective of theft of intellectual property. The Board's violation of ethics and conduct invalidates their decisions and the Appellant was handicapped and treated with gross unfairness to prevent any proper adjudication of issues and with demonstrable attempt to cause financial harm to the Appellant.

7. The Board erred in law and has abused its power to exceed its jurisdiction to "disable" Appellant from fair process and natural justice in its procedures on the critical steps of establishing commercial harm in Rule 13.5 of its Practice and Procedures and therefore capriciously taken the onus of proof onto itself, without reviewing one document of evidence from the Appellant, because of its bad faith practices.

8. The Board erred in law as it never undertook a proper evaluation of whether the elements of Rule 13 were satisfied, purposefully failed and handicapped the ability to review any evidence from the Appellant, stalled and delayed its communications so Appellant was not informed of its processes and ruled 'single handedly' in an overstepping mandate with respect to the proposed redactions.

9. The Board erred in law and in fact and overstepped its jurisdiction as it had full knowledge that over 20 pages of such evidence existed, and acted in bad faith. The Board additionally made legal representations and other commitments signed and executed by its legal counsel which contradicted this Order and which have unilaterally been ignored in this Order, signifying further bad faith by the Respondent.

10. The Board erred in law and exceeded its jurisdiction by falsely alleging a

standard of proof was not met, when in reality the Board willfully disabled Applicant in partaking in the process and acted in bad faith in denying budgets and committed misrepresentation to the Appellant in the forms of many correspondence. As such the Board consciously attempted to financially harm the Appellant in its processes.

11. The Board has erred in law and overstepped its jurisdiction, and has acted in bad faith with the willful intention to harm the Appellant as a whistleblower in order to protect the reputation of the NDP Government.   This sets the basis of unreasonable and prejudicial treatment of the Board.

12. The Board also exceeded its jurisdiction by instructing their own legal counsel to purport and represent false legal positions of the Appellant without any authorization or communication as such from the Appellant's counsel and/or Appellant and without any communications with Appellant's counsel. Thereby such legal representations were incorrect and incomplete.

13. The Board has erred in law and in fact, in noting that it deliberately failed to provide the Appellant a full set of facts and failing to provide material information regarding its processes, including but not limited to not providing Appellant with documents mentioned in the Order and deliberately withholding information so as to ensure an "unfair" process.

14. The Board erred in law and abused its powers of the government to recognize that Appellant is a sole-proprietorship and to abuse its financial power to extort and induce "pro-bono" services as part of its processes so that Appellant could not partake fairly in the process of its Rules under Section 13.5

15. The Board has erred in law in failing to adjudicate within a fundamental

processes of fairness, by making fraudulent representations regarding the processes to the Appellant in writing, and verbally and also to Manitoba Counsel, regarding it's processes which willfully misled and disabled the Appellant from providing evidence, based on which could simple "game and abuse" the system to dilute the Appellant's commercial and competitive position.

16. The Board has erred in law and overstepped its jurisdiction and set forward procedures that were unreasonable, irregular and unconstitutional in setting seven (7) day window to respond when the Appellant is located in New York and in the U.S.A and therefore out of jurisdiction. This evidences again the willful intention and bad faith intention of the Board to harm the Appellant and act without authority or redress.

17. The Board erred in law and made fraudulent representations by violating express written agreements and documents it had with the Appellant regarding the redactions process which were signed and executed by its legal counsel on or around Sep 29 2009, which would apply to all processes in its GRA hearings.

18. The Board erred in law and made fraudulent representations by violating express written legal correspondence it had made to Appellant regarding the ability to provide motions to the Board in or about May 2010 and again Jul 2010.

19. The Board erred in law and abused its power to and exceeded it jurisdiction by tortiously interfering with Appellant's business commitments in New York in another jurisdiction without seeking necessary forms.

20. The Board erred in law and exceeded its jurisdiction purporting to have the

jurisdiction to overturn copyright in a software license and confidential materials related to a United States Software license contract.

21. The Board erred in law in rendering its decisions in Order 95-10 as

    (a)   It failed to review evidence from Appellant related to commercial harm and violated Rule 13.

    (b)   It made fraudulent legal representations to the Appellant that it could make redactions in its "sole discretion"

    (c)   It made fraudulent it would be able to provide such motions to respond to comments from MH and Interverners

    (d)   It made fraudulent legal representations to Former Manitoba Counsel that it would not release the materials until a court date of Sep 30 2010.

    (e)   It made fraudulent legal representations to Appellant regarding various authorizations to work more than 20hours.

    (f)   It has knowingly authorized third parties to breach Software License Contracts

    (g)   It tortiously interfered in Appellant's business and financial livelihood in order to set forward and unreasonable and biased and prejudicial criteria.

22. The Board erred in law, by violating the very clear rules of practice and procedure under Rule 13, in such a manner that was deliberate and failed to review any evidence from Appellant prior to rendering its decision, as part of an ongoing conspiracy to harm.

23. The Board erred in law and exceeded its jurisdiction by failing to allow Appellant

    a.  Due notice and proper scheduling of its intended timelines

    b.  Arbitrarily and inconsistently stalling in its correspondence

to disable Appellant from responding

c. Failing to return correspondence on a timely basis

d. Failing to review any evidence from the Appellant regarding the materials

e. Arbitrarily changing and violating its rules of practice and procedure to disadvantage Appellant

f. Deliberately enacting processes that would contravene the laws of natural justice and procedural fairness

19. The Board erred in law and exceeded its jurisdiction by failing to notify Appellant of its requirements and approve the necessity to file motions and substantiate redactions until Jul 20 2010, after the Board had already distributed materials "purporting" that such materials did not provide reasons.

20. The Board has erred in law and conspired to injure the Appellant by exploiting and abusing its powers of office, to withhold necessary funds, recognizing the inequity in size of the Appellant, and forcing potentially the Appellant into financial and legal distress.

21. The Board has erred in law, in various aspects of its fundamental processes of fairness with an intent to harm the Appellant, such as a) Granting only 10 hours of time(1 day) to do so, when other parties were granted 3-4 weeks. B) on the date of a bereavement enacting harmful threats c) Forcing the Appellant to cancel vacations d) abusing its power to withhold facts, data and information e) threatening the Appellant to cancel other business obligations, f) harassing the Appellant at a time of loss and grief g) expecting the Appellant to work on Sundays and incur extraordinary business expenses on weekends h) using extortion and unfair business practices as would be comparable in the United States of

America  i) forcing cancellation of airline tickets in a reasonable August recess j) Expecting free and pro bono services from the Appellant k) tortiously interfering in Appellant's business dealings

22.   The Board has erred law, and in fact and exceeded in jurisdiction of Order 95/10 by taking matters into its own hands to represent the Appellant's supposed legal views in letter dated Jul 16th 2010, whereby written evidence will show that it only requested the Appellant's provide information on Jul 20th 2010, thereby "after-the-fact" fraudulently representing the Appellant's legal position.

23.   The Board therefore erred in law and exceeded acted in bad faith and with a willful intention to harm the Appellant, and misrepresented and pretended to Interveners and Manitoba Hydro that the Appellant had simply "failed to provide reasons", when legal counsel from the Board deliberately delayed and stalled such directions and Appellant was never directed to "provide such reasons" until after the fact.

24.   The Board has erred in law and acted in bad faith, with intent to harm the Appellant, by purposefully airing defamatory materials, which would serve to "protect the reputation of the government" and injure the reputation of the whistleblower, as part of the bad faith and malicious attempts by the government to silence and create and inequitable process.

25.   The Board has acted with intent to harm, and conspiracy to injure the Appellant in its processes with a repeated pattern of a) withholding information b) expecting the Appellant as sole proprietor to fund an excess of $45,000 of time and legal costs between the period of Feb 2010 and August 2010 which also led to financial exploitation c) acted unreasonably with scheduling d) tortiously interfering with its business contractual

arrangements under threats e) making false legal and representations, including but not limited to a commitment by its legal counsel in writing which lured Appellant to false sense of its redactions process f) releasing materials to the media, which indicated the Boards informed premeditated decision to overturn materials and intention and conspiracy to act, without fair process to the Appellant.

**KPMG Theft**

26. The Board erred in law and exceeded its jurisdiction in its receipt of a report prepared by KPMG, which fraudulently denies existence of the said Software License Agreement, and invokes violations of United States criminal laws for the knowing distribution of unauthorized materials. The Board knowingly and consciously allowed such a third party to access confidential materials protected under a Software License Agreement which were provided to KPMG in violation of law.

27. The Board erred in law and exceeded its jurisdiction directing its mandate to enable KPMG to violate a Computer Software License Agreement, with full knowledge that such fraud had occurred by both Manitoba Hydro and KPMG to "pretend" and make "material representations" that such CSA does not even exist.

28. The Board erred in law by aiding and abetting in the reverse engineering and other express violation of said Software License Agreement, governed under United States Laws.

29. The Board erred in law and exceeded its jurisdiction and violated its fiduciary duty as a government body and agent of the Crown, to endorse and ignore KPMG's violation and fraud related to the ignoring of the

- 13 -

existence of the said Software License Agreement.

30. The Board erred in law and committed fraud in legal representations to the Appellant regarding processes in Oct 2009 regarding the same Software License Agreement and KPMG which is contradicted in Order 95-10.

## Software License Violation

31. The Board has erred in law, erred in fact and exceeded its jurisdiction in rendering any decisions in Order 95/10 as it failed to even mention the facts of the existence of the Computer Software License Agreement which forms the basis of information and materials redacted and rendered by Appellant. Therefore its decisions were made with a deliberate and improper review of the facts.

32. The Board has erred in law and in jurisdiction and violated if fiduciary duties and responsibilities as agents of the crown to willfully "ignore" the Software License Agreement and condone its deliberate violation. The Board has further committed fraud upon which Appellant relied upon in its process, that the Board would not ignore the Computer License Agreement.

33. The Board erred in law and exceeded its jurisdiction, by purporting to enter into a role of a "Software Expert" and understanding the technical criteria of software licensing disclosure. Further the Board has erred in law by and fact by overturning redactions which Appellant specifically excluded from the Public Document related to the Software, whereby it had full knowledge they were confidential by the mere fact Appellant had excluded it form the Public Document.

- 14 -

34. The Board erred in law and exceeded its jurisdiction by directly violating the survival provisions of a Software License Agreement, under the protection of confidential information clause Section 2.0,  Section 8.0, Section 5.0 and Section 12 when it had expressly disclosed information related to the Software, and has capriciously ignored the terms, and conditions and payments received for such use are confidential use.

35. The Board erred in law and exceeded its jurisdiction by directly violating the express written survival provisions of a Software License Agreement, under a restriction of license of reverse engineering, under Section 5.3., whereby causing third parties, for instance KPMG, to attempt to "duplicate and arrive at similar numbers" and broadcasting such attempts to do so.

36. The Board erred in law and exceeded its jurisdiction by directly violating the survival provisions of a Software License Agreement, (with full knowledge that such violations had occurred by both Manitoba Hydro and KPMG), that the said Software License Agreement of such intellectual property is governed under the laws a the jurisdiction is the laws of the State of New York and the United States of America.

37. The Board erred in law and exceeded its jurisdiction, by failing to respond to Appellant's letter dated Sep 3rd, 2010 requiring confirmation if its processes regarding the jurisdiction component of the Software License Agreement. Therefore the Board has full knowledge that the Appellant had justified its redactions yet sought to intentionally harm the Appellant by not notifying Appellant of the jurisdiction question.

**Trade Secrets**

38. The Board erred in law and in fact and exceeded its jurisdiction, by failing to mention and acknowledge in Order 95-10 that Trade Secrets of the

Appellant are clearly defined under United States law and the laws of New York as defined in the Software License Agreement, as defined under 18. U.S.C. 1839.

39.   The Board erred in fact in Order 95-10 by purporting to use a definition of Trade Secrets given by Manitoba Hydro, when the choice of law and definition of license of all Appellant's trade secrets is New York Law and the laws of the United States of America. Such standard and definition was omitted and not even discussed in a cursory fashion.

40.   The Board erred in law and in jurisdiction, by willfully and capriciously overturning Trade Secret materials, as defined under 18 USC 1839 owned by the Appellant and licensed to Manitoba Hydro under a strict software license agreement, without any review of Appellant's legal materials under the New York jurisdiction.

41.   The Board, erred in law and in jurisdiction, in acknowledging that Trade Secret materials from Appellant were clearly governed under New York Law, and thus required legal briefings from New York Counsel who had spent months to prepare detailed redactions under the operative standards of New York law. The Board therefore erred in its processes since New York Counsel could not provide such evidence to a foreign court and challenged the jurisdiction of the Court.

42.   The reasons for Appealing the decision of the Board are not in details of each and every redaction and the very clear justification intellectual property, but the mere fact of harm and error in law in the process of the Board to review any evidence of the Appellant and its further requirement to observe New York law and the United States laws in the adjudication of such Trade Secret materials provided under the Software License.

43.  The Board also erred in law and breached its fiduciary duty and had an obligation to respond to Appellant regarding matters of law and New York jurisdiction, since the materials were clearly governed under New York law, and Appellant had communicated as such in its legal notices.

44.  In refusing to review evidence, the Board overstepped its jurisdiction and mandate, and acted in a manner that conspired with the government to convert Trade Secret status from the United States, when the benefit to profit the foreign government exceeds hundreds of million dollars.

45.  The Board has erred in jurisdiction and Appellant had received information from New York counsel, that a rate-paying tribunal has no jurisdiction or mandate to determine and adjudicate Trade Secrets or IP under New York law as its mandate is in setting rates and not determining intellectual property ownership. The mere fact that it failed to review evidence from NYC further supports this motion for leave to Appeal in the bad faith processes by the Board to dishonor and disregard the jurisdiction of Trade Secrets.

46.  The Board has overstepped its jurisdiction in overturning Trade Secrets of the Appellant when the mere definition and threshold claimed was inaccurate under New York Law, and further, the Board clearly failed to review argument regarding evidence supporting each and every one of the redactions. It simply overturned them, as part of the effort of retaliation and disregard for Appellant's intellectual property and commercial and competitive rights in the industry.

47.  The Board has erred in law and in fact in, and on a cursory note, fails to mention that Trade Secret status does not apply just to formulae, but to techniques and design of a computer software model, all of which have been willfully disregarded and overturned into public domain and not

mentioned in its Order 95-10.

48.  The Appellant further states that the Trade Secrets materials have been developed over several years of hard work, experience, and Appellant has accumulated its proprietary and competitive risk management system as a result of significant expenditure of time, effort, labor and resources on the part of NYC.

49.  NYC dedicated several full years to the development of its advanced Computer Software catered to the Manitoba Hydro electric system and the Board was aware of the dedicated efforts and time spent in this development by signed letter on Sep 29, 2009.

50.  The Appellant has consistently made sure that such materials are kept confidential and out of public site. The Appellant has taken all necessary measures to keep Trade Secrets confidential.

51.  This information allows NYC to maintain its competitiveness in the industry and thus is very commercially valuable and extremely valuable.

52.  The Appellant always enforces the signing of Non-Disclosure Agreements, insists on the protection of its confidential information, and expressly notifies parties of its confidential and trade secret status, as an express legal conformity prior to gaining access to any such information.

53.  To this extent, the Appellant went to no-small-measures, to make sure the Board in any and all of its processes whereby it signed and agreed in writing it would not violate the Software Agreement *or " b) in any way cause the violation of the terms of our software agreements and the perpetual survival terms with Manitoba Hydro."*

54.  The Board has erred in law, and completely violated its legal

representations, not only by providing access to such materials to KPMG, but in Order 95-10 expressly ordering violations of the survival terms of the contracts – whereby it stated in writing it would not.

55.   The Trade Secrets and Confidential Information are clearly defined as the crux and commercial advantage to Appellants' software company. The Trade Secrets have provided a distinct competitive advantage in its software and consulting business. Disclosure of the Trade Secrets has already caused direct irreparable harm to Appellant in the Board's vindictive violation of trade secrets. To that end and knowing that injunctive relief was sought, the egregious conduct of the Board sought to deny Appellant's right to fair process. The Board has directly attempted to convert Trade Secret status, as act of corrupt and bad faith process, conspiring to injure the natural owner of the property, and to benefit a foreign government and as part of the retaliation to the whistleblower.

## Confidential, Technical and Statistical Information

56.   In failing to review evidence from Appellant, the Board overstepped its jurisdiction and mandate, and acted in a manner that conspired with the government to release confidential, technical and statistical materials of the Appellant.

57.   The Board erred in law in reviewing the terms of the Computer License under Section 2.0 regarding the outputs and conclusions form the software and the license rights and payment terms received thereunder. The Appellant states that license fees for use of the Computer License were on a limited restricted basis of confidentiality only.

58.   The Board erred in law by disclosing statistical and technical information, that still constitute confidential information of the Appellant's core business

and services and software products and are "secret, competitive and form part of its technical manuals". Statistical information is widely regarded as confidential under all laws and expressly protected even under FIPPA.

59.   The Board erred in law and in fact, in failing to acknowledge that it had prior information of the "competitive value and commercial harm" in Appellant's products when it already had written evidence of such in Appendix J and failed to mention the existence of this document in rendering its Order 95-10.

60.   The Board erred in law and in fact and violated its Rule 22  in Order 95-10 by claiming "general commentary by the NYC" and general nature of exchanges constitutes a legal position, which it expressly does not. The Board exceeded its jurisdiction by attempting to self-represent NYC's legal position, when it had had no communications from NYC legal counsel, when it was aware that over 40+ pages of legal documents, evidence and motions from legal counsel existed, and thereby capriciously deciding to overturn confidential information before NYC had a say in the matter.

61.   The Board erred in law and erred in fact and exceeded it jurisdiction by determining that "analysis, graphs and conclusions of NYC" were erroneously not protected under the express trade-secret, confidential copyright licenses, and moral rights, including but not limited to any documentation of such as defined under the very definitions of the rights of license, and the Board had agreed in written legal correspondence that it would not violate the said licenses tantamounting to fraud.

62.   The Board erred in law and in fact, and contradicted itself in Order 95-10 by claiming that materials that "were in NYC's public document" to be made public, yet contradicted itself omitted the fact that "materials excluded from NYC public document and counterarguments therein" .

63.   The Board erred in law and in fact in other exclusions of confidentiality, as
it had willfully and deliberately harmed and disabled the Appellant and not
reviewed any of its evidence rendering its decision void constituting bad
faith processes.

**Injunction Violation**

64.    The Board erred in law, exceeded in jurisdiction and acted in bad faith
and with egregious intention to harm Appellant by making false legal
representations to counsel in Manitoba that it would not release the
materials prior to a Court Injunction **CI10-01-68389** and a pending motion
at the QB scheduled for Sep 30th 2010, by way of representation that it
would wait for attornment by a judge.

65.   The Board erred in law and exceeded its jurisdiction in its execution of
Order 95-10 which was in deliberate bad faith and injury to violate the
moral and intellectual property rights of Appellant by enacting the Order to
release confidential and protected materials when it knew court processes
had been started, in full knowledge to act in bad faith.

66.   The Board erred in law and exceeded its jurisdiction with unreasonable
duress to continue to willfully harass and intentionally inflict damage to
Appellant (as a whistleblower) as it was subject to full knowledge and
service by the Appellant, with full knowledge that the Appellant had to
attend a funeral service of its grandmother who passed away on Sep 23
2010.

67.   The Board erred in law and overstepped its jurisdiction, by abusing its
powers and of Office, breaching its fiduciary duties and acting in egregious

and malicious conduct to ignore that a Court Order prohibition CI10-01-68389 was filed at QB again the PUB to stop this release. Appellant unfortunately had to attend a funeral, and the PUB had made assurances to its Manitoba counsel, that it would not release the materials until the matter was heard in front of a QB judge schedule for Sep 30th. Instead, knowing that both NYC and its counsel were at coincidental funerals (between Sep 24th – Sep 28th), the Board acted in bad faith, and went ahead and released the materials prior to the matter being heard by a judge on Sep 30th. This was with full fraudulent representation that if Appellant had filed an Writ of Prohibition, the Board would not go and do so until the judge had ruled.

68.   The Board erred in law in regards to the above process by violating Article 41- 45 of TRIPS.

69.   The Board erred in law and acted in bad faith and with egregious intention to harm and conspiracy to injure the Appellant by "misleading" that it did not need to file a 24hour injunction, and consistent with its intentional and negligent intention to cause distress to the Appellant, and willful bad faith, unreasonable procedures, denied the Appellant fair standing and hearing to provide evidence and assert the very clear legal rights to which Appellant is entitled to under TRIPS and International laws.

70.   The Board erred in law, and demonstrated vindictiveness, intentional and/or negligent infliction of mental and emotional distress, knowing the Appellant had a bereavement in the family and had to attend her grandmothers' funeral.

71.   The Board erred in law and overstepped its jurisdiction by interfering in Appellant's natural rights under the World Treaty Organization and TRIPS

- 22 -

in Article 21 for procedural rights to fair process in the protection of its intellectual property, with respect to the motion CI10-01-68389.

72. The Board erred in law and exceeded its jurisdiction by enacting time periods that were unreasonable and unfair to file such an injunction to an out-of-jurisdiction party and in a manner that it would know could not respond fairly and violating Article 41 and Article 44 of TRIPS.

73. The Board erred in law by proceeding with said Order, with full knowledge that a Writ of Prohibition had been filed, and in contradiction of its legal representations, and in violation of TRIPS Article 41 – 44 to which Appellant is entitled for judicial review and injunctive relief.

## Copyright Violation

74. The Board erred in law and exceeded its jurisdiction in capriciously ignoring express Copyright laws including but not limited to the Copyright Act (R.S., 1985, c. C-42) and United States laws for the protection of Copyright materials and other rights of Appellant including all moral rights and copyright rights, including but not limited to Article 27 of the Act.

75. The Board erred in law and exceeded its jurisdiction by violating Copyright Laws and the Federal Copyright Act, which would cause irreparable commercial harm and damage to the Appellant.

76. The Board has erred in law and in jurisdiction by disregarding the international laws to protect Copyright of the software under TRIPS and the disclosure of such information, which falls under Appellant's protections under Articles 9 – 11 and Articles 41 – 45.

**United States Jurisdiction Violation**

77.   The Board erred in law and exceeded its jurisdiction in causing harm to
      the persons and businesses outside of the jurisdiction and in the United
      States of America, and by imposing deadlines and schedules into a party
      outside of the country, without seeking an appropriate Letters of Rogatory
      and thereby violating sections of International Law 28 U.S.C.A. § 1781 to
      seek documents, information, cooperation and assistance from the
      Appellant.

78.   The Board erred in law and exceeded its jurisdiction by paying counsel in
      New York and communicating and/or seeking communications with New
      York Counsel, when such actions were contrary to the Order and
      acknowledging that Appellant is located in another jurisdiction, and
      thereby misleading the Appellant that it's rights to redactions were subject
      solely to New York laws.

79.   The Board erred in law and exceeded its jurisdiction in wrongly
      acknowledging that New York Counsel can communicate directly before
      an Administrative Tribunal, without permission from the Manitoba law
      society and thereby further acknowledging the jurisdictional issues which
      disabled Appellant from fair process in the overturning of redactions.

80.   The Board erred in law in ignoring the International Treaties for United
      States laws by violating contracts including but not limited to the Computer
      Software License Agreement that are expressly governed under United
      States laws and protected under NAFTA and TRIPS.

81.   The Board erred in law and exceeded its jurisdiction, by not responding to
      a motion and question to challenge jurisdiction under the power of Court of

Queen's Bench, which Appellant was entitled to under the rules of the
Queen's Bench.

82.  The Board has erred in law and erred in fact in Order 95-10, in stating that
the Appellant's participation in the processes were "voluntary", when facts
show that the Board received multiple correspondences acknowledging
that its participation was "involuntary", and that the Appellant was become
subject to "threats" and "exploitation" and tortuous interference of
economic relations by the Board to cancel business commitments and do
certain tasks or it would suffer the consequences of having its confidential
information to be redacted.

83.  The Board further erred in law and exceeded its jurisdiction to mandate
the "involuntary" participation of the Appellant, without observation of
international treaties such as for example under 28 U.S.C.A. § 1781.

84.  The Board has erred in law and overstepped its jurisdiction in imposing
unreasonable work schedules into a foreign country without seeking the
appropriate legal forms from a United States court, or allowing the
Appellant the process to challenge jurisdiction of the Court. The Board has
further created "involuntary" demands of the Appellant's time and business
resources and interfered in US business, when it has been done under the
threat and extortion of releasing confidential materials.

85.  The Board has exceeded its jurisdiction and erred in laws of procedural
fairness and international treaties and caused Appellant substantive
financial losses in lost manpower, consulting hours, business development
and opportunity costs to Appellant's company not including legal costs or
damages for theft of IP and emotional and personal stress.

86.  The Board has erred in law, in fact and exceeded its jurisdiction in failing