to consider the very clear fact, that the <u>only basis</u> upon which the Appellant provided license rights to it's intellectual property and Computer Software license (and the terms it was made available to Manitobans) was under the express criteria that any discussion of said redactions and confidentiality is governed solely under the laws of the State of New York and the Laws of the United States of America.

87.   The Board has erred in law, and exceeded its jurisdiction in that Appellant went to great lengths to ensure a binding legal agreements were in place, to make sure that under law, IP and confidentiality rights are governed by the laws of the State of the New York, and any dispute over the said intellectual property and confidentiality would be adjudicated in the Borough of Manhattan in the Courts of New York, in the United States of America and expressly under New York State law. Any attempts to deal otherwise and to violate Appellant's computer software license, amounts to an illegal expropriation which is outside the powers of the Board and which is in breach of its fiduciary duties and jurisdiction and legal covenants.

88.   The Board erred in law and in fact, and exceeded its jurisdiction, and acted in bad faith and abuse of powers of the government to arbitrate IP disputes with Manitoba Hydro, when it was clear that Manitoba Hydro has a motivation to purport "revenge" for blowing the whistle, and was also acting in bad faith, as part of the NDP Government to retaliate against Appellant and damage and destroy Appellant's contracts and simply "ignore them".  This is again illegal expropriation founded on bad faith and corrupt practices of the NDP Government, designed to injure and harm Appellant. Such behavior was also condoned by the Board in the violations of contract by KPMG which also violated the laws and pretending to "deny the existence" of the Software License Agreement.

89.  The Board erred in law and exceeded its jurisdiction by failing to honor
that such materials are expressly governed under the laws of New York
State, and laws of the United States of America and unilaterally ignoring
the jurisdiction covenants governing the redactions made by the Appellant.
The Board also failed to respond to NYC and information requests from
New York Counsel on questions of jurisdiction.

90.  The Board has erred in law, and exceeded it jurisdiction by violating
express written legal documents, that it would not (and not enable others
to) violate Appellant's Software License including the provisions pertaining
to jurisdiction under New York State law and the laws of the United States
of America.

**NAFTA Violation**

91.  The Board has erred in law, and exceeded its jurisdiction in not directing
its mind noting the existence of NAFTA in the protection of Appellant's
property under the Computer Software Agreement and intellectual
property in the Board's mandate in the protection of Appellant's intellectual
property.

92.  The Board erred in law and exceeded its jurisdiction and in fact by
violating the protections afforded to the Appellant under NAFTA Chapter
17 and has completely disregarded intellectual property laws and in its
decision to "simply ignore contracts Appellant has with Manitoba Hydro".

93.  The Board has erred in law in Order 95-10 and has a fiduciary duty to
observe NAFTA and has abused its powers as a government to disregard
international laws and treaties such as NAFTA.

94.   The Board has erred in law and made false legal representation to the Appellant in relation to NAFTA in stating that it would at all times in its processes not disregard the software contracts between the Appellant and Manitoba Hydro.

**TRIPS Violation**

95.   The Board erred in law and exceeded its jurisdiction as a government agency with the Power of Queen's Bench, by ignoring Appellant's legal rights under TRIPS and WHO and the international mandate to respect intellectual property, copyrights, and trade secrets, including violations of Software License Agreement, with full knowledge that such fraud had occurred by both Manitoba Hydro and KPMG, and with complete disregard to intellectual property laws.

96.   The Board has erred in law and exceeded its jurisdiction, in violating in Order 95-10 the international agreement on Trade Related Aspects of Intellectual Property Rights (TRIPS) the international agreement administered by the World Trade Organization (WTO) that sets down minimum standards for many forms of intellectual property (IP) regulation as applied to nationals of other WTO Members.

97.   The Board has erred in law and in jurisdiction in not directing its mind and attention to the very specific laws and requirements under Article 9, 10 and 11 and enforcements of Article 41 - 45 of TRIPS and thus violating international laws and comity in its Orders and processes.

98.   The Board has erred in law and exceeded in jurisdiction, specifically in its willful interference and bad faith and "underhanded" processes to disadvantage the Appellant in the filing of its court injunction on Sep 23rd, and making false representations to the Appellant to "lead them astray" in

complete violation of Article 41 and Article 42 of TRIPS. The Board acted in unreasonable manner to financially and legally disadvantage Appellant and refused to accept evidence.

*99.*  Board has erred in law and exceeded in jurisdiction in Order 95-10 and abused its power of the government and specifically violated Article 41.2 of TRIPS by setting a seven (7) day turn around for a party located in New York, whereby it was an unreasonable time-limit for Appellant to seek and obtain necessary legal guidance – and was done deliberately in a manner to disadvantage Appellant in protecting its intellectual property. The processes by the Board have been unfair and inequitable.

100.  The Board has erred in law and failed to acknowledge the Appellant's rights to damages and expenses in accordance with Article 45 of TRIPS.

101.  The Appellant approaches this honorable court also, for the aforementioned damages for the violations of the Board in its disregard of Article 41 – 45 of TRIPS. The Board has contentiously allowed KPMG to profit in excess of $750,000 from unlawful violations of contract.

102.  The Appellant further appeals to this Honorable Court in the rights and remedies afforded to it in under Article 50 and the enforcement of immediate injunctive and remedial relief.

## Federal Laws and Violation

103.  The Board erred in law and exceeded its jurisdiction directing its mandate to violate United States federal laws, including but not limited to those under USC Section 1831-1839, to deliberately and knowingly distributed confidential and trade secret materials, and authorize third parities to violate contracts and unlawfully access and distribute Appellant's materials.

104. The Board has sought to "benefit a foreign government" and to injure the owner of the intellectual property to protect "strategically and reputationally"  the Crown Corporation, at the expense of a United States company.

105. The Board has erred in law and committed wire fraud in making false legal representations to the Appellant in regard to its' processes and legal commitments regarding redactions.

106.  The Board has erred in law and fraudulently "induced" Appellant to provide information during the period March 2009 and October 2009, and has extorted and forced the Appellant to lose money, incur excessive legal costs, partake in Board processes, incur debt, work for free and committed fraud in its legal representations, which constitute racketeering and corruption under US Laws.

107. The Board has erred in law, in the fact that mere broadcast of the unauthorized obtaining of the KPMG report with access to proprietary information in the Appellants' software and ignoring of the clear Software Computer license, also concedes to direct violation of Economic Espionage in the willing distribution of unauthorized materials and US laws 18 USC 1831 and 1832.

## Libel Defamation Violation

108. The Board erred in law, exceeded its jurisdiction and failed to direct its mind to the Manitoba Defamation Act in the placement of numerous Appendices without redactions into the public records, specifically in Appendix B through H into the public domain and on its internet broadcast which are hostile and factually inaccurate statements of libel, intended to

tarnish the reputation of the Appellant by the release of materials.

109.  The Board has erred in law and in fact, in Order 95-10 in concluding that redactions were made solely over intellectual property issues, as the Board was provided written notice that redactions were also to do with "libel and defamation" in or around Jul 2010 from Appellant. The Board Order 95/10 erred in fact in failing to mention or take notice of this evidence.

110.  The Board erred in law and overstepped its jurisdiction, in enabling and causing libel and defamation of the Appellant when the Board has knowledgeable information contained in a Jan 8, 2008 report, that the information to be broadcast was false.

111.  The Board has erred in law, exceeded its jurisdiction and abused its powers of the government in enacting processes that do not engage in any procedural fairness to the Appellant with regards to the Manitoba Defamation Act and by its release of libelous statements about the Appellant on Sep 27, 2010, and has kept materials that would prove the defamation under a "technical seal".

112.  The Board has erred in law, by failing to direct its mind to the False Light laws under the United States of America, whereby the Board has released materials into the public domain and internet, which seek to portray Appellant's goods and services and products under a False Light, when the Board has knowingly kept materials that would rectify such misperception under a "confidential seal". Therefore the Board has acted outside of procedural fairness and in deliberate manner that would consciously portray the Appellant in a False Light.

113.  The Board erred in law, exceeded it's jurisdiction and has abused its
      power to protect government interests to injure the reputation of the
      Appellant, and cause deliberate libel as part of the government's
      retaliations to malign, vilify, and injure the reputation of the Appellant. The
      Board has therefore acted with malice with respect to the Libel and False
      Light laws, given that it had prior knowledge of "untruthful statements" and
      has materials in its possession to contradict such statements and has
      knowingly kept such materials "in confidence" that would defend
      Appellant's reputation and conspired to injure the wellbeing and reputation
      of the Appellant. Such processes are also procedurally unfair.

114.  The Appellant and its company name have been disclosed by virtue of this
      Application and also by the forcing of Appellant's goods and services and
      products into the public domain in order to defend its rights.

115.  The Board has erred in law and exceeded its jurisdiction to violate the
      Manitoba Defamation Act, in so for as the Appellant cannot rectify such
      untrue, false and injurious statements without the public release and
      broadcast of protected, confidential and/or trade secrets thereby making
      any remedy in law insufficient. The Board thereby has set up an un-
      rectifiable defamation of the Appellant, seeking immediate grounds for
      ceasing of Order 95-10.

## CONTRACT DISPUTES

116.  The Board has erred in law, erred in fact and exceeded its jurisdiction by
      contradicting its statements in Order 95-10 and Order 30-10 that it does
      not see as 'relevant" contract disputes between Manitoba Hydro and NYC,
      however has willfully overturned redacted materials which have no
      relevance to the GRA hearing and are directly related to contracts (Which

were redacted by Appellant) and seek to defame the Appellant related to contract disputes.

117.  The Board has erred in law and in fact, by failing to mention in its Order that the Appellant redacted materials related to contractual matters which are irrelevant to the setting of rates. The Board thereby broadcast such information as further attempts to portray a false light against Appellant.

118.  The Board has erred in law and exceeded its jurisdiction, in an ongoing pattern to harm, retaliate, conspire to injure the reputation of the Appellant by airing one-side of Hydro's information related to contracts, without any fairness in Appellant's ability to respond or contradict the accusations.

119.  The Board has erred in jurisdiction and erred in fact in Order 95-10 by introducing as evidence into a GRA hearing, libelous statements about Appellant's contracts therefore continuing to vilify, injure and cause distress to Appellant. Such materials related to Appellant's contract are irrelevant to Rate-Payers and continue the harm being done to damage to the whistleblower, by government processes.

120.  The Board has erred in law by making fraudulent statements to the Appellant and therefore willfully overturning such materials to injure the Appellant, when it repeatedly stated that it would not include materials in the GRA related to contracts. The Board has further erred in law and jurisdiction, by willfully omitting any materials such as the responses from the record that Appellant has procedural fairness to respond and correct such inaccuracies.

**Intent to Harm – Retaliation**

**As further grounds for this motion, and why this matter must be appealed to a higher court of Appeal**

121. The Board erred in law and exceeded it's jurisdiction and has abused its power to protect government interest, in a long standing pattern of retaliation against the Appellant to harm, injure and prejudicially treat the Appellant in Order 95-10 so that it could "rush in and overturn redactions" after committing fraud that it would not.

122. Further grounds to approach a neutral court is the precedent being set by the NDP Government in creating a pattern of retribution against those who honestly and with integrity expose wrongdoing in government offices.

123. The Board has erred in law to subject the whistleblower to harassment, abuse and negligently and intentionally cause mental and emotional distress – consistent with what has been seen "subject" to abuses of power and attempts to injure, destroy and maliciously cause harm and business destruction to the Appellant.

124. The Board has erred in law and as foundations for this Appeal, will be shown to have enacted processes that were intentionally a) in bad faith and a consistent lack of fair dealings b) were deliberately to inflict and negligent induce distress  d) have knowingly caused financial jeopardy in an attempt to retaliate e) have willfully "handicapped" the Appellant from fair process f) egregiously, tortiously and vindictively committed fraud and harmed the Appellant.

125. The Board acted with knowledgeable intent to cause harm and erred in jurisdiction and law by setting an unreasonable 7 day timeline to overturn redactions, when the rules of the Queen's Bench require notification to out-of-jurisdiction parties with over 14 days. The Appellant did not receive the said information for three (3) days as it is located in New York. The

seven (7) day timeline was also a form to provide aggravated harassment to the Appellant and interfere in its business, and a form of deliberate unfairness and bad faith and prejudicial treatment.

126.  The Board has erred in law, exceeded it jurisdiction and tortiously interfered in Appellant's business as well as committed wire fraud by acknowledging that Board processes would not consume more than 20 hours a week of Appellant's time and instead willfully harmed and created an economic financial disadvantage by (a) failing to grant proper legal costs, (b) demanding Appellant sometimes work over 35 hours a week without pay and placing the materials in the public record (c) arbitrarily reducing cost awards (e) attempting to extort free and pro bono services for the government (f) canceling and interrupting other business commitments. (G) failing to enact proper jurisdiction processes that involve seeking a Letters of Rogatory from the US.

127.  The Board will be shown in evidence to have maliciously intended to cause emotional harm and distress to Appellant and acting in retaliation to set forward processes that were inequitable and contradicted written and verbal commitments. Therefore the Board has erred in law, and exceeded its jurisdiction to demand services from an out-of-jurisdiction party.

128.  The Board has erred in law and exceeded its jurisdiction, as an agent of NDP Government and has abused its power to disadvantage the Appellant by a) abusing its financial power and denying appropriate and timely legal costs and funding b) stalling communications when required c) failing to provide a signed copy of a publication ban d) attempting to railroad a fair hearing and e) denying any evidence or fact from the Appellant f) aiding and abetting the unauthorized access by KPMG to Appellant's confidential materials in violation of a computer software license agreement e)

defaming the Appellant f) being arbitrary, inconsistent and irregular and randomly setting processes and schedules without reasonable notice that interfered in Appellant's fundamental rights to make a living g) showing unreasonable and repugnant behaviors at times of bereavement to the whistleblower as part of the retaliation.

129. The Government Minister of Hydro (Finance Minister) has inappropriately interfered in the legislation to "protect the reputation of Hydro" as opposed to enacting a process that could have proper public resolution. The Board has erred in fact, that this process has "public transparency" since they have knowingly concealed and kept under technical seal majority of the information that exposes "wrongdoing" in the government.

130. The Premier of Manitoba, a former Minister of Hydro has made public policy statements that "he and Bob Brennan will get through this together" in statements made in Dec 2009. This supports the corruption, lack of fair play and deliberate attempts by the government to enact an unfair hearing, and harm the business interests of the Appellant.

131. The interference by the NDP Minister of Finance is to "protect" the government reputation and authorize state-sponsored theft of Appellant's property to KPMG is a violation of the legislation, such protocols were deemed unnecessary by the Ombudsman, and also have harmed the Appellant in its processes.

132. The basic principles of fairness entitle the Appellant to a fair and neutral process, which is why legislation was enacted to allow a "neutral body" such as the Ombudsman to investigate the complaint.

133. The Board, an arm of the government, has erred in law and jurisdiction,

and conspired to injure the Appellant in Order 95-10, overturn materials
that deliberately vilify and malign the Appellant, and run ahead of
whistleblower legislation to hijack the investigation which has failed to be
investigated under the Whistleblower legislation and thereby vindictively
harm the Appellant.

134.  The Board has erred in law and jurisdiction, by the repeated attempts to
      harm the Appellant so that it would simply "be beaten down" and "walk
      away", thereby allowing Manitoba Hydro and the Ministers responsible to
      have a hearing that keeps "under seal" crucial evidence from the
      Whistleblower. The decisions made in Order 95-10 have caused the
      irretrievable cooperation of the Appellant with the Province, and thus set
      out the objectives of the Premier and NDP Finance Minister to conduct an
      "unchallenged" hearing which denies further evidence being put forward.

135.  The Board has erred in law and jurisdiction, by attempting to set precedent
      in the courts of Canada, by a public flogging of the whistleblower and
      whistleblower's company in public, defame and malign, as well as deny
      whistleblower standing in such matters. Further Board has communicated
      in writing it wishes to receive "no evidence" form the Whistleblower as
      more evidence of a corrupt government-tainted hearing. If allowed to
      continue, precedent would be set on the failures of the Province to
      investigate the disclosure and the harm and prejudicial treatment that a
      whistleblower is subject to, once such an investigation is allowed to remain
      under the control of a government agency and Ministers exposed.

136.  The Board has erred in fact, and in law and exceeded its jurisdiction
      because public interest is not served in this process, and only government
      interest is served.

## Public Interest

137.  The issues for which leave to appeal are sought merit the attention of the
      Court because this is the first under the Whistleblower Disclosure Act in
      Manitoba and the processes under Order 95-10 undermine the core of
      public interest and the intent of legislation to "protect whistleblowers" and
      to prevent governments from enacting this type of harm.

138.  In the first instance the Appellant sought protection under the
      Whistleblower Protection Act in Dec 2008. Legislation sets forward clear
      processes and expectations regarding the investigations of these
      complaints. Those responsibilities include an investigation by a neutral
      arm independent of government, namely the Ombudsman.

139.  The Ombudsman of Manitoba has failed in her duties to enact any
      investigation under the Act. The Ombudsman has been negligent in
      enforcing her duties, has failed to provide summaries of the complaint to
      Manitoba Hydro, has caused great injury to the timeliness of the
      investigation and has not completed any investigation into critical
      allegations for instance of blackouts.

140.  Under the Act, the whistleblower is entitled to a "timely and informal and
      confidential" investigation into the allegations.

141.  No such investigation has been conducted because the Ombudsman
      simply lacks the technical skills to conduct the investigation.

142.  The Ombudsman has also failed and acted negligently in various other
      matters concerning the Act including but not limited to a) failing to provide
      a signed copy of the Publication Ban b) allowing and not taking action to
      prevent defamation against the Appellant c) failing to investigate the

- 38 -

complaint in a timely manner d) failing to respond to emails and enquiries
between the period March – Jul 2010 e) Failing to exercise good judgment
in the equity of size between Appellant and Hydro, and simply allowing the
government to run-a-mock of the legislation f) failing to invoke
fundamental rights of natural justice and procedural fairness to the
whistleblower.

143. The PUB was contacted in March 2009, only after the failure of the
Ombudsman to handle the disclosure and at the direction of the
employees of Hydro and Ombudsman's staff in March 2010. Matters being
raised, in Order 32/09 were only raised, AFTER the PUB was notified of
the filing of the whistleblower protection disclosure.

144. The PUB's involvement with the Appellant only began, after the failing and
negligence of the Ombudsman to investigate the complaint. Legislation
must invoke processes that are fair to all parties, and the whistleblower is
not being treated with natural justice and procedural fairness.

145. The Ombudsman has also issued irregular and contradictory written
letters, which do not take responsibility for her failure to investigate the
disclosure and the railroading of the processes by the Minister of Finance
and has "passed the buck" repeatedly due to her Office's lack of technical
skills to investigate the disclosure, at financial harm, prejudice and cost to
Appellant, and contrary to clear citings of the legislative mandate that this
investigation should be done in CONFIDENCE.

146. As a result, while the Ombudsman has a duty to investigate the complaint,
the NDP Government has allowed itself to run-a-foul with its own
processes to protect the reputation of the government, which will cause
irreparable harm to the public policy.

147. Because the Ombudsman does not posses the skills to investigate the complaint, the Ombudsman has passed the complaint to the Public Utilities Board in Dec 2009. This was after making contradictory and false statements in April 2009 that the Ombudsman could not pass the complaint to the Public Utilities Board.

148. The Whistleblower is entitled to a fair and confidential hearing.

149. The Board also had made fraudulent promises and commitments that its treatment of Appellant's materials would be in confidence. However Order 95-10 seeks to void those promises and seize the opportunity to hijack the process and "do the government's" propaganda and harm the Appellant in the process.

150. The Auditor General also notified the Appellant in Jul 2009 that it should not get involved with any investigation by the PUB, and that the PUB was a "political" entity and the most entwined with the biddings of the NDP Government.

151. The processes suggested in Order 95-10 would contradict the very intent and foundation of public policy and set forward a precedent of "government hijacking" of a complaint, and an unjust "public-flogging" of a whistleblower, whereby the whistleblower has been granted no standing in the hearing or procedural fairness.

152. The PURPOSE and INTENT of public interest legislation is to allow whistleblowers to come forward with legitimate findings of wrongdoing. The libel, harm, harassment, vilification and should be decreed by this Honorable Court as a violation of public policy.

153. The processes in Order 95-10 violate the purpose of the whistleblower act,

since the PUB was also designated by the Ombudsman to investigate the complaint, which again permit the whistleblower to fair, neutral and confidential hearing.

154. The Board has further erred in law and jurisdiction by "Purporting to conduct an investigation into risks", yet willfully not tabling evidence from companies such as ICF and Risk Advisory, further turning the proposed hearing directly into a direct attack and review of the Appellant's allegations and whistleblowing. The Board's error in law of procedural fairness is in the omissions of these "competitor's reports" that further supports the deliberate trial of a whistleblower.

155. The Board has erred in law and in fact in its Order by claiming that it has reviewed the "revenues" of the Crown Corporation and is satisfied the IFF, when the Appellant has evidence that such revenues are inaccurate. The Board has failed to mention that evidence accepted is full of inaccuracies in both the GRA and risk hearing and that Order 95-10 has contradicted its wishes to have the Appellant "correct mistakes in the KPMG" report, which it will now not do.

156. The Board has erred in law and exceeded its jurisdiction by failing to observe that a flawed hearing on inaccurate materials will serve no public interest, and lead to further whistle-blowing on the entire PUB process in rendering inaccurate conclusions, as material evidence of fraud by Hydro and Government will not be "tested" or reviewed as a result of their overturning of redactions. Thereby public interest is not served at all.

157. The Board has erred in law and in fact by "purporting to review the 20 year IFF" from the crown corporation when concealing from the public facts that the said IFF is flawed and keeping such material under technical seal. Therefore the Board has set an inconsistent standard of review, and one

that endorses "propaganda" of the Government.

158. The Board has erred in fact by not stating that unless all the Appellant's materials are reviewed properly, the public interest is not served until the very serious findings kept under "seal" are properly reviewed with respect to rates. Thereby, if the Board has acknowledged to keep certain materials under seal, public interest in setting rates, should include a comprehensive review of the technical information under seal. By way of contradiction therefore, airing only some of the technical information and the portion that is propaganda to the government, serves no public interest in the rate setting process.

159. The Board has erred in fact and in law, that a simple technical sealing order around the materials in question would not have caused the irreparable harm and libel but would and would not cause any delays in the Board's rate setting mandate.

160. The Board has erred in law and in fact by "acknowledging" that other consultant's price forecasts are technical and confidential but willfully disclosed price forecasts of the Appellant in an ongoing attempt to cause commercial harm and be unfair to the Appellant. The Board therefore overturns confidential price forecasts of the Appellant in contradiction of its Order.

## Public Policy

The following grounds for the Application, are made without specificity or reference to the intellectual property criteria, but support the failure of public policy and overreaching mandate of the Board

161. The Principal of the Appellant is also a whistleblower and the agents of the

- 42 -

Government should not be allowed to retaliate again the whistleblower. As further grounds, the Principal of the Applicant ("whistleblower") also filed a sealed and confidential disclosure of wrongdoing under the Manitoba Public Interest Disclosure Act on Dec 8, 2008.

162. No investigation has been undertaken under the Act, because of a failure in Provincial legislation and failings of the Ombudsman to enact her duties in a timely manner and the whistleblower has suffered harm in being ensnarled into two (2) years of failed government processes with significant time, costs and losses being incurred by the Appellant.

163. Instead the Minister of Finance, the PUB and the members of the NDP Government have sought to maintain unreasonable processes and "prejudicial treatment" that involve the Appellant because of implications of "whistleblowing" and exposure of wrongdoing to their government.

164. The Board has erred in law and in fact in its statements about public policy, as the overarching disclosure was in the first instance made under the Whistleblower Protection Act and that overarching legislation, in the first instance should defer to the rights of the Whistleblower Protection Act.

165. The Board has erred in law and in fact and exceeded its jurisdiction regarding hierarchy of public interest, as the Public Interest Disclosure Act, in a higher purpose serves in the first instance to serve public interest and protect the sanctity of processes enacted to the public. As a lower sentence of setting rates, the HIGHER PURPOSE of public malfeasance and endangering the safety of the public takes precedent to fair investigation. No immediate endangerment of public safety is invoked on a simple adjudication of whether rates increase by 1% or not at all.

166. The Board has erred in law and exceeded its jurisdiction by claiming that

setting rates has a higher public interest, than the PUBLIC INTEREST
DISCLOSURE Act in itself, which states that the mere purpose of the
PUBLC INTEREST is  "(a) to facilitate the disclosure and investigation of
significant and serious matters in or relating to the public service, that are
potentially unlawful, dangerous to the public or injurious to the public
interest;" and thereby by mere definition, significant and serious issues of
public interest, fall first and foremost under the PUBLIC INTEREST
DISCLOSURE ACT  and not in the mundane, minutia of setting rates.

167.  The Board has erred in law and exceeded its jurisdiction by not directing
       its mind to the broad definition under the Public Interest Disclosure Act
       when the legislation enacts in a broad sense to protect persons who make
       those disclosures. Such protection includes (i) protect the persons from
       libel and slander has executed in Order 95-10 (ii) protect the persons from
       unreasonable and undue financial harm as enacted under Order 95-10 (iii)
       protect the persons from retribution and harassment as enacted by Order
       95-10 (iv) protect the persons from humiliation, mockery and dissent as is
       contemplated by the continuation of this Order 95-10 (v) protect the
       persons from unreasonable and public court hearings associated with this
       Order 95-10. The foregoing does not preclude the protection of its identity.

168.  The PUB has erred in law and acted with the intentional ability to cause
       harm to Appellant by utilizing processes that have used its ability to
       "arbitrarily impose obstacles" to "disable" the Appellant from fair treatment,
       and would strategically serve to protect the Minister of Finance's
       reputation and economic benefit without any due regard of procedural
       fairness to the Appellant.

169.  The Board has erred in law in enacting libel against the Appellant and
       whistleblower to protect the government's reputation, and has enacted its
       threat to broadcast on libel and defamation of the Whistleblower in the

- 44 -

Reports, but in pure contradiction of its own "public interest", contradicts itself in the Order 95-10 by acknowledging that any fair defenses made by the Whistleblower will be kept under Seal. This is again nonsensical and willfully intends to cause irreparable harm by libel and committing violation of "false light laws" to the whistleblower.

170. The Board has erred in law and also contradicts itself by acknowledging it is "willing to keep any materials that could harm the government's reputation under seal" but frankly wants to and has enacted a threat to overturn anything that would be libelous and harm the whistleblower. This is precisely why Whistleblower investigations are done in confidence. Therein the mere continuation of the Order constitutes a "derailing" of the intent of public policy and the overriding need to ensure that whistleblowers are encouraged to come forward and expose wrongdoing, and not exposed to a disclosures being "hijacked" by government arms ahead of the rights due under the legislation.

171. The Board has erred in law and in fact as Order 95-10 also violates public interest, in that, by only broadcasting the libel reports against the whistleblower – it serves to leave approximately 714 issues unresolved. Public Interest would not be served only reviewing 285 issues, and allow only a counterattack of the most important and critical issues. This would be akin to the BP Oil Spill being reviewed and all the whistleblower's reports being kept under seal, though all the BP Propaganda-Only reports being broadcast by saying public interest is being served.

172. The Public Utilities Board is attempting to "publicly" libelize allegations without the input of the whistleblower, to support the government.

173. The Board has erred in law and exceeded its jurisdiction, in that common sense would render this process meaningless and serving only to the

protection and reputation of the agents of the Crown. The Appendix J, which is the Private Document of the whistleblower has been accepted "under seal" by the PUB. Therefore the PUB has contradicted its own statutory obligations, to publish discrediting attacks on the whistleblower in "public" but keep certain embarrassing facts of the whistleblower's evidence "under seal".

174. This inconsistent approach further invalidates the public interest in the process and the direct attempt of irreparable harm contained in Order 95-10.

175. The Board has also admitted that it can keep materials under technical seal, yet only wants to broadcast whistleblower materials which "make the Government look good" and in one-sided manner that would be libelous and slanderous to whistleblower and continues to cause injury and irreparable harm.

176. The Board has erred in law and in fact that only disclosing information that is reputationally beneficial to the NDP Government in "its mandate is to set rates" and yet "concealing" any such information from the whistleblower that is equally if not more important and relevant to understanding risks associate with rates, thereby defaming the whistleblower. Therefore public interest is not served. Order 95-10  has acted in contradiction by "eliminating" the critical information from public record, in a manner which would defraud the public in rate-setting.

177. The Board has erred in law, in fact and in jurisdiction by "concealing" and placing under technical seal "Appendix J" which are reports generated by the Appellant, and therefore not presenting the full argument of facts, thereby rendering any interest of public policy meaningless, and serving only to support a puppet show of the Ministers. Public Interest is most

- 46 -

served, in <u>ALL</u> the whistleblower technical facts, being reviewed in their entirety, by a consistent and fair process, and not just the 28.6% on the public record.

178.  The Board has erred in fact and in jurisdiction in Order 95-10, by rendering the public interest must be served by a detailed review of the facts, but willfully agrees to place "embarrassing facts of the government" under technical seal, but only exposes libelous and defamatory statements about the Appellant.

179.  The processes in Order 95-10 will do irreparable harm to public policy. Legislation was not intended.

180.  The Board has erred in fact in its order that "Appellant will be filing litigation only if it broadcasts its original NYC report". The Board failed to mention that such action was threatened to be taken for the "overturning of redactions" and was inaccurately stated in the Order 95-10 .

181.  Should Order 95-10 be allowed to stand, and without prejudice and as not a waiver, will also be engaged in sizable litigation against the Board and members of the government over the unlawful releases and bad faith practices and other issues.

## PROTECTIONS OF A WHISTLEBLOWER

182.  The fundamental and overarching principles of fairness to a whistleblower are to recognize the inequity in size, resource and the differences between a little person "Whistleblower" and single-person company and a billion dollar crown corporation. Such protections are mandated in the legislation.

183.  As examples of the prejudicial treatments to the whistleblower and harmful

behavior of the NDP Government:

- The PUB has erred in law and attempted to harm the whistleblower and failed to act in procedural fairness by allocating unlimited budgets to the billion dollar Crown Corporation and paltry and unreasonable amount of only $2,400 of legal resources to the whistleblower to justify redactions, whereas the Crown Corporation has had excesses of $240,000 to crush and destroy the Appellant. This shows the unreasonable and unfair processes of the Board.

- The PUB has erred in law and attempted to harm the whistleblower and failed to enact procedural fairness and natural justice and by allocating 3-4 weeks for the crown corporation to provide memos and reasons for redactions and in the instance of the whistlebower only 10 hours. This shows the unreasonable and unfair processes of the Board.

- The Board was notified that such amounts were insufficient and acknowledged that materials would take 70 hours to prepare. The Board then acknowledged that fair resources of 70 hours should be provided yet failed to do so in manner that would conflict with business meetings and commitments of 20hours a week and so as a way to prevent the whistleblower from being able to respond. The Board then rescinded budgets and expected "pro-bono" services for Appellant to provide its evidence "for free" or not counter the evidence from Hydro. This shows the unreasonable and unfair processes of the Board.

- The Board repeatedly stalled and delayed in communications so as to disadvantage the whistleblower in processes. This shows the unreasonable and unfair processes of the Board.

- Once the Board recognized it was to appear before a Court, it violated its legal undertakings to Manitoba Counsel and rushed to release the materials so as to injure the whistleblower. This shows the unreasonable and unfair processes of the Board.

- The Board was aware the whistleblower was attending the funeral of the grandmother on or around Sep 24th – Sep 28th. Instead to cause further and intentionally and negligently invoke emotional distress, decided to go ahead and destroy whistleblower's business interests at the same time. This shows the vindictive, unreasonable and unfair processes of the Board.

184. The Order 95/10 and associated procedures seeks to abuse the power of the government. The Board has erred in law and in jurisdiction by attempting to override legislation.

185. The whistleblower is entitled to a fair, neutral and confidential investigation of the allegations.

186. The Manitoba Legislation was designed purposely to allow for <u>confidential investigations</u>. The Board proposed processes are nonsensical to anyone knowledgeable about risk management investigations

187. The mockery being made of the legislation would render the Public Interest Disclosure Act worthless, possibly to a point where no-one again files any more whistleblower complaints against a Crown, because of the damage done by the public one-sided flogging of the whistleblower by the Board, where the whistleblower could not respond.

188. The continuation of these processes, would also violate public policy and not serve the public interest. The public libel of the whistleblower without the opportunity to respond would cause irreparable harm and serious questions to the genuine legitimacy of the Board's supposed investigation.

189. Public perception would remain that the allegations are not resolved, because the whistleblower is not able to provide evidence, facts,