testimony or support its conclusion.

190. Consequently the Board has erred in law and exceeded its jurisdiction in not directing it's mind to the larger and more overriding public policy which is to encourage whistleblowers to step forward, and the broader public interest which is to stop governmental organizational malfeasance. The retribution contained in the false and defamatory materials in Order 95-10, serve as a deterrent to the Whistleblower Protection Act.

191. The Board has exceeded its jurisdiction in harming the public policy of the intended legislation by which Manitoba Legislature has spoken in supporting the needs for contractors and employees to be afforded fair and equitable treatment in the exposing of government wrongdoing. As such processes in Order 95-10 are procedurally unjust.

192. In conjunction, the Board has erred in law and in fact in not mentioning in Order 95-10 reasons for redactions associated with the whistleblower's rights under the Whistleblower Protection Act, which seeks to in the first instance grant such investigation in confidence and second that there is no precedent in Canada, for a whistleblower disclosure to be hijacked by a rate-paying tribunal, when the intent of the legislation is to prevent governmental malfeasance and limit such government involvement.

193. The Appellant submits that a failure to strike Order 95-10 would condemn and would undermine the *Whistleblower Protection Act and* the intent of Public Interest Disclosure legislation, when there is a clear legislative regime to deal with this issue and the strong public policy considerations that it seeks to vindicate. The Manitoba Legislature has spoken, and it has spoken clearly. Therefore continuation of Order 95-10 would set unreasonable precedent for whistleblowers and set catastrophic precedent in the interest of the public-interest to a point where the legislation is a

joke, unless judicial order is set around this process.

194.   The Appellant asserts the Board has erred in law, and abused the power of the government office to harm and retaliate against the whistleblower and deter the Appellant from fair participation for retribution for the very wrongdoing being exposed.

195.   For all of the foregoing reasons, the Appellant cites that Order 95-10 needs to be struck in its entirety.

196.   The Board has erred in fact, that such investigation need not either be delayed or impair the Board's rate setting by respecting such rights, by simply placing a technical sealing order around such processes, by which its objectives could still be achieved, and has laden and that processes should not impair the natural rights of the whistleblower and not subject the to a one-sided defamation. In any event, the Board's rate setting is impaired in this process, as substantive evidence has been "omitted" from view and placed under seal.

197.   The Board has erred in fact in statements that "public interest" is served as the continuation of these processes, would on a higher level would seek no resolution of these issues, as the materials facts and technical information that supports the materials has been kept "under technical seal", therefore contradicting the very reason and process under which technical information is reviewed.

198.   The Board has erred in fact and exceeded its jurisdiction, in not directing its mind and noting that only technical workshops in rate-setting processes are common place and kept CONFIDENTIAL and that information redacted by the Appellant most certainly falls under the "technical".

199. The Board has erred in fact and exceeded its jurisdiction in failing to note that Technical Sealing orders are widely enacted in Utilities Commissions in the United States, and given that most of the Appellant's work has been placed under seal, the Board's actions are contrary to far reaching and widely accepted Utilities Commissions rate-hearing processes in setting comparable standards to conduct a <u>confidential</u> formal and factual investigation into the consultant's technical findings. The processes are incorrect in comparable Utilities' processes for <u>confidential</u> technical workshops.

200. The Board's erred in fact and erred in law, in that the materials fall under the definitions of technical information and do not serve a purpose to be aired or tested including Appellant's computer models in a public forum. The Board's processes were intended to cause harm to Appellant, by gratuitous and self-indulgent decisions overturn redactions when it failed to review evidence from the Appellant as again part of the conspiracy to violate contracts.

201. The Board has erred in fact in that majority of the public are not experts in the technical details of computer models, and public policy seeks to protect the sanctity of technical information and the release of computer information does not serve general public interest, but more importantly only to Appellant's competitors. General rate payers, would not be expected to seek public benefit from the level of technicality of the materials and therefore there is no public interest in its release.

202. The Board has erred in law to place such technical materials, solely for the purpose of to deliberately harm Appellant's competitive position, and conspired to cause such harm and therefore simply cannot be trusted to have any fair adjudication of the matter since it is a government agency. Thereby we approach this Honorable Court, as the Board has a motivation

to seek revenge and profit by providing such materials to competitors and has demonstrated a pattern of pique and bad faith conduct to harm the Appellant. Quite simply, no member of the NDP Government can be trusted to adjudicate anything of importance related to the whistleblower.

203.   The Board has erred in fact, by on one hand claiming it needs to "rush" to turn over redactions, and on the other, stating in Order 95-10 that the Interveners already had enough information to proceed on the basis of the originally released reports from Jul 2010.

204.   The Board erred in fact that it needed to suddenly "rush" to turn over redactions in seven(7) days, as part of its conspiracy to harm the Appellant, when the Board failed to mention the fact that it was responsible for over ten(10) days of delays to stall Appellant in August and over twenty (20) days of July again to stall the Appellant. Thereby the Board has acted inconsistently and irregularly with full intention to act in a manner that would cause harm and in an unfair and prejudicial treatment to the whistleblower. The "rush" was designed to cause harm, so that a one-sided adjudication, without a court involvement could proceed.

205.   The Board has erred in fact in suddenly needing to rush in seven(7) days to overturn redactions, when such processes were deliberately skewed to favor the government, and sought to harm the Appellant. The rush to enact a prejudicial and unfair hearing, seeks only to preserve the Finance Minister in time for the elections in 2011.

**Freedom of Information and Privacy Act**

206.   The Board has erred in law in failing to direct its mind to Manitoba Legislation under the Freedom of Information and Privacy Act states under

Rule 18.1 that no information should be disclosed publicly that is (a) a trade secret of a third party;  (b) commercial, financial, labour relations, scientific or technical information supplied to the public body by a third party, explicitly or implicitly, on a confidential basis and treated consistently as confidential information by the third party; or (c) commercial, financial, labour relations, scientific or technical information the disclosure of which could reasonably be expected to (i) harm the competitive position of a third party,  (ii) interfere with contractual or other negotiations of a third party,  (iii) result in significant financial loss or gain to a third party,  (iv) result in similar information no longer being supplied to the public body when it is in the public interest that similar information continue to be supplied, or  (v) reveal information supplied to, or the report of, an arbitrator, mediator, labour relations officer or other person or body appointed to resolve or inquire into a labour relations dispute.

207. The Board has erred in law and exceeded its jurisdiction in not directing its mind to the fact that Order 95-10 would  (*(iv) result in similar information no longer being supplied to the public body when it is in the public interest that similar information continue to be supplied"*

208. The Board has erred in fact and in law and exceeded in jurisdiction in not only recognizing that irreparable harm be done to the Appellant, but the whistleblower would cease permanently and irrevocable under Section 18.1.c.(iv) of the FIPPA to never participate again with the Province in any investigation of the allegations. *(iv) result in similar information no longer being supplied to the public body when it is in the public interest that similar information continue to be supplied*

209. There is overriding public policy and public interest in the allegations being reviewed properly and that any proper investigation, requires *"similar*

*information to be supplied to the public body from the Applicant"* in order for the investigation to be conducted properly. Materials before the Board are identical and the same as materials, first placed, dispositioned to the Ombudsman under the Public Interest Disclosure Act.

210. The Board has erred in law and in fact, in further stating that information was provided to experts. As such as NO information was provided to the experts as of date on Sep 20th 2010. Further the experts have recently contacted the Appellant seeking to receive "additional information" to be supplied. As a result of Order 95-10 no such information will be supplied.

211.   The experts have acknowledged that it *"it is in the public interest that similar information continue to be supplied"*.

212. If PUB processes under Order 95-10 continue, the whistleblower under Manitoba Legislation 18.(1).(c).(iv) would, because of the irreparable harm and consequences of the Board actions to Applicant's business, would permanently terminate any cooperation with the Province of Manitoba in any further investigation of the allegations.

**Blackouts and Energy Reliability**

213. The Board has erred in law and in fact by not directing its mind to the Electricity Reliability Act of Manitoba S.M. 2009, c. 17, and the requirements of compliance regarding blackouts and reliability standards, which have material impact on the risks faced by rate-payers in the GRA hearing.

214. The Board has erred in law and in fact and exceeded its jurisdiction, by failing to mention that compliance bodies such as MRO and NERC require investigations into violations of reliability standards under confidentiality orders and that it is a violation of US Federal laws, and MRO and NERC

rules to investigate matters related to critical infrastructure in confidence, for instance under NERC Rule 1.5.10 and Appendix C and Section 1500.

215. The Board has erred in fact, exceeded in jurisdiction and in law by failing to mention that Appellant has disclosed materials risks to the Province, regarding blackouts and failings of the Crown Corporation in enacting energy reliability. The Board has failed to mention the investigation of blackouts, as such fall also under NERC and MRO standards and do not mandate a public review of such facts and instead speak to "confidential" reviews and the absence of this renders any review of risks futile.

216. The Board has erred in law, exceeded its jurisdiction and erred in fact by making contradictory claims in Order 95-10 that the vested interest of the public is being sought, when critical reliability information and all Appellant's blackout materials are sought to be ignored which are of higher public importance.

217. The Board has erred in fact and kept by airing matters of critical importance in the public domain, when it has defrauded the public in concealing such information related to "blackouts" under seal, and acknowledging that the Appellant's critical information contained in a report dated Sep 29th 2008 the Hydraulics Report be kept under confidentiality and agreeing to keep materials risks agreeing to keep such matters under "technical seal" and yet it has set forward no processes in its GRA Risk hearing, to address the critical matters under "seal" pertaining to blackouts and reliability, thereby defrauding the public its intended hearing is a "comprehensive view of risks" and the Board in its Order 95-10, seeks to ignore the core of Appellants materials findings in risk, pertaining to blackouts. Therefore the processes by the Board serve no purpose in understanding the risks and rates.

218. The Board has erred in law and in fact, and aided and abetted in making false and materially incorrect statements in Hydro and KPMG reports, who's terms of reference were publicly announced to be set by the Public Utilities Board which fraudulently claims to deny the existence of the said Sep 29th 2008 Hydraulics Report and "pretends it does not exist" in its review and thereby determining blackouts don't exists. Processes in Order 95-10 thereby defraud the public and are not in public interest in proper resolution of blackouts.

219. The Board has erred in fact and well exceeded its jurisdiction that a comprehensive report of risks is being undertaken, when selective and pertinent and relevant information associated with the setting of rates, has undergone no review, and is not being disclosed and discussed, and there has been a willful interference and attempt to "smoke-screen" the Appellant's findings by an incomplete KPMG Report, which deliberately and falsely alleges that Appellant's Sep 29th 2008 Hydraulics Report was not in existence during its review, rendering all its conclusions and findings meaningless and fraudulent to public interest.

220. The Board has erred in law and fact in attempting to defame the Appellant in responses contained in Appendices D, contradiction and discussing and disclosing confidential materials related to Appellant's Sep 29th 2008 Hydraulic Report, in a manner that is libelous and cannot be defended in without reference to the confidential and technical matters which is confidential, technical and has been kept under "technical seal", thereby leading to no resolution of the matters, and only serves to broadcast "NDP Government" public propaganda, and further violates public interest.

221. The Board has erred in fact and in law, to mislead the public interest that KPMG terms of reference were "manipulated" by Government officials, and Hydro and PUB were determined to willfully set to "ignore" the Sep

29th 2009 Hydraulics Report as further evidence to defraud the public and continue a investigation of the highest degree and to continue to defame, and cover-up against the Appellant which is another reasons such matters have reputational and strategic benefit to position the government for re-election. This is precisely the reason that whistleblower investigations are not done by government arms, and the continuation of these processes seeks to increase harm of genuine public interest and serious material failures of reliability.

222.  The Board has erred in law and in its jurisdiction, by setting forward incomplete and conflicting processes in Order 95-10, by for one example of material fact, the Appellant's Sep 29th 2008 Hydraulics Report is not investigated, and all materials facts included related to safety factors that would impact rate setting and risks (including bankruptcy) from Appellant's individual reports are kept "under technical seal". Thereby the public have no transparency in facts that would expose mismanagement and gross failures of the government. Further the fallacy in the Board Order, seeks only to air counterarguments which are materially defective and make injurious statements in genuine public interest, at the expense of Appellant and only trying to serve and protect government interests.

223.  The Board has erred in law and failed in its jurisdiction, as it has failed to review any materials of the Appellant in a worthwhile or confidential manner which would invalidate any investigation being conducted under the Board proposed processes under Order 95-10 and could materially and significantly lead to catastrophic failures of public policy in the further denial of Appellant's evidence and facts to support its findings regarding system reliability failures.

224.  The Board as erred in facts in Order 95-10 that public interest is served as pertaining to rates without conducting some portion of its hearing in

"confidence". The Board's mandate to conduct such portion's under seal deny the necessity to overturn redactions of Appellant, whereby only continuing to vilify and malign the Appellant and a government cover-up of the materials.

225. The Board has erred in fact in that the information is best served by a confidential investigation being done into this. The Appellant would withdraw any and all participation with any Provincial arm to provide evidence, should such processes continue.

226. The Board has erred in fact and in law and acknowledged that materials from the Appellant should be kept under confidentiality and have acknowledged that Appellant's document called a Hydraulic Report dated September 29th 2008 and no such materials and matters are disclosed in Appellant's Public Documents.

227. The Manitoba Hydro Electric Board as part of the willful intent to cause harm to the whistleblower and Appellant and conspiracy to injure the whistleblower as retribution for exposing such gross mismanagement and negligence in the Corporation, have unlawfully placed Appellant's confidential materials including but not limited to the Sep 29th Hydraulics Report on the internet, in a full outright and egregious attempt to convert Trade Secret status of the materials, whereby the PUB has acknowledged that such the report is confidential and is to be maintained as confidential. This is further evidence of deliberate abuse and attempts to cause competitive harm. Such information discloses methods that the NDP Government can profit in excess of $0.5 BN and thereby their willful attempts to steal and convert Trade Secret status and unlawfully place such materials on the internet.

228. This Honorable Court is sought also to seek that public retribution and

- 59 -

intention to damage the Appellant for its rightful finding of failed NDP
public policy and the retribution and attempts to destroy and harm
Appellant' business to steal valuable technical and copyright and trade
secret materials from the Appellant to further and better the operations of
the government and attempt to provide such to its competitors.

229. The Board has erred in law, exceeded in jurisdiction and endorsed
behaviors which constitute violations of United States laws, to willfully
distribute materials that referred to unlawfully disclosed materials from
SCO and Robert McCullough in violation of Economic Espionage Laws,
which willfully distribute materials that take materials unauthorized by the
owner dated Sep 29th 2008 and knowingly circulate them.

230. Public policy includes the safety of the public of Manitoba. The
whistleblower has reported allegations that the NDP Government officials
are endangering the safety of the public with "blackouts". Order 95-10
seeks to deliberately overturn public policy by keeping materials of this
"under seal" yet only exposing "propaganda" reports endorsed by the
government and Minister of Finance, such as a KPMG report which further
commit fraud by denying the existence of such a Sep 29th Hydraulics
report and material information. In all cases, the mandate and legislation
support the investigation being done outside of the government arm.

231. The Board has erred in fact, and in law and exceeded it jurisdiction by
aiding and abetting KPMG and Manitoba Hydro to pretend that public
interest is served by "denying the Sep 29th Hydraulics Report information"
even exists in KPMG's supposed review of the material allegations of the
Consultant, which further unilaterally and dogmatically violated all the
Software Licenses of the Appellant.

232. The Board has erred in law, with regard to Article 45 of TRIPS which has

sought to provide a competitor KPMG over $750,000 of profits in the reverse engineering of Appellant's confidential and trade secret and copyright materials, without authorization from Appellant and direct infringement of Appellant's legal rights.

233. The Appellant therefore has reason to assert its further rights under the Whistleblower Protection Act, that the government is not competent, capable or neutrally positioned to handle the responsibilities of this investigation, in fact seeks to profit and benefit strategically and reputationally by harming the Appellant, and denying the existence of blackouts and has demonstrated fraud, corruption and bad faith behavior in every step of this Whistleblower Disclosure.

234. The Appellant and whistleblower therefore approach this Honorable Court to stop Order 95-10, in its entirety and transfer the investigation to a suitable potentially out-of-province agency, and to an agency competent and neutral from the NDP Government to investigate the very serious matters of risks which can no longer be interfered with. The NDP Government has proven itself to be fundamentally dishonest and acted in egregious bad faith throughout the process, including but not limiting to, denying the existence of the Sep 29th Hydraulics Report in the KPMG Report, and willfully violating all of Appellant's Software License contracts.

235. Under Rule 36 of the Act, the LGC has the mandate to set neutral persons for investigating these disclosures, and since these processes fall again under the Minister of Finance and Premier, there is no neutral oversight in the mandate and grossly unfair and prejudicial handling of the investigation has ensued.

236. The Board has erred in law and in fact and exceeded its jurisdiction, by "suddenly", and only after being notified of the Whistleblower Protection

disclosure in and around March 2009, altering its normal course of process by which to determine rates, and taking upon itself to conduct a hearing solely directed to "whistleblower risks", when the Board has not previously in its history conducted any such hearings in its rate-setting process, and it is not part of its general mandate to conduct such hearings. Specifically the Board has erred in Order 95-10 in setting this hearing, not about risks, as it has ignored other consultant's evidence such as ICF and Risk Advisory and not tabling such evidence, but more an irregular and unconstitutional process by an arm of the NDP Government to hijack the whistleblower act, and make the focus of the hearing solely on the whistleblower's partial reports and thus cause retribution harm and deliberate conspiracy to injure the Appellant.

237.  The Board has erred in law by endorsing egregious and repugnant behaviors of Contract violations by Manitoba Hydro and the Ministers as retaliation and repudiation for exposing "gross mismanagement of public funds", including the state-sponsored theft and damage control to incur a false KPMG report, which denies the existence of the Sep 29th report and the denies the existence of Software License. This egregious conducts seek to run-over and overstep the fundamental rights of fairness to the whistleblower.

**NDP Cover-Up and Failed Investigation**

**As further grounds for this leave for Appeal, this Honorable Court should take into consideration in the interests of public interest and natural justice**

238.  This withdrawal of cooperation by the whistleblower would allow the Manitoba Hydro Electric Board to not have adequate counter challenge and continue a one-side "propaganda" hearing into the findings and would ultimately serve as the largest NDP Government "cover-up" in Manitoba

history. This is contrary to public policy. Appellant has proof and evidence of mismanagement to tune of $1.1 billion dollars and the endangering of the safety of the people.

239. The handling of this disclosure is a violation of the spirit and intent of public policy and constitutes a gross failing of the NDP Government to honor the legislation and protect its reputation.

240. Irreparable harm would be done to the public interests in the Province of Manitoba, the intent of the whistleblower legislation and to the crown's reputation in international comity of rules of protection of United States private property if the processes are allowed to continue.

241. The Board has erred in law and in fundamental processes set forth in Order 95-10 and as communicated in writing seek to prevent the whistleblower and Appellant from a) providing evidence b) supporting facts and c) have obstructed any participation of the whistleblower.

242. The ongoing would again render the Public Interest Disclosure Act worthless and a hazard in the fair and fundamental rights it seeks to preserve in the interest of justice for Manitobans and would serve the ultimate goal of the NDP Government and allow Manitoba Hydro Electric Board to cover up and provide a one-sided "propaganda" into its gross mismanagement and risks of threatened reliability to the Province. These processes are again not in public interest.

243. The allowing of Order 95-10 will do irreparable damage to the sanctity of whistleblower protections and the goal of succumbing the Appellant to extortion, financial harm and hardship would allow a false victory by Manitoba Hydro and the harm being done in Order 95-10 would destroy the legitimacy of the investigation and the Manitoba Hydro Electric Board,

would never be subject to a fair investigation, because of the harm done by Board (and NDP) processes.

244.  The whistleblower came forward in good faith and in public interest because of legitimate findings of wrongdoing of gross mismanagement of public funds and threats to the safety and reliability. Because of the failures of Province of Manitoba and the Ombudsman to honor the legislation and conduct a "timely and informal Confidential" investigation into the allegations, the whistleblower has become ensnarled in a two (2) year protracted and exhausting black-hole of fraud as a result of incompetence in NDP skewed processes to cover-up their failings which is causing irretrievable financial damage to its business.

245.  Public interest would further not be served by no complete resolution of the facts and irreparable harm would also be done to public interest, if allegations were not properly reviewed.

246.  The continuation of these processes, constitutes bad public policy, violates the intent of the whistleblower protection act, and would cause further harm in the interest of the public in leaving all matters unresolved.

247.  The Board, as agents of the NDP Government, has erred in law by conspiring to harm the Appellant's intellectual property in its processes as part of the retribution to the whistleblower and ignoring international laws of economic espionage by foreign governments. The NDP Government is attempting to "cover-up" the wrongdoing by enacting processes to exhaust, drain, and damage the intellectual property of the whistleblower instead of having a fair and proper confidential review of the allegations.

## FINANCIAL HARM AND COSTS

248.  The Board has erred in law in abusing its financial powers to cause financial harm to Appellant. It is clear that the volume of materials and work entailed requires significant legal input and time and has attempted as part of the deliberate unfairness and unreasonableness of its processes to deny fair costs for the whistleblower and to willfully interfere in its business. The Board has deliberately sought an unfair advantage to "benefit" the government, knowing the Appellant is a small business and unable to match the financial powers of Hydro which have been abused to "crush" the little person.

249.  The Board has erred in law, exceeded its jurisdiction and used bad faith and unreasonable financial tactics to harm the Appellant and tortiously interfered in its business contracts and other business dealings. The tactics of the Board have surmounted to intentional and negligent infliction of personal harm and distress and financial bullying.

As other grounds this Honorable Court should be aware that:-

250.  The whistleblower is a sole proprietorship and should not be suffering undue financial burdens, costs and expenses because of the failures of the Province to investigate the allegations.

251.  The whistleblower came forward as an honest and genuine person, with findings as contemplated under the Whistleblower Act legislation and exposed wrongdoing. Instead the whistleblower has been subject to abuse, bad faith conduct and violations of all its rights, including but not limited to moral rights, contract rights and is incurring financial losses – including massive emotional and personal stress as part of retaliation.

252.  The whistleblower makes its living as an hourly contractor, and every hour being spent on this is causing financial harm to its business.

253. All other experts, consultants and KPMG are receiving full indemnification and covering of costs. The whistleblower is sustaining unfair and unsustainable financial harm because of the unlawful, prejudicial processes by the PUB and Ombudsman – which strike at the heart of natural justice and procedural fairness.

254. The continuation of these processes, constitutes bad public policy, violates the intent of the whistleblower protection act, and would cause further harm in the interest of the public in leaving all matters unresolved.

255. The whistleblower has suffered an abuse of power and is being financially harassed and distressed by processes by the Board, which constitutes the basis of unfairness in Order 95-10.

256. Precedent has shown that whistleblowers are granted full access to legal costs and indemnification for participating in matters related to these investigations.

257. Precedent shows that the patterns of abuse of power and of public office, to vilify and harm whistleblowers for exposing wrongdoing and speak concurrently about the attempts to act unreasonably by the Board, for instance on the day of bereavement in the whistleblowers family.

258. The Board has erred in law and in fact, and exceeded its powers in abuse of the government, as it made decisions with full knowledge of financial harm that posed a problem for Appellant to produce evidence. The ongoing processes which have been incurred through no wrongdoing or fault of appellant seek to drive the Appellant out of business and create a "win" by the NDP Government by causing financial inequity and harm by denying the Appellant the natural justice right to present legal arguments,

- 66 -

or by placing unreasonable and arbitrary caps on legal representation, which achieve the same objective of making it impractical for the Appellant to partake in fair processes. This constitutes a fundamental failing in the rendering of arbitrary decisions in Order 95-10 which was designed to be inequitable to the Appellant so that it could destroy and damage Appellant's business and not include fair evidence in its process. This in itself argues the point that the decision is void and was made on a process of inequity.

259.  The Board has erred in fact and in law, and exceeded its jurisdiction by violating the natural rights to procedural fairness in the financial processes that would limit Appellant from fair argument.

260.  The bad faith conduct, intentional infliction of harm, renders the Board's objectivity and ability to have neutral standing in such matters "void" under a principle of law, and its ability to be fair to the Appellant non-existent.

261.  The Board's unfairness is supported by its strong ties to the arm of the NDP government that has been rightfully exposed for gross mismanagement of public funds and endangering the safety of the public in the Province of Manitoba and continuation of the Board's overreaching conduct and unconstitutional processes in fact vindicate the Appellant's findings, in the embarrassment the NDP seek to prevent from being exposed and the whistleblower being treated fairly.

262.  As a final statement, the repudiation, retaliation and attempts by the NDP Government to silence the whistleblower and cause deliberate harm and set forward processes that would conspire to injure the Appellant should be stopped by this Honorable Court.

263.  Legislation was enacted in Manitoba for a purpose of overriding public

interest to allow the sanctity of whistleblower disclosures. The processes in Order 95-10 seek to destroy that sanctity, serve as a deterrent to the public interest, and would ultimately lead to a) not only the biggest cover up in government history of the NDP but b) a potential total failing of the legislation and c) a permanent non-resolution of the facts regarding the safety of the people – which will lead to the whistleblower pulling out due to the abuse of power of the government.

264. The legislation has come forward with a set of overriding principles for the handling and investigation of these complaints. The government has abused its power, by morphing the complaint into a public rate-hearing, defaming and attacking the whistleblower, and violating its trade-secret and confidentiality contracts and business in a clear example of intellectual property theft to benefit a foreign government.

265. The Board has erred in fact and exceeded its jurisdiction to claim that public transparency is met, in the reasons for Order 95-10, as the Appellant can prove that the "sealed" portions of public interest disclosure are so significant that public interest should mandate the investigation is done properly so that necessary information related to the proper trial and testing is completed so that there is no ambiguity to the accuracy of information from the whistleblower. This overriding public interest, mandates that public transparency be in the proper involvement of "all facts" from the whistleblower, and not the one-sided processes being enacted under Order 95-10.

266. The whistleblower, as further evidence of a corrupt and skewed process, has been denied participation with the Board. As such, if the meddling from the government is not stopped, the whistleblower will be successfully "forced out" and we seek that the overturning of redactions is decried from evidence and the material promptly sealed.

267. Order 95-10 has made a mockery of the government, and shown the desperate attempts the government will go to, to keep in favor for the election in 2011, because if the whistleblower was given any fair chance, it would be shown that the allegations of mismanagement of $1.1 billion dollars of public funds, and endangering the safety of Manitobans is in fact correct and the very serious public interest invoked should seek precedent in this motion for leave for Appeal.

268. Not more than one month has elapsed from the date of the Order 95-10

269. Such further and other grounds as counsel may advise and this Honorable Court may permit.

As additional grounds for this Application:-

270. The Board has erred in law, in fact and exceeded its jurisdiction, with the publication of further defamatory materials by the Public Utilities Board on or around November 18th 2010 on the world-wide web, internet with distribution of media.

271. The Board has erred in law and exceeded its jurisdiction on Nov 15th 2010  by again setting forward processes with a knowing lack of procedural unfairness that contravenes the foundations of natural justice by not permitting NYC to redact such materials prior to the placement on the public record, and only allowed MH to provide redactions in clear "bias and prejudice" to favor the government.

272. The Board has erred in law in the release of further inaccurate, false

and defamatory materials on its website and into the public domain, as it had full knowledge in advance that the materials were not accurate, also had prior knowledge that this Appeal was being sought and therefore acted with malice and willful intention to harm NYC.

273. The Board has erred in fact in Order 95-10 and the execution of its orders, by the further enaction of defamation on Nov 18 2010, as it has failed to mention it was also provided written information in Jul 2010 that materials were redacted which were untrue or libelous.

274. Therefore the Board has erred in law and fact, as it continues to not direct its mind to the very serious public consequences of public defamation and the broadcast of unsourced, untrue, fabricated and libelous statements about a person, business and their goods products and services.

275. The Board has erred in law, by not supplying the Applicant with the indemnification it granted in its Order 30-10 for the involvement with Experts, including but not limited to legal counsel, again in an attempt to leave the Applicant in an inequitable position.

276. The Board's continuation of its processes under Order 95-10 and clear inequity and unfairness, demonstrate the defiance to harm, injure, and paint false light support the previous grounds in the Application and intention to cause harm to the Whistleblower.,

277. Applicant has provided the Board with a Notice Of Defamation under section 14.(1) of the Manitoba Defamation Act, without prejudice to

Case 1:13-cv-04501-PAC   Document 29-12   Filed 11/22/13   Page 22 of 28

- 70 -

Applicant's rights in any other jurisdiction, including the State of New York and the laws of United States of America, as copies of the materials have been circulated to parties in the US, where the Applicant conducts business.

278. The Board intends to broadcast more defamatory materials with unauthorized access to NYC materials on or before December 15th 2010.

279. Public policy in both US laws and Canada general tend to protect the fundamental rights to have truthful and sourced statements be made and distributed in public and on the website domains about companies and their goods, products and services.

280. The Board has not and cannot provide any source, substantiation or proof in support of the publication of these multiple defamations, which seek to harm and injure the Consultant. Many of the statements are completely "unsourced".

281. The harm is being created extends beyond the Province of Manitoba, as the Board has selectively placed only the defamatory statements about the whistleblower on its website, when clearly in prejudice, no other materials related to the GRA are placed on its website, again singling out the need to harm the whistleblower.

282. The website and internet and the distribution of these materials is particularly harmful, as it is not part of the PUB's standard processes, and is reaching businesses and companies in the United States of America and New York. The Internet is well recognized as

having cumulative effects of defamation because of persistent reach and ongoing presence.

283. The continued posting of these materials, shows the Board's intention to distribute these defamatory materials outside of its jurisdiction and no other materials form the GRA are placed on this website, other than those defaming the whistleblower.

284. The Board has erred in law and in fact, and failed to recognize that defamations and product disparagement is a tort, with the intent of malice, can be under US Federal laws, and subject also to criminal prosecutions, combined with theft of intellectual property.

285. The Board has also erred in law and procedures in fairness to deny and prevent NYC (whistleblower) the ability to provide any evidence, fact, or testimony to support the defense of such statements, and to that accord the Board has set about unreasonable, and inequitable processes which seek to solely defame and malign the Applicant without the ability to contest the publications. Thus the Applicant has approached this Honorable Court for fair relief.

286. As further grounds of public policy and note to this Honorable Court, over 100+ statements of untrue, false, libelous and defamations have been published on the internet by the PUB.

287. The publication of volumes and excessive defamatory documents, is also causing financial harm and losses to the NYC for the amount of time, it must partake in these matters and processes, in order to set about a process of justice.

288. The misuse of financial power, to harm a small company must be also observed, in the intent to cause harm and injure the Applicant, in the time being incurred to rightfully defend the defamations by the Public Utilities Board.

289. Defamation of the Whistleblower, specifically contravenes the spirit and intent of the Whistleblower Protection Act, and in a large public policy the failure of the Province of Manitoba and this Court to allow this public defamation to continue, would have larger public implications in the ineptness of public legislation to support Whistleblowers coming forward.

290. The legislation, allows the Whistleblower to a timely and confidential hearing. The broadcast of enumerate libel, false light and defamatory comments by the Public Utilities Board on their websites on Sep 27th 2010 and Nov 18th 2010, is a violation of law of Manitoba to encourage persons to step forward in the interest of public wrongdoing and public interest.

291. The Applicant finally still asserts that the materials being presented are false and have not addressed the core and heart of allegations found by the Applicant as relates to incorrect financial forecasts, endangering the safety of the public with blackouts and shortages of power, over $1.1BN of losses in public funds due to managemnnt flaws, and over $0.5BN of avoidable losses due in the FY0304 alone. Significant fraud has been to not only the Manitoba public in the future forecasts but also to US counterparties including the MRO and NERC.

292. The Applicant finally notes, that public interest cannot simply ignore these facts in the GRA, and continue processes that will in fact misstate the public viability in rate-setting in order to "save face" to protect the Government interests.

293. The processes by the PUB to defame, injure, and cause harm and financial distress are causing irreparable harm and commercial damage to the Applicant.

294. The processes by the Board are also intended to cause personal aggravation and stress over the holiday periods, so the NYC is forced to injure itself on this time consuming and injurious process at great costs to other opportunity costs and business.

As final grounds for the immediate stay

295. Applicant has reviewed the list of materials being used in the GRA Hearing 2010. It totals in excess of 11,000 pages.

296. The materials under which a stay is being granted is approximately between and does not exceed 200-500 pages. (If all redactions are replaced). Therefore a stay of less than 2% of the hearing is requested. If only the risk portion is stayed only 5% of the hearing is stayed. The bulk of the GRA hearing, which is 90% of materials are unaffected.

297. Thereby I approach this Court that no material impact will be caused by having a fair an adequate time to adjudicate the matter before the

Court of Appeals.

298. The public interest outweighs the interests of the Public Utilities
Board, to have the allegations resolved appropriately and
confidentiality, in accordance with the Whistleblower Protection Act.
A failed investigation in this regard will serve further harm, to the
legitimacy of the legislation, and the very intention it is supposed to
protect.

299. A Notice of Defamation will be provided as further grounds for
immediate relief.

- 75 -

THE FOLLOWING DOCUMENTARY EVIDENCE will be used at hearing of the motion:

1. The Affidavit of the Principal of The A Star Group, Inc to be filed <u>in Four or more Parts;</u>
   a. <u>An Affidavit Part 1 Pertaining to Defamations and Exhibits</u>
   b. <u>An Affidavit Part 2 Pertaining to PUB matters of process</u>
   c. <u>An Affidavit Part 3 Pertaining to the Ombudsman</u>
   d. <u>An Affidavit Part 4 Pertaining to Commercial Rights under US laws and material contract issues.</u>
   e. <u>A supplementary Affidavit as required by US Counsel.</u>
2. Affidavit evidence and documents in support of the Motion that the operation of Order No. *95/10* be suspended *in whole* or in substantial part thereof, pending the final disposition of all appeals
3. Such further and other materials as counsel may advise and this Honorable Court may permit.

October 18, 2010

_____

New York Consultant

Principal of The A Star Group, Inc

154 Reade Street, 2nd Floor

New York, NY. 10013

United States of America

Phone: 212.431.5098

Facsimile: 209.755.5834

Dated: 12 / 6 / 2010

Director / AStar Group – Signature

STATE OF NEW YORK
COUNTY OF

Witnessed before me on 6 / 12 / 10 ,2010. , __ has provided identification on __ is
known personally to me as the signer of The A Star Group Inc.

Commission # _____

Expiration Date _____

NOTARY PUBLIC or DEPUTY CLERK

PETER KELLY KIRSCH
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN NEW YORK COUNTY
NO. 01KI6203181
MY COMMISSION EXPIRES 03-30-2013

TO:        The Registrar of the Court of Appeal

AND TO:    Public Utilities Board

           c/ Fillmore Riley LLP

           Barristers & Solicitors

           1700 - 360 Main Street

           Winnipeg, MB R3C 2Z3

           Attention: Robert Peters and Anita Southall